# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

HAROLD HARRIS; PASTOR ROBERT
TIPTON, JR.; DELTA SIGMA THETA
SORORITY, INC.; DESOTO COUNTY MS
NAACP UNIT 5574,

    *Plaintiffs*,

v.

                                      3:24-cv-00289-GHD-RP

DESOTO COUNTY, MISSISSIPPI;
DESOTO COUNTY BOARD OF
SUPERVISORS; DESOTO COUNTY
ELECTION COMMISSION; and DALE
THOMPSON in her official capacity as
DeSoto County Circuit Clerk,

    *Defendants*.

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXPEDITE TRIAL DATE

    Plaintiffs Harold Harris; Pastor Robert Tipton, Jr.; Delta Sigma Theta Sorority, Inc.; and DeSoto County MS NAACP Unit 5574 respectfully request that the Court expedite the trial date in the above-captioned matter to allow for earlier relief from the irreparable harm of dilutive voting districts.

    Plaintiffs' lawsuit challenges DeSoto County's 2022 redistricting plan ("the 2022 Plan"), which violates the Voting Rights Act ("VRA") by diluting the voting power of DeSoto County's Black residents and depriving them of an equal opportunity to elect their preferred candidates. The 2022 Plan governs five separate County offices encompassing twenty-five County officials with power over many crucial aspects of residents' lives. Black voters in DeSoto County are politically

1

cohesive and have distinctive needs and policy preferences, but the 2022 Plan denies them any voice in County government. That constitutes a severe and irreparable harm.

Should they prevail at trial, Plaintiffs seek to mitigate this harm through special elections in November 2026. Based on the information available to them, Plaintiffs believe this goal is readily achievable under the current discovery schedule for the case, which includes a cut-off of September 2025. See ECF No. 67, at 4. However, if the trial is not held until April 2026, as set forth in the current schedule, *see id.*, there is some possibility that the current trial date would not allow for a remedy in place by November 2026. Accordingly, Plaintiffs respectfully request that the Court move the trial start date as soon as possible after the close of discovery and motion deadlines, and ideally by mid-January 2026.

## BACKGROUND

The 2022 Plan sets the district boundaries for elections of five offices: the DeSoto County Board of Supervisors, Board of Education, Election Commission, and Judges and Constables of the County's Justice Court. Although Black residents are about 30% of DeSoto County's population, the Plan is drawn in such a way that they are unable to elect their preferred candidate to any of the twenty-five positions within these five offices.

Plaintiffs have challenged the 2022 Plan as violating Section 2 of the VRA, 52 U.S.C. § 10301. *See generally* ECF No. 1. They have asked the Court to enjoin use of the 2022 Plan, and order special elections under a remedial plan. *See* ECF No. 1, at 35–36. Throughout this litigation, Plaintiffs have sought to move expeditiously to ensure a remedy as soon as practicable. *See, e.g.*, ECF No. 30, at 4 (opposing lengthy extension "[i]n light of the timeliness concerns"); ECF No. 39, at 2 (requesting the Court to allow discovery to proceed in order to avoid delay from a stay).

Following the Rule 16 conference on February 19, 2025, the Court entered a case management order, ECF No. 67. Under that order, discovery concludes on September 26, 2025, and dispositive and *Daubert* motions will be fully briefed by the end of October 2025. *See id*. at 4–5. But trial is not set to begin until April 27, 2026, over seven months after discovery ends. *See id.* at 4.

## ARGUMENT

Plaintiffs in this case seek new voting districts to remedy the dilution of their votes under the 2022 Plan. Vote dilution such as that in DeSoto County constitutes a burden on the fundamental right to vote, a right that is "preservative of other basic civil and political rights." *Reynolds v. Sims*, 377 U.S. 533, 562 (1964). The current April 2026 trial date risks further irreparable harm to Plaintiffs by risking a possible stay of a remedial order until after the 2026 elections pursuant to *Purcell v. Gonzalez*, 549 U.S. 1 (2006).

District courts have "broad discretion to . . . exercise control of [their] own docket and the course of litigation." *Russell v. Attala Steel Indus., LLC*, 2024 WL 532709 at *2 (N.D. Miss. Feb. 9, 2024). Here, the current trial schedule threatens irreparable harm to Plaintiffs if they prevail on the merits but cannot obtain a remedy in time for November 2026 special elections. Plaintiffs therefore respectfully ask the Court to exercise its discretion to expedite the trial start date.

### I. Plaintiffs suffer irreparable harm.

Plaintiffs face ongoing and irreparable harm from the 2022 Plan. The plan draws Black residents of DeSoto County into districts that unlawfully dilute their voting strength. *See* ECF No. 1, at 2, 13. Plaintiffs suffer an irreparable injury whenever they vote under an unlawful plan. *See Robinson v. Ardoin*, 86 F.4th 574, 600 (5th Cir. 2023) ("Once an 'election occurs, there can be no do-overs and no redress' for voters whose votes were diluted." (citation omitted)). Plaintiffs

3

continue to live under the current district lines and a County government that was elected under a system that diluted their votes. See ECF No. 1, at 6–9. Plaintiffs' irreparable injury will persist until the dilutive voting districts are replaced. *See Singleton v. Allen,* 690 F. Supp. 3d 1226, 1319 (N.D. Ala. 2023) ("We observe that absent relief now, the Plaintiffs will suffer this irreparable injury until 2026, which is more than halfway through this census cycle.")

