**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

| | |
|---|---|
| **HAROLD HARRIS; PASTOR ROBERT TIPTON, JR.; DELTA SIGMA THETA SORORITY, INC.; AND DESOTO COUNTY MS NAACP UNIT 5574** | **PLAINTIFFS** |
| VS. | CIVIL NO.: 3:24-CV-00289-GHD-RP |
| **DESOTO COUNTY, MISSISSIPPI; DESOTO COUNTY BOARD OF SUPERVISORS; DESOTO COUNTY ELECTION COMMISSION; and DALE THOMPSON in her official capacity as DeSoto County Circuit Clerk** | **DEFENDANTS** |

**MEMORANDUM IN OPPOSITION TO MOTION TO EXPEDITE TRIAL**

Defendants Defendant DeSoto County, Mississippi, DeSoto County Board of Supervisors, DeSoto County Election Commission, and Dale Thompson, sued in her official capacity as Circuit Clerk for DeSoto County (collectively "Defendants") file this Memorandum in Opposition to Plaintiffs' Motion to Expedite Trial Date [74].

**Relevant Background**

On June 20, 2022, the County completed its redistricting related to each of the County's five districts (the "2022 Redistricting Plan"). On September 12, 2024, nearly 27 months later, Plaintiffs filed their Complaint [1] in this case, advancing a claim for violation of Section 2 of the Voting Rights Act, 52 U.S.C. §§ 10101 to 10702 ("VRA"). *See* Compl. [1] at ¶¶ 1-27. In pertinent part, Plaintiffs allege the 2022 Redistricting Plan "cracks" the Black community—namely, the City of Horn Lake's Black population—among the County's five districts and dilutes Black voting power in the County, thereby denying Black voters the opportunity in any of the five districts to elect their preferred candidate to any of the County offices. *Id*. at ¶¶ 20, 81, 82.

On November 22, 2024, the County filed its Motion to Dismiss [36], challenging Plaintiffs' standing to sue Circuit Clerk Dale Thompson, explaining that Plaintiffs failed to state a claim for

relief under Rule 12(b)(6), and asserting that VRA Section 2 does not include a private right of action. Memorandum [23]. Defendants' Motion [22] remains pending and thus the pleadings have not closed. Attacking Plaintiffs' standing to sue Thompson, the County's Motion [22] resulted in discovery being stayed under the Court's local rules, but Plaintiffs filed a Motion [38] requesting that discovery be allowed to proceed, and the Court granted Plaintiffs' motion on January 22, 2025. *See* Order [60].

Also on January 22, 2025, the Court noticed the case management conference for February 19, 2025. Notice [61]. Prior to that conference, Plaintiffs submitted the parties' proposed case management order along with a set of deadlines that Plaintiffs proposed to be used for the life of this case. *See* Feb. 5, 2025, E-mail from Hessel to Chambers (3:25 p.m.), attached as **Exhibit 1**. Within minutes, Defendants objected to the set of deadlines proposed by Plaintiffs. *See* Feb. 5, 2025, E-mail from Hurst to Chambers (3:39 p.m.), attached as **Exhibit 2**.

On February 19, 2025, the Court held a case management conference. That same day, the Court entered its Case Management Order [67], setting the deadlines for this case. In pertinent part, the Court set this case for trial on April 27, 2025.[1] Notice of Trial [68]. Based on that trial date, the Court then set the remaining dates for life of this case, including setting the deadline for discovery on September 26, 2025 and the deadline for dispositive motions on October 10, 2025. *See* Case Management Order [67] at pp. 4-5.

---

[1] During the telephonic case management conference, the Court announced the trial date, April 27, 2026, and asked both Plaintiffs and Defendants whether that date worked on their respective calendars, and both parties' counsel confirmed that it would. The Court then used the April 27, 2026 trial date to create deadlines for the remainder of proceedings leading up to trial. Only after these dates were announced, Plaintiffs' counsel indicated they believed trial should be set sooner than April 27, but Defendants' counsel objected and believed trial should be later than April 27 given the volume of discovery to be conducted in this case. The Court, after hearing both sides, reiterated that April 27, 2026, was going to be the trial date for this matter and the schedule was finalized based on that date.

