IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | |
|---|---|
| HAROLD HARRIS; PASTOR ROBERT TIPTON, JR.; DELTA SIGMA THETA SORORITY, INC.; and DESOTO COUNTY MS NAACP UNIT 5574 | PLAINTIFFS |
| VS. | CIVIL ACTION NO.: 3:24-cv-00289-GHD-RP |
| DESOTO COUNTY, MISSISSIPPI; DESOTO COUNTY BOARD OF SUPERVISORS; and DESOTO COUNTY ELECTION COMMISSION | DEFENDANTS |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS OR, ALTERNATIVELY, MOTION FOR CONTINUANCE OF TRIAL**

The United States Supreme Court's forthcoming decision in *Louisiana v. Callais*, No. 24-109 (consolidated with *Robinson v. Callais*, No. 24-110) (collectively "*Callais*") involves issues relating to the interpretation and application of Section 2 of the VRA. More fundamentally, *Callais* presents questions about the constitutionality of Section 2 itself as well as questions related to the constitutionality of interpreting Section 2 to mandate the creation of a majority-minority district. As a result, the U.S. Supreme Court's decision in *Callais* will, at a minimum, have a direct and substantial impact on the outcome of this case and, at most, will be dispositive of the issues presented here. Defendants thus request a stay of all proceedings in this case pending the U.S. Supreme Court's decision in *Callais*. Alternatively, good cause exists to continue the trial and corresponding pretrial deadlines in light of the U.S. Supreme Court's forthcoming decision in *Callais*.

## BACKGROUND

Plaintiffs Harold Harris, Robert Tipton, Jr., Delta Sigma Theta Sorority, Inc., and DeSoto County MS NAACP Unit 5574 ("Plaintiffs") brought this lawsuit, challenging DeSoto County's

2022 redistricting plan ("2022 Plan") adopted by the Board of Supervisors as it "cracks the Black community and dilutes Black voting power in DeSoto County in a manner that denies Black voters an equal opportunity to elect a candidate of choice to any County Office in any of the five districts" in violation of Section 2 of the Voting Rights Act, 52 U.S.C. §§ 10101 to 10702 ("VRA"). *See* Compl. [1] at ¶¶ 27, 81, 237. More specifically, Plaintiffs allege that, "[c]onsistent with traditional redistricting principles, there were many ways the Board of Supervisors could have drawn a reasonably configured majority-Black district in DeSoto County that would provide the opportunity for Black voters in DeSoto County to elect a candidate of choice in each of the elections for which the districts are used." *Id*. at ¶ 95. Plaintiffs seek, among other things, extraordinary relief in the form of a declaration that the 2022 Plan violates Section 2; permanent injunction enjoining Defendants from holding any elections under the 2022 Plan; court-ordered "remedial maps that do not abridge or dilute the ability of Black voters to elect candidates of their choice;" and court-ordered special elections to be held during the next regular election cycle. *Id*. at 35–36.

Pending before the United States Supreme Court, however, is *Louisiana v. Callais*, on direct appeal, No. 24-109 (oral argument scheduled for Oct. 15, 2025), which involves substantially similar legal issues that are directly relevant to and potentially dispositive in this case. In light of the forthcoming decision by the Supreme Court, Defendants request a stay of these proceedings pending a decision by the Supreme Court in *Callais*, or alternatively, a continuance of the trial and related pretrial deadlines.

## ARGUMENT AND AUTHORITIES

Multiple reasons support staying proceedings in this case pending the U.S. Supreme Court's decision in *Callais*, which involves issues that will directly and substantially impact the

outcome of this case and could potentially be dispositive of the lone claim advanced by Plaintiffs in this case. Alternatively, good cause exists to continue trial and related pretrial deadlines in light of the U.S. Supreme Court's forthcoming decision in *Callais*. Each of these grounds are addressed in turn.

> I. **A Stay is Warranted Pending the U.S. Supreme Court's Decision in *Louisiana v. Callais***

"It is axiomatic that the District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Huey v. Allstate Vehicle and Prop. Ins. Co.*, No. 4:19-cv-153-GHD-JMV, 2020 WL 475818, at *1 (N.D. Miss. Jan. 29, 2020) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)) (cleaned up); *see also Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *McGregory v. 21st Century Ins. & Fin. Servs., Inc.*, No. 1:15-cv-98-DMB-DAS, 2016 WL 11643678, at *2 (N.D. Miss. Feb. 2, 2016) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "A court is within its discretion to grant a stay when a related case with substantially similar issues is pending before a court of appeals." *Greco v. Nat'l Football Leage*, 116 F. Supp. 3d 744, 761 (N.D. Tex. 2015).

