**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

| | |
|---|---|
| **HAROLD HARRIS; PASTOR ROBERT TIPTON, JR.; DELTA SIGMA THETA SORORITY, INC.; and DESOTO COUNTY MS NAACP UNIT 5574** | **PLAINTIFFS** |
| **VS.** | **CIVIL NO.: 3:24-CV-00289-GHD-RP** |
| **DESOTO COUNTY, MISSISSIPPI; DESOTO COUNTY BOARD OF SUPERVISORS; and DESOTO COUNTY ELECTION COMMISSION** | **DEFENDANTS** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO
STRIKE PORTIONS OF WILLIAM S. COOPER'S REPLY REPORT**

After Defendants' expert criticized Cooper's three illustrative plans provided in his initial report, Cooper included two more illustrative plans in his "reply" report. Not only is this improper rebuttal disclosure subject to being stricken, but it severely prejudices DeSoto County.

The Case Management Order made clear when Plaintiffs had to make their expert disclosures. Plaintiffs were well aware of this deadline and met it. Defendants then rebutted those disclosures. Only after that rebuttal have Plaintiffs come forward with two new alternative plans. DeSoto County has no opportunity to obtain expert testimony to rebut those new plans because DeSoto County's expert deadline has long passed and the end of discovery is looming. As such, allowing Plaintiff's expert to testify to his two late-disclosed alternative plans, without allowing DeSoto County to rebut that testimony, would cause an unfair trial that would not result in the discovery of the truth.

DeSoto County moves the Court to strike the two new plans disclosed in William S. Cooper's "Reply Report" or in the alternative to stay the current discovery deadlines and to set

new expert disclosure deadlines so that DeSoto County may respond to the two late-disclosed alternative plans.[1]

## BACKGROUND

This lawsuit brought by Plaintiffs Harold Harris, Robert Tipton, Jr., Delta Sigma Theta Sorority, Inc., and DeSoto County MS NAACP Unit 5574 ("Plaintiffs") involves a statutory challenge to the DeSoto County's 2022 redistricting plan ("2022 Plan") adopted by the DeSoto County Board of Supervisors ("Board of Supervisors"). *See generally* Compl. [1]. Plaintiffs allege that the 2022 Plan violates Section 2 of the VRA because it "cracks the Black community and dilutes Black voting power in DeSoto County in a manner that denies Black voters an equal opportunity to elect a candidate of choice to any County Office in any of the five districts." *Id*. at ¶ 81; *see also id*. at ¶ 20, 27, 81, 237. Relevant here, Plaintiffs allege that, "[c]onsistent with traditional redistricting principles, there were many ways the Board of Supervisors could have drawn a reasonably configured majority-Black district in DeSoto County that would provide the opportunity for Black voters in DeSoto County to elect a candidate of choice in each of the elections for which the districts are used." *Id*. at ¶ 95.

In addition to requesting an award of "attorneys' fees and costs of their suit," Plaintiffs seek, among other things, a declaration that "the district boundaries adopted by the DeSoto County Board of Supervisors and used to elect the Board of Supervisors, the Election Commission, the Board of Education, Constables, and Justice Court judges deny or abridge the rights of Plaintiffs to vote in violation of the VRA[;]" that Defendants and their agents be permanently enjoined from holding any elections for the County offices at issue "under the existing district boundaries;" and

---

[1] To avoid confusion, DeSoto County expressly reserves its right to file a *Daubert* motion relating to Cooper's disclosures. This Motion does not raise any issue with Cooper's methodology or the reliability of his conclusions. Instead, this Motion is brought solely based on the late disclosure of Cooper's plans four and five.

that "DeSoto County adopt county election districts that do not abridge or dilute the ability of Black voters to elect candidates of their choice" within a "reasonable deadline" and court-ordered "remedial plans that do not abridge or dilute the ability of Black voters to elect candidates of their choice" should the County fail to do so by the deadline. *Id*. at pp. 35–36.

Plaintiffs' expert designation deadline was April 18, 2025, and Defendants' expert designation deadline was June 6, 2025. *See* Case Management Order [67]. On April 18, Plaintiffs served their expert reports,[2] including Cooper's initial report. *See* **Exhibit A**, Cooper Initial Report.