Under such circumstances, special elections under remedial district lines in 2026 offer the soonest and administratively easiest way to rectify this harm should Plaintiffs succeed on the merits. Recently, the Southern District of Mississippi ordered special elections to cure a Section 2 violation in the state legislature, following expedited discovery to facilitate that remedy. *See Miss. State Conf. of NAACP v. State Bd. of Election Commissioners,* 741 F. Supp. 3d 509, 515 (S.D. Miss. 2024) (three-judge court) (ordering special elections); Order, at 2–3, ECF No. 44, *Miss. State Conf.,* No 3:22-cv-00734 (S.D. Miss. June 23, 2023) (three-judge court) (setting expedited discovery and trial schedule).[1] Plaintiffs here make a more modest request: special elections can be held in November 2026 without the need to alter the current discovery schedule.

### A. Plaintiffs seek elections under fair lines in 2026, more than two years after they filed their complaint.

If Plaintiffs here prevail in their claim, it will be appropriate to order special elections under a lawful redistricting plan. In addition, some DeSoto County officials will be elected in regularly scheduled elections in November 2026. A seat on the DeSoto County Board of Education, currently elected under the district lines Plaintiffs challenge, must stand for regular election in November 2026. *See* Miss. Code. § 37-5-7(1).[2] This election will be held using dilutive districts,

---

[1] That order is attached as Exhibit A for the Court's convenience.
[2] *See also* MISS. SEC'Y OF STATE, Election Calendar, https://www.sos.ms.gov/content/documents/elections/eleChart-2000-12.pdf (noting 2026 Board of Education election).

4

absent a remedy ordered by this Court. The Fifth Circuit has made clear that voting under dilutive lines constitutes irreparable harm. *Robinson*, 86 F.4th at 600 (recognizing if elections are "conducted under a map which has been shown to dilute Plaintiffs' votes, Plaintiffs' injury will persist until the map is changed"). Reflecting this harm, the trial date should be set to allow ample time for the 2022 Plan to be corrected.

Moreover, special elections under a new, lawful plan are appropriate in this case if Plaintiffs prevail. Courts consider three non-exclusive factors to decide whether to grant a special election as a remedy for an unlawful map: (1) "the severity and nature of the . . . violation"; (2) "the extent of the likely disruption to the ordinary processes of governance if early elections are imposed"; and (3) "the need to act with proper judicial restraint when intruding on state sovereignty." *North Carolina v. Covington*, 581 U.S. 486, 488 (2017). If Plaintiffs prevail on the merits, they will satisfy the *Covington* factors.

First, Plaintiffs' claims involve serious interference with their fundamental right to vote. Elections held under district maps that unlawfully dilute a group's voting power constitute irreparable harm that persists until the maps are changed. *Robinson*, 86 F.4th at 600. This ongoing and irreparable injury is a severe violation of rights. *See Miss. State Conf. of NAACP v. State Bd. of Election Commissioners*, 739 F. Supp. 3d 383, 465 (S.D. Miss. 2024) (three-judge court) (finding first *Covington* factor satisfied by violation of Section 2).

Second, special elections will cause negligible disruption to the governance of elections should the Court order remedial maps. Preparations for those special elections, and the elections themselves, would occur concurrently with the federal midterm elections and the DeSoto County Board of Education election already scheduled in November 2026. *Accord Navajo Nation v. San Juan County*, 2017 WL 6547635 at *18 (D. Utah Dec. 21, 2017), *aff'd*, 929 F.3d 1270 (10th Cir.

5

2019) (finding no significant disruption where special elections would proceed alongside regularly scheduled elections). Aligning special elections with the midterms and regularly scheduled DeSoto County elections would streamline election administration. County polling places will already be open, poll workers will already be working, voters will already be aware of the election, and some County officials will already be on the ballot.

Third, under these circumstances, judicial restraint does not weigh against ordering a special election. The fundamental rights at issue and irreparable harm imposed by conducting elections under unlawful maps outweigh a special election's intrusion into state sovereignty. *See Covington v. North Carolina*, 270 F. Supp. 3d 881, 895 (M.D.N.C. 2017); *see also North Carolina v. Covington*, 585 U.S. 969, 977 (2018) ("[T]he District Court had its own duty to cure illegally gerrymandered districts through an orderly process in advance of elections.").