2

**Legal Argument**

Plaintiffs' motion seeking to expedite trial is nothing more than a poorly disguised request to amend the Court's scheduling order. This Court has "broad discretion to preserve the integrity and purpose of the pretrial order." *Newsome v. Int'l Paper Co.*, 123 F.4th 754, 766 (5th Cir. 2024) (*quoting S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)) (internal marks omitted). On appeal, the Fifth Circuit will "not disturb a district court's ruling enforcing a pretrial order 'absent a clear abuse of discretion.'" *Newsome v. Int'l Paper Co.*, 123 F.4th 754, 766 (5th Cir. 2024) (citation omitted) (emphasis added).

**A**. **Plaintiffs utterly fail to show good cause supporting their request to amend the scheduling order**.

Plaintiffs' request to prepone the trial date is ripe for denial. When seeking an extension of a scheduling order, "good cause" is the name of the game. *Reliance Ins. Co. v. Louisiana Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997). A four-pronged analysis sets the rules: "(1) the explanation for the failure to [proceed with trial as scheduled]; (2) the importance of the [expedited trial date]; (3) potential prejudice in allowing [trial to be expedited]; and (4) the availability of a continuance to cure such prejudice." *Id*. (quoting *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990)) (internal quotes omitted).[2] Each prong weighs against Plaintiffs.

**1**. **Plaintiffs' explanation for their inability to proceed with trial as set lacks merit**.

With respect to the explanation for their inability to proceed with trial as scheduled, Plaintiffs' theory is based on their conclusory contention that they "face ongoing and irreparable harm from the 2022 Plan" and that they intend to have special elections in 2026. Mem. [75] at 3.

---

[2] Plaintiffs did not even mention the concept of good cause in either their Motion [74] or Memorandum [75], and did not otherwise offer any arguments based on the good cause analysis. As a result, Plaintiffs have waived any argument related to good cause. *See, e.g.*, *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F. 3d 256, 260 n. 9 (5th Cir. 1995) (explaining that failure to provide any legal or factual analysis of an issue results in waiver of that issue).

It cannot be said that Plaintiffs "face ongoing and irreparable harm from the 2022 Plan" when no determination has been made on the merits of their Section 2 claim. In fact, Defendants' motion to dismiss, based in part on their failure to state a claim, remains pending, and Plaintiffs' request to expedite trial before the Court has even decided whether their claims are legally sufficient puts the cart well before the horse. It would be improper and a waste of resources (for both the Court and the parties) to fast-track a trial in a case that may not even survive dismissal. Any purported irreparable harm is speculative at best given the current procedural posture of the case.

Even so, Plaintiffs are concerned only that the current trial date "might" prevent them—not that it actually will—and they seek to amend the scheduling order as a "precaution" against the "risk" they claim to now fear: "[w]hile the current trial schedule may allow for that, Plaintiffs note that, if they prevail, the County would be entitled to adopt remedial maps, which the Court would then review[, and t]his tight timeline <u>might</u> pose a serious risk of allowing the irreparable harm" to persist. Mem. [75] at 7 (adding "[s]tarting trial earlier is an appropriate <u>precaution</u> against that risk") (emphasis added).

This explanation is as ironic as it is insufficient and cannot be enough to satisfy the first good cause prong. It is ironic considering why Plaintiffs are now in the time crunch they claim they "might" be in regarding the hoped-for special elections in 2026: Plaintiffs waited more than two (2) years after the 2022 Plan was approved by the Board to file the Complaint [1], and they should not now be allowed to use their delay in filing the complaint to prejudice Defendants by expediting trial based on what appears to be a sudden sense of urgency.[3] Plaintiffs' own actions in

---

[3] A comparison between, on the one hand, the nearly 27-month delay between approval of the County's 2022 Plan and Plaintiffs' Complaint [1] and, on the other hand, the lack of any remotely similar delay in the statewide redistricting case only further underscores the lack of similarity between the statewide redistricting case and Plaintiffs' case here. *See Miss. State Conf. of NAACP v. State Bd. of Election Comm'rs*, Case No. 3:22cv734-DPJ-HSO-LHS (S.D. Miss.) at Compl. [1] at ¶ 1 (challenging the State of Mississippi's 2022 redistricting plan by a complaint filed on December 20, 2022) *and* ¶ 62 (alleging the same 2022 redistricting plan was approved on March 31, 2022, a mere seven (7) months earlier).