"When considering whether to stay a matter pending resolution of a separate action, the Fifth Circuit has considered: (1) the potential prejudice to the moving party if a stay is denied; (2) the potential prejudice to the non-moving party if a stay is granted; and (3) other difficulties inherent in the general situation, including potential judicial inefficiency. . . ." *McGregory*, 2016 WL 11643678, at *2, *5 (citing *Wedgeworth*, 706 F.2d at 545–46) (internal quotations omitted). All factors support a stay of proceedings here.

A. <u>*Louisiana v. Callais* and Other District Courts Staying Cases Based on *Callais*</u>

Before the U.S. Supreme Court on direct appeal from the Western District of Louisiana, *Callais* involves a challenge to Louisiana's new congressional redistricting plan — enacted in 2024 after the state's prior map was enjoined as likely violating Section 2 of the VRA for diluting minority voting strength[1] — as an unconstitutional gerrymander in violation of the Equal Protection Clause of the U.S. Constitution. *See Callais v. Landry*, 732 F. Supp. 3d 574 (W.D. La. 2024).

Oral arguments in *Callais* were held on March 24, 2025.[2] But instead of issuing a decision, the U.S. Supreme Court issued an order on June 27, 2025, restoring *Callais* to the calendar for reargument and noting, without further reasoning, that, "[i]n due course, the Court will issue an order…specifying any additional questions to be addressed in supplemental briefing." *Louisiana v. Callais*, 606 U.S. ----, 145 S.Ct. 2608 (June 27, 2025). In his dissenting opinion accompanying that order, Justice Clarence Thomas emphasized that "due to our Janus-like election-law jurisprudence, States do not know how to draw maps that survive both constitutional and VRA review" and that "this Court's §2 jurisprudence is broken beyond repair." *Id*. at 2611 (Thomas, J. dissenting). Further underscoring this point, Justice Thomas noted that, "[a]lthough the Court has long recognized that its VRA jurisprudence and the Equal Protection Clause are in tension. . .its recent decision in *Allen v. Milligan*, 599 U.S. 1 (2023), has placed the VRA in direct conflict with the Constitution." *Id*.

---

[1] *See Robinson v. Ardoin*, 605 F. Supp. 3d 759 (M.D. La. 2022), *aff'd*, 86 F.4th 574 (5th Cir. 2024) ("*Robinson*"). In addition to enjoining future use of the prior map, the district court ordered the creation of an additional majority-Black district to avoid "vote dilution" and comply with Section 2. *Robinson*, 605 F. Supp. 3d at 857–58.

[2] *See* Supreme Court of the United States October Term, 2024 Hearing List for the Session Beginning March 24, 2025, https://www.supremecourt.gov/oral_arguments/hearinglists/HearingList-March2025.pdf.

Evidently, these concerns were recognized, and on August 1, 2025, the U.S. Supreme Court ordered expedited, supplemental briefing on "[w]hether the State's intentional creation of a second majority-minority congressional district violates the Fourteenth or Fifteenth Amendments to the U. S. Constitution." *Louisiana v. Callais*, --- S.Ct. ---, 2025 WL 2180226 (Aug. 1, 2025). Briefing on that issue will be completed by October 3, 2025. *Id*. Reargument is scheduled for October 15, 2025.[3]

Against this backdrop, proceeding with this case under the current unsettled Section 2 and Equal Protection landscape while the U.S. Supreme Court's decision in *Callais* is pending reargument and a decision would not only significantly prejudice Defendants but would waste significant time and resources for both this Court and the parties, while Plaintiffs would likely suffer minimal prejudice, if any. Judicial efficiency and economy of time and resources of both this Court and the parties strongly support a stay of all proceedings in this case pending resolution of *Callais*.