According to Cooper's original report, he "serve[s] as a demographic and redistricting expert" and was asked by "[t]he attorneys for Plaintiffs in this matter to determine whether the Black population in DeSoto County is 'sufficiently large and geographically compact' to allow for one majority-Black district in a five-district plan — i.e., a single-member district that meets the first *Gingles* precondition" and "to include in [his] report information on demographic and socioeconomic characteristics of the Black and White populations in DeSoto County and its municipalities." *Id*. at 1, 5, 6 (footnote omitted). Included in Cooper's initial report are three illustrative redistricting plans (Illustrative Plans 1, 2, and 3) he prepared which purportedly "demonstrate[] three different ways to draw a majority-Black district based on the 2020 Census" and that "[e]ach of these illustrative plans compl[ies] with traditional redistricting principles, including population equality, compactness, contiguity, respect for communities of interests, and the non-dilution of minority voting strength." *Id*. at 6, 20–30.

On July 11, 2025, consistent with the order granting Defendants' unopposed request to extend their expert designation deadline to that day,[3] Defendants served their expert designations,[4]

---

[2] *See* Not. of Service of Pl.'s Expert Disclosures [93].
[3] *See* Order Resetting CMO Deadlines [102].
[4] *See* Not. of Service of Def.'s Expert Designations [136].

including Dr. Sean P. Trende's report. *See* **Exhibit B**, Trende Report. In his report, Dr. Trende summarizes his criticisms of Cooper's report as follows:

- Mr. Cooper's maps often subordinate his proposed traditional redistricting principles to racial goals.

- Mr. Cooper's individual districts are frequently less compact than any in the Enacted Map.

- Mr. Cooper's maps 2 and 3 are based upon non-compact minority populations.

- Mr. Cooper's maps have comparatively low core retention rates.

- Mr. Cooper's demographic comparisons are meaningless without a proper statistical test.

*Id*. at 1. That is, Dr. Trende's report explained why the three illustrative plans developed by Cooper did not draw appropriate Black Opportunity Districts. *Id*. at 14-50.

On August 11, 2025, Plaintiffs served their expert "reply" reports,[5] including Cooper's. *See* **Exhibit C**, Cooper Reply Report. In his "reply" report, Cooper states that he "submit[s] this reply report in response to the July 11, 2025 rebuttal report filed by Dr. Sean Trende" and that "[t]his reply report adds two more" illustrative plans (Illustrative Plans 4 and 5). *Id*. at 2 & n.2.

Defendants request that portions of Cooper's "reply" report related to Illustrative Plans 4 and 5 be stricken as exceeding the scope of permissible rebuttal or supplementation.

## ARGUMENT AND AUTHORITIES

Portions of Cooper's "reply" report adding two new illustrative plans should be stricken on the grounds that these disclosures contain entirely new analyses designed to fix Cooper's originally submitted three alternative redistricting plans.

---

[5] *See* Not. of Service of Pl.'s Expert Reply Disclosures [154].

- 4 -

I. **Legal Standards for Rebuttal and Supplemental Reports**

Local Rule 26(a)(2) "requires 'full and complete disclosure' of expert materials no later than the time specified in the Case Management Order." *Kee v. Howard L. Nations, P.C.*, 2021 WL 5370322, at *1 (N.D. Miss. Nov. 16, 2021) (quoting L.U.Civ.R. 26(a)(2)). "Absent a finding of just cause, failure to make full expert disclosures by the expert designation deadline is grounds for prohibiting introduction of that evidence at trial." *Id.*