### B. The current trial schedule threatens the possibility of remedial maps in the November 2026 elections.

Waiting until late April 2026 to start the trial might result in relief being unavailable in time for November 2026 elections, in light of *Purcell* principles. Courts have read *Purcell* to counsel against revising district lines too late in the election calendar. *See, e.g., Smith v. Hosemann*, 2022 WL 2168960 at *8 & n.12 (S.D. Miss. May 23, 2022); *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1370–72 (11th Cir. 2022) (finding *Purcell* problem when election was less than four months away and voter registration was ongoing).

Based on the information available to them, Plaintiffs believe that if a remedial plan is in place by mid-August 2026, it will allow for November 2026 elections. In the ongoing litigation over Mississippi state legislative districts, state officials informed the court that updated maps must

6

be received by August 14 for a November 5 election.[3] *See* Defendants' Response to the Court's Request for a Proposed Remedial Schedule at 2, ECF No. 227, *Miss. State Conf.,* No 3:22-cv-00734 (S.D. Miss. July 10, 2024).[4] That filing indicated that candidate qualifying would have to occur by September 6, 2024. *Id.* That timeline is consistent with Mississippi law governing special elections for county offices, which sets a sixty-day filing deadline in special elections for county offices. *See* Miss. Code § 23-15-839(2).

Under the same timeframe discussed by state in the legislative redistricting case, remedial maps in this case should be in place by August 12, 2026, to effectuate a Board of Education election under remedial lines and special elections in November 2026. While the current trial schedule may allow for that, Plaintiffs note that, if they prevail, the County would be entitled to adopt remedial maps, which the Court would then review. This tight timeline might pose a serious risk of allowing the irreparable harm of elections under unlawfully dilutive maps to persist into 2027. Starting the trial earlier is an appropriate precaution against that risk.

**II. A trial closer to the close of discovery is both feasible and appropriate.**

If the Court's calendar permits, an earlier trial is feasible and appropriate—and would not require the alteration of any other deadlines. Under the schedule set by the Court, the trial in this case would not begin until April 27, 2026, more than seven months after the close of discovery on September 26, 2025, and more than six-and-a-half months after dispositive and *Daubert* motions are due on October 10, 2025. *See* ECF No. 67, at 4–5. By contrast, in the state legislative case,

---

[3] Importantly, the State indicated that "a lesser number of potential changes could allow for a later date" than August 14. *See* Defendants' Response to the Court's Request for a Proposed Remedial Schedule at 2, ECF No. 227, *Miss. State Conf.,* No 3:22-cv-00734 (S.D. Miss. July 10, 2024). It may well be the case that the circumstances of this case would allow for a later date. Defendants are well-positioned to inform the Court of the date by which they would need a remedy should Plaintiffs prevail at trial.

[4] That brief is attached as Exhibit B for the Court's convenience.

which involved several areas of the state (and a separate racial gerrymandering claim), trial occurred two-and-half months after discovery ended. *See* Order at 3, *Miss. State Conf.*, No. 3:22-cv-00734 (S.D. Miss. June 23, 2023).

The court trying the state legislative case recognized the irreparable harm of another election cycle under a dilutive map, and the importance of special elections. As a result, that court expedited discovery as well as trial. Here, the only period Plaintiffs seek to change is the length of time between the close of discovery and the start of trial. The Court has discretion to expedite the trial date, and Plaintiffs respectfully request it do so to mitigate their irreparable harm.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court move the trial start date as soon as possible after the close of discovery and motion deadlines, and ideally by mid-January 2026.

Dated: March 6, 2025

| | |
|---|---|
| Joshua Tom (Miss. Bar No. 105392)<br>**ACLU OF MISSISSIPPI**<br>101 South Congress Street<br>Jackson, MS 39201<br>Telephone: (601) 354-3408<br>jtom@aclu-ms.org | */s/ Daniel J. Hessel*<br>Daniel J. Hessel*<br>Ruth Greenwood*<br>**ELECTION LAW CLINIC**<br>**HARVARD LAW SCHOOL**<br>6 Everett Street, Ste. 4105<br>Cambridge, MA 02138<br>(617) 496-0222<br>dhessel@law.harvard.edu<br>rgreenwood@law.harvard.edu |

Brenda Wright*
Victor Genecin*
Maia Cole*
**NAACP LEGAL DEFENSE AND**
  **EDUCATIONAL FUND, INC.**
40 Rector Street, 5th Floor
New York, NY 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592
bwright@naacpldf.org
vgenecin@naacpldf.org
mcole@naacpldf.org

Víctor Jones*
**NAACP LEGAL DEFENSE AND**
  **EDUCATIONAL FUND, INC.**
700 14th Street NW, Suite 600
Washington, DC 20005
Telephone: (202) 216-2720
Facsimile: (202) 682-1312
vjones@naacpldf.org

*Attorneys for Plaintiffs*

*\*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I, Daniel J. Hessel, do certify that on this day I filed the foregoing with the ECF System which sent notification to all counsel of record.

                                      This the 6th day of March, 2025.

                                      */s/ Daniel J. Hessel*

                                      Daniel J. Hessel