4

waiting to file their lawsuit necessarily suggests that the claimed "irreparable harm" is not so immediate as to justify disrupting the Court's standard litigation process to Defendants' prejudice.

It is insufficient because if the mere contention that an existing scheduling order's deadline "might" create harm were enough to satisfy the first good cause factor, the factor would be rendered meaningless. *See O. L. v. City of El Monte*, No. 2:20cv797-RGK-JDE, 2020 WL 7264549, at *3 (C.D. Cal. Oct. 30, 2020) ("A request to modify the Scheduling Order requires more than speculation."). As one court has put it when faced with a request to expedite trial after entry of a scheduling order, "[m]any litigants have compelling reasons to desire a speedy remedy, however, and the Court's schedule does not permit expedited consideration of all these cases." *Berenson v. Administrators of the Tulane Univ. Educ. Fund*, No. CV 17-329, 2017 WL 3480794, at *2 (E.D. La. Aug. 14, 2017)) (citing *Achagzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67, 72 (D.D.C. 2015)) (refusing to expedite trial where plaintiff-movant claimed his advanced age (90) and need to continue conducting research warranted expediting trial). The first good cause prong weighs in Defendants' favor and against amending the scheduling order to expedite trial.

**2**. **Plaintiffs have not demonstrated the importance of an expedited trial date**.

With respect to the importance of an expedited trial date, Plaintiffs' memorandum can be read as offering the speculative claim that, "if they prevail," the current trial date "might" create a "tight timeline" for what Plaintiffs indicate is their best-case scenario, forcing the County to adopt remedial maps and hold special elections, all by November 2026. Plaintiffs, however, offer no suggestion as to when trial should take place to ease their concerns and allow this preferred relief. That fact, when coupled with the facts that Plaintiffs waited 27 months to file their Section 2 claim seeking relief in the form of remedial maps and special elections, Plaintiffs failed to properly raise their concerns related to timing of trial prior to the CMC, and Plaintiffs' failed to even attempt to

5

show good cause to amend the scheduling order, all converge to create a strong suggestion that even Plaintiffs do not give much importance to an earlier trial date.

Underlying Plaintiffs' position for a preponed trial date is the assumption that the Court will grant them the extraordinary relief of a court-ordered special election due to success on the merits of their Section 2 claim. The cases Plaintiffs cite for support are factually, legally, and procedurally inapposite. In fact, in all these cases, resolution of the claims on the merits had already been decided before the issue of court-ordered special elections was considered. *See, e.g., Singleton v. Allen*, 690 F. Supp. 3d 1226 (N.D. Ala. 2023); *Miss. State Conf. of NAACP v. State Bd. of Elec. Comm'ns*, 741 F. Supp. 3d 509, 515 (S.D. Miss. 2024); *North Carolina v. Covington*, 581 U.S. 486 (2017).

Moreover, Plaintiffs' reliance on the principles set forth in *Purcell v. Gonzalez* is misplaced and does not apply in the particular circumstance presented here. 549 U.S. 1 (2006). *Purcell* generally serves as a caution against courts making last-minute changes to election rules, rather than as a justification for expediting a trial. *Id.* at 5. The principles underlying *Purcell* apply to situations where courts intervene too close to an election, potentially creating voter confusion, disruption to the election process, and unanticipated and unfair consequences. *Id.* at 8; *see, e.g., Smith v. Hosemann*, 2022 WL 2168960, at * 8, n. 12 (S.D. Miss. May 23, 2022); *League of Women Voters of Fla., Inc. v. Fla. Sec. of State*, 32 F.4th 1363, 1372–73 (11th Cir. 2022). It does not stand for the proposition that trial dates must be accelerated to preemptively avoid such concerns, and this would be a particularly unfair reading of *Purcell* here, where Plaintiffs themselves created the potential "tight timeframe" they claim to fear by waiting 27 months to file their complaint. If anything, Plaintiffs' position is necessarily at odds with the *Purcell* principles because expediting the trial increases the risk of rushed decisions, incomplete factual development, and subsequent appeals, which could ultimately delay resolution rather than expediting relief and creating the kind

6

of legal uncertainty *Purcell* seeks to avoid. Plaintiffs, therefore, cannot use *Purcell* as a reason to alter the trial date, and the second good cause prong militates in Defendants' favor.