To begin, the U.S. Supreme Court's forthcoming decision in *Callais* will undoubtedly have a direct and substantial impact on the outcome of this case that challenges the 2022 Plan as diluting the voting strength of the County's Black population in violation of Section 2 of the VRA. The central issue in *Callais* concerns the constitutionality of the creation of a majority-minority district and, more fundamentally, the constitutionality of Section 2. Should the U.S. Supreme Court decide that Section 2 is unconstitutional, then this case will effectively be over given that Plaintiffs' sole claim is based on Section 2. In any event, the U.S. Supreme Court's resolution of similar issues in the Section 2 and Equal Protection jurisprudence (or at least clarification and guidance on this area

---

[3] *See* Supreme Court of the United States October Term 2025 for the Session Beginning October 6, 2025, https://www.supremecourt.gov/oral_arguments/argument_calendars/MonthlyArgumentCalOctober2025.pdf (Aug. 12, 2025).

PD.50738675.1

of law) will be directly relevant to this case. As Justice Thomas aptly noted in his dissenting opinion, the question of whether Louisiana's redistricting plan "complies with the Constitution. . . .is intwined with the legitimacy of the *Robinson* court's §2 rulings in prior litigation." *Callais*, 606 U.S. ----, 145 S.Ct. at 2611.

Indeed, for many of the same reasons, district courts within this Circuit have already stayed proceedings pending a decision by the U.S. Supreme Court in *Callais*. *See Nairne v. Ardoin*, No. 3:22-cv-178, at Doc. No. 345 (M.D. La. Aug. 6, 2025) (granting stay and cancelling pretrial conference and other evidentiary hearings pending resolution by the U.S. Supreme Court in *Callais*); *Clark v. Edwards*, No. 3:86-cv-435, at Doc. No. 752 (M.D. La. July 17, 2025) ("[T]his matter is stayed and administratively closed pending a decision by the United States Supreme Court in *Louisiana v. Callais*[.]"); *League of United Latin Am. Citizens v. Abbott*, No. 3:21-cv-259, at Doc. No. 1126 (W.D. Tex. Aug. 11, 2025) (staying proceedings in redistricting litigation and suspending deadlines for findings of facts and conclusions of law pending a decision in *Callais*).

Most recently, the same day that the Fifth Circuit issued its opinion in *Nairne v. Landry*, No. 24-30115, --- F.4th ---, 2025 WL 235524 (5th Cir. Aug. 14, 2025), the mandate was withheld by a judge of this Circuit. *Id.* at Doc. No. 313 (5th Cir. Aug. 14, 2025).[4] That case arose on appeal from the district court's order enjoining Louisiana's legislative redistricting maps in their entirety for violating Section 2 by "packing" Black voters into a small number of majority-minority districts and "cracking" other Black communities across multiple districts. *Nairne v. Landry*, 2025 WL 235524, at *1.

---

[4] The day after the mandate was withheld, Louisiana moved for abeyance of appeal proceedings and suspension of the deadline for filing a petition for rehearing *en banc* pending the Supreme Court's decision in *Callais*. *Id.* at Doc. No. 319. Alternatively, the state requested a 60-day extension of time to seek rehearing *en banc*. *Id.* Although the Fifth Circuit recently denied the state's motion to stay further appeal proceedings, it granted the state's alternative request for a 60-day extension to seek rehearing *en banc*. *Id.* at Doc. No. 328-2.

Just like the instant matter, all these cases involve Section 2 claims, particularly those predicated on allegations of diluting minority voting strength. This indicates that courts have recognized the importance of the U.S. Supreme Court's upcoming decision in *Callais* involving identical Section 2 claims and similar legal issues.

This Court should likewise do the same. *See, e.g.*, *McGregory*, 2016 WL 11643678, at *4–5 (applying *Wedgeworth* factors, concluding that "the relevant factors justify following the lead of the numerous district courts which have granted stays under similar circumstances[,]" and granting opposed motion to stay pending resolution of separate case before the U.S. Supreme Court); *Huey*, 2020 WL 475818, at *2 (granting stay of all proceedings pending a ruling by the Fifth Circuit in a separate case as "the resolution of which will likely materially impact the claims pending in this case" and agreeing "that the outcome of the [ ] appeal will be directly relevant to the issues raised in this matter."); *Adams v. ACSO of Tex., Inc.*, 2011 WL 2421088, at *4 (W.D. Tex. June 13, 2011) (granting stay because the U.S. Supreme Court's decision would resolve the case); *Nairne v. Ardoin*, 2022 WL 3756195, at *2 (M.D. La. Aug. 30, 2022) (granting stay of all proceedings pending U.S. Supreme Court's resolution of *Merrill v. Milligan* involving similar Section 2 issues and concluding that "[o]nce *Merrill* is decided, this important case can be litigated without the risk of draining the parties' and the Court's resources, only to start over if legal contours change."); *Miss. Band of Choctaw Indians v. Mississippi*, 1991 WL 255614 (S.D. Miss. Apr. 9, 1991) (granting stay of all proceedings pending U.S. Supreme Court's forthcoming ruling involving "the same issue that currently faces this Court"); *Alford v. Moulder*, 2016 WL 6088489 (S.D. Miss. Oct. 7, 2016) (granting stay pending a decision in a related case on appeal).