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) "allows for a rebuttal report [by an expert] so long as the report is intended solely to contradict or rebut evidence on the same subject matter identified" in an expert report served by another party. *La. Health Care Self Ins. Fund v. United States*, 2014 WL 3720526, at *1 (M.D. La. July 25, 2014). Rebuttal reports are not an opportunity to present new theories but must instead not constitute "material additions to the initial report." *McReynolds v. Matthews*, 2017 WL 5573194, at *5 (S.D. Miss. Nov. 20, 2017) (quoting *Harmon v. Ga. Gulf Lake Charles, L.L.C.*, F. App'x 31, 38 (5th Cir. 2012) (internal quotation marks omitted). Whether an opinion is styled as a "rebuttal" or "reply" or "supplemental" disclosure, a plaintiff cannot produce "wholly new expert reports or opinions" after the expert designation deadline. *Tarto v. St. Charles Parish*, 2014 WL 2979732, at *3 (E.D. La. July 1, 2014); *see also Matthews v. Remington Arms Co.*, 2009 WL 1490691, at *1 (W.D. La. May 27, 2009) ("an expert report that contains new opinions based on information available prior to the expiration of the expert report deadline is not supplemental"); *Cleave v. Renal Care Group, Inc.*, 2005 WL 1629750, at *1-2 (N.D. Miss. July 11, 2005) (striking supplemental affidavit offering new opinion made only after opposing party sought summary judgment).

"The purpose of rebuttal and supplementary disclosures is not to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *DAK*

*Americas Miss., Inc. v Jedson Eng'g, Inc.*, 2019 WL 8375811, at *3 (S.D. Miss. Sept. 27, 2019). Rather, Rule 26(a) requires a party's initial expert disclosures to be "complete and detailed." *Id*. (citing *Sierra Club Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996)). "Consistent with the above, it is appropriate to strike or exclude from consideration" new opinions filed after the expert disclosure deadline. *Cooper v. Meritor, Inc.*, 2019 WL 545187, at *6 (N.D. Miss. Feb. 11, 2019).

Additionally, district courts in Mississippi, including this Court, "have made it clear that supplemental expert reports cannot be used to 'fix' problems in initial reports." *Cooper Tire & Rubber Co. v. Farese*, 2008 WL 5104745, at *4 (N.D. Miss. Nov. 26, 2008) (collecting cases); *see also United States ex rel. Estate of Turner v. Gardens Pharmacy, LLC*, 2022 WL 1645809, at *3 n.2 (S.D. Miss. May 24, 2022); *Harvey v. Caesars Entm't Operating Co.*, 2014 WL 12653851, at *5 (N.D. Miss. May 6, 2014); *Buxton v. Lil' Drug Store Prods., Inc.*, 2007 WL 2254492, at *5 (S.D. Miss. Aug. 1, 2007) (citing *Beller v. United States*, 221 F.R.D. 689, 691–95 (D.N.M. 2003)). Further, supplemental reports cannot be used "to buttress experts' initial opinions. *Harvey*, 2014 WL 12653851, at *5. Where a plaintiff's supplemental expert report is "offered to remedy deficiencies pointed out by defendants' expert, . . . it should not be allowed." *Id*.

## II. Portions of Cooper's Reply Report Exceed the Scope of Permissible Rebuttal or Supplemental Reports

A plaintiff advancing a Section 2 vote dilution claim must satisfy, as a threshold matter, all three *Gingles* preconditions. *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986). Relevant here, the first *Gingles* precondition requires a plaintiff asserting a vote dilution claim to establish that the minority group is sufficiently large and geographically compact to form a majority in a single-member district. *Id*. To satisfy this precondition, plaintiffs are often required to come forward with an alternative or hypothetical redistricting plan that demonstrates that the minority group is

sufficiently large and geographically compact. *See Harding v. Cnty. of Dallas, Tex.*, 948 F.3d 302, 308 (5th Cir. 2020).