**3**. **Defendants will suffer significant prejudice if trial is expedited**.

Under the current scheduling order and assuming dispositive motions are briefed without the need for any extension, the motions will be fully briefed by October 31, 2025. This leaves a mere five months and 27 days between the date those motions will be ready for review and consideration by the district judge and the first day of trial. Given the complex nature of this case and the volume of information and testimony that will be exchanged through discovery, expediting the trial date would only prejudice Defendants' because the Court would have less time to consider the evidence and legal arguments submitted. The current trial setting allows time for full factual and legal development, ensuring that any decision is based on a well-developed record. This prejudice militates heavily against any notion that good cause exists to expedite the trial date. *See Skillz Platform Inc. v. AviaGames Inc.*, No. 21-CV-02436-BLF, 2022 WL 982521, at *1-2 (N.D. Cal. Mar. 31, 2022) (denying request to advance trial date and considering the impact on defendants' ability to seek summary judgment as being one of multiple ways the requested advanced trial date would prejudice defendant).

**4**. **The prejudice to Defendants cannot be cured by a continuance**.

The final prong plainly does not support finding good cause necessary to amend the scheduling order and expedite trial: a continuance would only postpone the trial date, but Plaintiffs want to prepone the trial date. As noted, Plaintiffs' own 27-month delay in filing this lawsuit is what placed them in the predicament they now claim. Expediting trial and constricting the amount of time available for consideration of summary judgment briefing would do nothing but encourage similar delays leading up to midterm or general elections in the future, and thus this fourth prong militates against an extension. *See Syrjanen v. Riverboat Corp. of Mississippi*, No. 1:20-CV-20-

7

HSO-RPM, 2021 WL 6804217, at *1 (S.D. Miss. Oct. 1, 2021) ("At the fourth prong, an important consideration is whether the continuance would 'deter future dilatory behavior, [ ]or serve to enforce local rules or court imposed scheduling orders.'") (quoting *Geiserman*, 893 F.2d at 792).

### B. **Plaintiffs' reliance on the state legislative case is badly misplaced**.

Predictably, Plaintiffs rely on the statewide redistricting case[4] to argue their request to expedite trial should be granted. Mem. [75] at 7-8. This reliance is misplaced for multiple reasons.

The court in the statewide redistricting case did <u>not</u> set a trial date at the case management conference. *See* Case No. 3:22cv734-DPJ-HSO-LHS, 05/19/2023 Text-Only Order. Instead, the court invited the parties in that case to submit proposed scheduling orders. *See id*. The parties did so, with the state defendants filing a Motion to Set Deadlines [37] and the plaintiffs filing a Motion for Expedited Trial [40]. The court considered the parties' submissions but picked the plaintiffs' proposed trial date and schedule over that of the defendants' proposal. *See* Order [44] at 2-3 (denying defendants' Motion [37], granting plaintiffs' Motion [40], and setting trial).

This creates a critical distinction between the statewide redistricting case and the case before this Court. Namely, unlike the statewide redistricting case, this Court held a case management conference with the participation of the parties. *See* Minute Entry [66]. Prior to that conference, Plaintiffs submitted the parties' proposed case management order along with a schedule of deadlines for this case. *See* **Exhibit 1**. Defendants objected to the schedule of deadlines proposed by Plaintiffs. *See* **Exhibit 2**. During the case management conference, the Court heard from the parties and set this matter for trial on April 27, 2026. The Court set the remaining case management deadlines based on that trial date, and two of those deadlines—the discovery and motions deadlines—have been set within seven (7) days of the dates Plaintiffs wanted for those

---

[4] *See Miss. State Conf. of NAACP v. State Bd. of Election Comm'rs*, Case No. 3:22cv734-DPJ-HSO-LHS (S.D. Miss.). Defendants will refer to this case as the "statewide redistricting case."

PD.48761349.1

same deadlines.[5] *Compare* **Exhibit 1** (proposing a discovery deadline of September 19, 2025, and a motions deadline of October 3, 2025) *with* Case Management Order [67] at 4-5 (setting discovery deadline on September 26, 2025, and motions deadline on October 10, 2025).