B. <u>Fifth Circuit's Factors Warranting Stay Are Met in this Case</u>

　　1. *Significant Prejudice to Defendants*

The potential prejudice to Defendants militates strongly in favor of granting a stay. If a stay is denied, the prejudice to Defendants that could result from a liability finding and remedial order from this Court pre-dating the U.S. Supreme Court's decision in *Callais* puts Defendants at risk of having this case decided under a law that is no longer constitutional or under a legal theory or standard that may no longer be applicable. Defendants would also be forced to expend significant taxpayer funds, considerable time, and other resources litigating the remainder of this case, preparing for trial, and defending against Plaintiffs' single claim at trial in which the underlying basis of the lawsuit may very well be invalidated by the U.S. Supreme Court. Indeed, "the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen legislator remains commonplace." *Bogan v. Scott-Harris*, 523 U.S. 44, 44–45 (1998). Due to the risk of significant prejudice to Defendants, this consideration militates in favor of a stay.

　　2. *Minimal Prejudice to Plaintiffs.*

There would be minimal prejudice, if any, to Plaintiffs if a stay is granted. Any arguments that Plaintiffs would be prejudiced by a delay in final judgment and declaratory and injunctive relief to which they believe they are entitled are unavailing.

Plaintiffs seek a declaratory judgment "that the district boundaries adopted by the Board of Supervisors and used to elect the Board of Supervisors, the Election Commission, the Board of Education, Constables, and Justice Court judges den[ies] or abridge[s] the rights of Plaintiffs to vote in violation of Section 2 of the VRA, 52 U.S.C. § 10301." Compl. [1] at pp. 36–37. Because there has been no finding of a Section 2 violation, any accompanying claims for declaratory relief

would be subject to dismissal. *See Foster v. Reliance First Capital, LLC*, 2020 WL 5260768, at *5 (N.D. Miss. 2020) ("The Fifth Circuit has found that the Declaratory Judgment Act…is merely a procedural device and does not create any substantive rights or causes of action.") (internal quotations omitted). The same is true for any general or vague arguments of continuing or ongoing harm because there has been no prior liability determination. *See Sowers v. Darby*, 2009 WL 742730, at *6 (N.D. Miss. 2009) ("Because there is no ongoing injury to Sowers and any threat of future injury is neither imminent or likely, there is not a live case or controversy for this court to resolve and a declaratory judgment would therefore be inappropriate."). From that, it necessarily follows that Plaintiffs would not be prejudiced by a stay in obtaining their relief that "Defendants and their agents" be "[p]ermanently enjoin[ed] from holding any election" for the County offices at issue "under the existing district boundaries" because, logically, there is nothing to enjoin here. Put simply, any supposed prejudice results only from a speculative and impermissible request for this Court to prejudge this case's ultimate outcome.

In any event, even if Plaintiffs were to ultimately prevail on their sole Section 2 claim, that success would likely be short-lived. Any decision rendered prior to the decision in *Callais* would be based on an outdated view of the law. The Fifth Circuit would surely vacate any judgment and injunction and remand for further consideration in light of *Callais*. Plaintiffs would be in the same position regardless. In fact, if anything, proceeding with this case before the U.S. Supreme Court's forthcoming decision in *Callais* would prejudice Plaintiffs because they would expend substantial time and resources only to later find out that the underlying basis of their sole claim for relief is unconstitutional.