It is clear that the two additional illustrative plans developed by Cooper and contained in his "reply" report are not a proper rebuttal opinion or a mere supplement to his original opinion. Rather, they are new opinions in the face of Dr. Trende's criticisms to Cooper's previous set of opinions. For instance, Cooper's fourth plan, first disclosed in his "reply" report was "developed . . . to negate Dr. Trende's 'narrowness' claim that seems to suggest I had to make race-based decisions to squeak across the 50%+1 threshold." Ex. C at 6. Likewise, Cooper's newly disclosed fifth plan creates another new map in response to Dr. Trende's criticism that Cooper's first plan would have disrupted the election campaigns of sixty percent of all the incumbents in DeSoto County (15 of the 25 incumbents). Ex. C at 9. This is improper. *See, e.g., Familias Unidas Por La Educacion v. El Paso Indep. Sch. Dist.*, 2022 WL 2906505, at * (W.D. Tex. July 22, 2022) (finding that an expert "clearly used his Supplemental Report to perform a new analysis with data that he had available to him at the time he wrote his original report" and recognizing that Rule 26(e)(2) is "not designed to provide additional opportunities for experts to rebut the opposing party's criticisms"); *White v. State Bd. of Elec. Comm'rs*, 2023 WL 2957819, at *6 (N.D. Miss. April 14, 2023) (finding that the expert's "rebuttal report is based on an entirely new set of data and analysis of that data that was occasioned by Dr. Burch realizing, after reading Dr. Swanson's expert report, that when properly analyzed, the CPS data actually supported the opposite of her opinion").

### III. All Factors Weigh in Favor of Striking Portions of Cooper's "Reply" Report

The decision of whether to strike expert disclosures as untimely or as otherwise improper is within the Court's discretion and involves the consideration of four factors: (1) the explanation for the untimely or improper disclosure; (2) the importance of the testimony; (3) the potential

prejudice in allowing the testimony; and, (4) the availability of a continuance to cure such a prejudice. *See Kee*, 2021 WL 5370322, at *3; *Harvey*, 2014 WL 12653851, at *3. In the instant case, the Court should strike the portions "Reply Report" submitted by Cooper that outline his two new alternative redistricting plans on the grounds that these disclosures contain entirely new analyses designed to fix Cooper's originally submitted three alternative redistricting plans.

### a. There is no excuse for Cooper's late disclosed new opinions contained in his "reply" report

Cooper has not yet identified the basis for his late disclosed report. However, the law is clear that a plaintiff must come forward with alternative redistricting plans, simply to meet the preconditions necessary to obtain relief pursuant to Section 2 of the Voting Rights Act. Those alternative redistricting plans have to be based on information and data that was available to the political subdivision that enacted the original redistricting plan. That is, plaintiffs in Section 2 cases have to show that the political subdivision, based on the available information, was able to draw a Black Opportunity District.

Thus, Cooper had access to all the data and information necessary to develop his untimely Illustrative Maps 4 and 5. Despite this, he failed to develop these illustrative maps by Plaintiffs' expert designation deadline on April 18, 2025. Only after Defendants' expert pointed out the problems with the three illustrative maps disclosed by Cooper, did he develop his fourth and fifth maps. Courts throughout the Fifth Circuit have found that this is an insufficient basis for the late disclosure of an expert opinion. *See, e.g.*, *Farese*, 2008 WL 5104745, at *4; *Ex rel. Estate of Turner*, 2022 WL 1645809, at *3 n.2; *Harvey,* 2014 WL 165381, at *5; *Buxton*, 2007 WL 2254492, at *5 (S.D. Miss. Aug. 1, 2007).

- 8 -
PD.50667077.1

### b. Plaintiffs have already submitted testimony regarding alternative plans

It is undisputed that testimony regarding the first *Gingles* precondition is important to the ultimate resolution of this case. Plaintiffs, however, have already submitted a report from Cooper setting forth three alternative redistricting plans. *See generally* Ex. A. Because this Motion does not move to strike that initial report, any prejudice based on the exclusion of important testimony is diminished. That is, Plaintiffs hired Cooper, a professional expert, and obtained three separate opinions regarding possible alternative redistricting plans. Only after DeSoto County's expert identified problems with those plans did Cooper come up with two new untimely-disclosed plans. Thus, while the topic at issue is of great importance, striking Cooper's two new alternative plans will not affect his ability to testify as to this topic based on his original expert report.

### c. Defendants Would Be Severely Prejudiced If Cooper's Late-Disclosed Testimony is Allowed.

Defendants retained Dr. Trende to issue a report in response to Cooper's report. *See* Ex. B. At great expense, Defendants had Dr. Trende issue a report which found serious problems with the alternative plans proposed by Cooper. At that point, the issue of the alternative redistricting plans was fully disclosed. Plaintiffs put forth their alternative maps. Defendants pointed out issues with the maps. The parties are now scheduled to depose each side's experts, and the Court will then decide whether the alternative maps meet the *Gingles* precondition.