The significance of the Court's order setting a trial date and case management deadlines—all through and with the participation of the parties—cannot be understated. Once set, "[a] schedule may be modified <u>only for good cause</u> and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). Consistent with this well-settled rule, the Case Management Order [67] is equally clear: "This Order, including all deadlines, has been established with the participation of all parties and can be modified only by order of the Court on a showing of good cause supported with affidavits, other evidentiary materials, or reference to portions of the record."

Thus, under both the Federal Rules and the Case Management Order [67], Plaintiffs must show good cause to amend the scheduling order and have trial expedited. This renders Plaintiffs' reliance on the expedited trial setting in the statewide redistricting case utterly misplaced. As shown, Plaintiffs have not and cannot demonstrate good cause to expedite trial, and their Motion [74] should be denied.

**C**. **Plaintiffs failed to comply with the Court's local rules related to their disagreement over the trial setting**.

Finally, one procedural flaw with Plaintiffs' request to expedite trial is worth noting. The Court's local rules require that a party seeking to alert the Court of a disagreement with respect to a proposed case management order being submitted must note that disagreement to the Court when

---

[5] Plaintiffs' proposed deadlines also included extraordinarily premature expert disclosure deadlines that would have required the parties to have designated all experts less than three months into discovery. *See* **Exhibit 1**. Plaintiffs did not provide a meaningful explanation of their rationale for these proposed deadlines during the parties' Rule 26 conference, but their present request to expedite trial suggests these premature deadlines were strategic. Thankfully, the expert designation deadlines were set at a time consistent with when such deadlines are normally set, after the parties have had sufficient time to conduct discovery. *See* Case Management Order [67] at 4-5.

9

submitting the written proposal. *See* L.U. Civ. R. 16(c) (requiring submission of a written proposed case management plan and specifically adding that "[d]isagreements with the content of the proposed case management order must be noted on the submitted written plan"). Here, Plaintiffs submitted the parties' proposed case management order and also included what Plaintiffs believed the schedule for the case should be, but Plaintiffs failed to include or otherwise mention anything related to the trial date. *See* **Exhibit 1**. Defendants responded within minutes of seeing Plaintiffs' communication to the Court, making clear the parties disagreed over the schedule Plaintiffs proposed. **Exhibit 2**. Despite now claiming the need for an expedited trial date, Plaintiffs inexplicably failed to propose an earlier trial date (or even mention that concept) when "submit[ting] their proposed schedule for the case . . . ." *See* **Exhibit 1**. Plaintiffs similarly did not request to be excused from Local Rule 16(c)'s requirement. Plaintiffs' failure to comply with the Court's local rules related to their disagreement about when their claim should go to trial warrants, by itself, denial of Plaintiffs' request to amend the scheduling order at this point.

## Conclusion

At its core, Plaintiffs' argument underlying their self-described "precaution[ary]" request to amend the scheduling order is based on a conclusory, unproven suggestion that they will prevail on their claim and, as a result, they are entitled to that which they seek in the interim. For good reason, Defendants disagree with this suggestion. While that dispute ultimately will be decided at trial, it suffices to say (for now) that Plaintiffs' self-serving belief that they will prevail on their Section 2 claim in this case, without more, falls woefully short of the "good cause supported with affidavits, other evidentiary materials, or reference to portions of the record" that is required to amend a scheduling order. The Motion [74] should be denied.

Dated: March 20, 2025.

Respectfully submitted,

10

PD.48761349.1

                                        PHELPS DUNBAR LLP

                                        /s/ *Nicholas F. Morisani*
                                        D. Michael Hurst, Jr. MB # 99990
                                        W. Thomas Siler, Jr. MB #6791
                                        Nicholas F. Morisani MB #104970
                                        1905 Community Bank Way, Suite 200
                                        Flowood, Mississippi 39232
                                        Telephone: 601-352-2300
                                        Facsimile: 601-360-9777
                                        mike.hurst@phelps.com
                                        tommy.siler@phelps.com
                                        nick.morisani@phelps.com

                                        ***ATTORNEYS FOR DEFENDANTS***

## **CERTIFICATE OF SERVICE**

I certify that on March 20, 2025, I electronically filed this response with the Clerk of the Court using the ECF system, which sent notification of such filing to all ECF counsel of record in this action.

*/s/ Nicholas F. Morisani*
Nicholas F. Morsani