Further, the length of stay is not indefinite or unknown. The U.S. Supreme Court customarily "issue[s] all decisions before the start of its summer recess in June." *McGregory*, 2016

WL 11643678, at *3 (taking judicial notices of a "long-used practice[] in the courts" and citing cases recognizing the same). As previously noted, the U.S. Supreme Court ordered expedited, supplemental briefing, and reargument is already scheduled for October 15, 2025. *See supra* note 1. So, at the very latest, the U.S. Supreme Court will most likely issue its opinion by the end of June 2026. *See, e.g.*, *McGregory*, 2016 WL 11643678, at *3–4; *Evergreen Presbyterian Ministries, Inc.*, 826 F. Supp. 1050, 1062 (E.D. Tex. 1993) ("[T]he ends of justice, judicial economy and simple prudence compel the Court to stay this action until the Supreme Court renders its *Landgraf* decision next Term."). And as Justice Thomas acknowledged, the U.S. Supreme Court has "an obligation to resolve such [constitutional] challenges promptly" and the issues in *Callais* "warrant immediate resolution. . .due to our Janus-like election-law jurisprudence." *Callais*, 606 U.S. ----, 145 S.Ct. at 2608–09, 2611.

       3.  *Judicial Efficiency and Resolution of Other Difficulties.*

Judicial efficiency and resolution of the issues under consideration by the U.S. Supreme Court in *Callais* strongly support a stay of these proceedings.

As already explained, the U.S. Supreme Court is poised to consider potentially dispositive questions or, at least, clarify and provide further guidance on this area of the law, that will directly and substantially impact this case. Staying this case will allow this Court to be able to make its initial determination with the benefit of *Callais* and ensure a uniform and consistent interpretation of the law, and more importantly, ensure that any decision and further proceedings in this case are made in accordance with the U.S. Supreme Court's forthcoming and binding decision. On that point, staying this case will prevent the parties and this Court from proceeding under an outdated view of the law and decrease the likelihood of any unnecessary appeal. As previously explained, any decision made by this Court would certainly be appealed by the non-prevailing party once

PD.50738675.1

*Callais* is decided. The Fifth Circuit would most likely vacate and remand in light of the U.S. Supreme Court's decision in *Callais*. *See Miss. Band of Choctaw Indians*, 1991 WL 255614, at *6 ("If this Court were to enter an opinion on the eleventh amendment issue at this time, it would certainly be appealed by the non-prevailing party. This Court's order would then be reviewed by the [ ] Fifth Circuit, which would have the benefit of the *Noatak* ruling at the time that it considered these issues.").

In the same vein, a stay also prevents this Court from incorrectly entertaining jurisdiction over this case. Should the U.S. Supreme Court decide that Section 2 is unconstitutional, then this Court would lack jurisdiction to resolve this case given that Plaintiffs' lawsuit clearly arises under Section 2 of the VRA. *See, e.g.*, *McGregory*, 2016 WL 11643678, at *4–5 (concluding that "judicial economy favors a stay where, as here, the proposed stay . . . may prevent the Court from incorrectly entertaining jurisdiction over an action" and citing cases concluding the same). A jurisdictional issue, as a threshold matter, "can be appealed as of right from any order entered by this Court[.]" *Miss. Band of Choctaw Indians*, 1991 WL 255614, at *6; *see also Noatex Corp. v. King Const. of Houston LLC*, 74 F. Supp. 3d 764, 768–69 (N.D. Miss. 2014) (citing *In re Bass*, 171 F.3d 1016, 1021 (5th Cir. 1999)) (noting that "[f]ederal courts must be assured of their subject matter jurisdiction at all times and may question it *sua sponte* at any stage of the judicial proceedings.").

Similarly, it follows, that judicial economy favors a stay where, as here, the stay will "obviate the need for complex litigation" given that the U.S. Supreme Court is going to answer potentially dispositive questions (or at least clarify this area of law). *See McGregory*, 2016 WL 11643678, at *4–5 (recognizing that "there is no dispute that the Spokeo decision has the potential to dispose of this matter on jurisdictional grounds" and concluding that "judicial economy favors

a stay where, as here, the proposed stay . . . may obviate the need for complex litigation[.]"). There is no doubt, as counsel for Plaintiffs have recognized, that "[d]ue to its complex and time-intensive nature, Section 2 litigation strains district court judges and judicial resources." Legal Defense Fund, *The Cost (in Time, Money, and Burden) of Section 2 of the Voting Rights Act Litigation*, at p. 2 (Sept. 2021).

Put simply, proceeding with this case before the law is settled or before the U.S. Supreme Court provides guidance and clarification on this area of law would be inefficient and would create a significant risk of wasting the resources and time of the parties and this Court. *See, e.g.*, *Nairne v. Ardoin*, 2022 WL 3756195, at *2 ("Once *Merrill* is decided, this important case can be litigated without the risk of draining the parties' and the Court's resources, only to start over if legal contours change.").