Cooper's "Reply Report" breaks down that standard, orderly procedure. Now Cooper has presented two wholly new alternative redistricting plans. The Rules do not allow Defendants to obtain and disclose expert opinion relating to those new plans nor is there time left in the discovery schedule for such response from Defendants. That means that Plaintiffs, if allowed to rely on alternative plans four and five, will have the opportunity to present alternative redistricting plans and DeSoto County will not be able to put on expert testimony to point to any problems with those

alternatives. Such a process is worse than trial by ambush. Instead of getting to the truth of the parties' dispute, such a procedure gives an unmistakable advantage to Plaintiffs and undercuts Defendants' due process rights.

Further, to the extent Cooper has abandoned any of his first three alternative plans, that has already prejudiced Defendants by forcing its expert to respond to and point out the flaws in plans that Cooper no longer intends to support. To the extent Cooper maintains his support for each of his first three alternative plans, disclosing two additional alternative plans will require Defendants to undertake additional expert expense. Under either scenario, as Mississippi federal courts have found, when a defendant is forced to incur additional expense due to a plaintiff's improper expert disclosures, the prejudice factor weighs in favor of the defendant and exclusion of the challenged disclosures. *Raymond James Trust, N.A., Trustee of E.C. Care Trust v. Natchez Hos. Co.*, 2021 WL 2556593, at *4 (S.D. Miss. June 22, 2021).

### d. Continuance Could Cure the Non-Monetary Prejudice to DeSoto County, but Not the Monetary Harm.

The fourth and final factor for the Court to consider is whether a continuance would cure any prejudice. Because the prejudice to Defendants stems from both a lack of time to complete discovery and substantial expense, it is clear that a trial continuance and corresponding extension of the discovery and motions deadlines alone would not cure the prejudice occasioned. *See White v. State Bd. of Elec. Comm'rs*, 2023 WL 2957819, at *6 (N.D. Miss. April 14, 2023). That is, when a party late discloses an expert opinion (that, if allowed to stand, would require the other party to expend additional funds on experts) there is prejudice that cannot be cured by a continuance. *Id.* (citing *Raymond James*, 2021 WL 2556593, at *4).

In the event that this Court determines that portions of Cooper's "reply" report should not be stricken, Defendants request 30 days to obtain a surrebuttal report to address the newly added

illustrative plans and related opinions, with Plaintiffs to bear all costs and expert fees, to alleviate the significant prejudice suffered by Defendants. *See White*, 2023 WL 2957819 at *6

## CONCLUSION

For the foregoing reasons, Defendants respectfully request an order striking the two new plans disclosed in William S. Cooper's "Reply Report," or, in the alternative, an order staying the current discovery deadlines and setting new expert disclosure deadlines so that Defendants may respond to the two late-disclosed alternative plans.

Dated: September 5, 2025.

                                        Respectfully submitted,

                                        PHELPS DUNBAR LLP

                                        BY:   */s/ Nicholas F. Morisani*
                                                     D. Michael Hurst, Jr., MB #99990
                                                     W. Thomas Siler, Jr., MS #6791
                                                     Nicholas F. Morisani, MB #104970
                                                     Sonya C. Dickson, MB #106284
                                                     1905 Community Bank Way, Suite 200
                                                     Flowood, Mississippi 39232
                                                     Telephone: 601-352-2300
                                                     Telecopier: 601-360-9777
                                                     mike.hurst@phelps.com
                                                     nicholas.morisani@phelps.com
                                                     tommy.siler@phelps.com
                                                     sonya.dickson@phelps.com

                                        *And*

                                        Andrew W. Coffman, MB#106207
                                        105 East Main Street, Suite 201
                                        Tupelo, Mississippi 38804
                                        Telephone: 662-842-7907
                                        Telecopier: 662-842-3873
                                        andrew.coffman@phelps.com

                                        **ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that on September 5, 2025, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

*/s/ Nicholas F. Morisani*
Nicholas F. Morsani