At bottom, the tension between the VRA and the Equal Protection Clause remains a "notoriously unclear and confusing" area of law. *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanagh, J. concurring in grant of applications for stays). This Court should therefore stay proceedings pending resolution of *Callais* by the U.S. Supreme Court.

II. **Alternatively**, **Good Cause Exists to Continue Trial**

Alternatively, good cause exists to continue the trial and corresponding pretrial deadlines in this case pending the U.S. Supreme Court's decision in *Callais*.

Scheduling orders may be amended for "good cause." *See* Fed. R. Civ. P. 16(a). Good cause is determined through four considerations: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in the amendment; and (4) the availability of a continuance to cure such prejudice." *S&W Enters. v.*

PD.50738675.1

*SouthTrust Bank of Am., NA*, 315 F.3d 533, 536 (5th Cir. 2003) (cleaned up). For many of the same reasons already explained above, each factor supports the requested continuance.

With respect to the first and fourth factors, Defendants are timely requesting a continuance of trial well in advance of the current trial setting scheduled for the term beginning on January 26, 2026. Ample time is available to support the importance of the continuance of trial and related pretrial deadlines in light of the U.S. Supreme Court's forthcoming decision in *Callais*. No prior trial continuances have been requested or granted, and this case was only filed in September 2024.

With respect to the second factor, Defendants have already explained in great detail the importance of the requested continuance. The U.S. Supreme Court is poised to decide issues that will directly and substantially impact the outcome of this case and could be potentially dispositive of this case. At a minimum, the U.S. Supreme Court will certainly provide clarification and guidance on the current unsettled Section 2 and Equal Protection jurisprudence that is directly relevant to the parties' claims and defenses here.

With respect to the third factor, any potential prejudice to Plaintiffs if trial is continued is minimal. Presumably, Plaintiffs will argue that they will be prejudiced by the delay in the requested relief to which they believe they are entitled. But the U.S. Supreme Court has indicated, and multiple other courts have recognized, a potential significant change in the Section 2 and Equal Protection landscape. Any decision of liability and consequential remedial action rendered prior to the U.S. Supreme Court's decision in *Callais* would come at the risk of being based on an outdated view of the law, creating confusion among the public should this Court's ruling be followed within mere months by a change in the law through *Callais*, and would be susceptible to appeal, vacatur, and remand should the *Callais* decision result in a change to the law on which this

lawsuit is based. This will cost countless amounts of time and taxpayer dollars and will only serve to waste the previous resources of the court and the parties.

In sum, all factors weigh in favor of continuing trial and corresponding pretrial deadlines. *See Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000) (citation omitted) ("When the question for the trial court is a scheduling decision, such as whether a continuance should be granted, the judgement range is exceedingly wide, for. . .the district court must consider not only the facts of the particular cases but also all demands on counsel's time and the court's.").

## CONCLUSION

By constitutional design, the U.S. Supreme Court is the final interpreter of statutes and our constitution. This means that lower courts must follow the U.S. Supreme Court's decisions evaluating the constitutionality of statutes and interpreting and applying those that pass constitutional muster. *See, e.g.*, *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). It is prudent, then, for this action not to move forward until *Callais* is decided. A contrary conclusion risks inconsistent judgments and an unnecessary waste of resources. This motion should be granted.

Dated: September 3, 2025.

Respectfully submitted,

PHELPS DUNBAR LLP

BY:  */s/ Nicholas F. Morisani*
D. Michael Hurst, Jr., MB #99990
W. Thomas Siler, Jr., MS #6791
Nicholas F. Morisani, MB #104970
Sonya C. Dickson, MB #106284
1905 Community Bank Way, Suite 200
Flowood, Mississippi 39232
Telephone: 601-352-2300
Telecopier: 601-360-9777
mike.hurst@phelps.com
nicholas.morisani@phelps.com

PD.50738675.1

tommy.siler@phelps.com
sonya.dickson@phelps.com

*And*

Andrew W. Coffman, MB#106207
105 East Main Street, Suite 201
Tupelo, Mississippi 38804
Telephone: 662-842-7907
Telecopier: 662-842-3873
andrew.coffman@phelps.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

      I certify that on September 3, 2025, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record in this action.

                                              */s/ Nicholas F. Morisani*
                                              Nicholas F. Morsani