1           UNITED STATES DISTRICT COURT

2           MIDDLE DISTRICT OF LOUISIANA

3

DR. DOROTHY NAIRNE, ET AL     *      CIVIL ACTION
4                                     *
VERSUS                        *      NO. 3:22-178-SDD
5                                     *
R. KYLE ARDOIN, ET AL         *      AUGUST 6, 2025
6    * * * * * * * * * * * * * *

7
                      EVIDENTIARY HEARING
8           BEFORE THE HONORABLE SHELLY D. DICK
            UNITED STATES CHIEF DISTRICT JUDGE
9

10   APPEARANCES:

11   FOR THE PLAINTIFFS:          AMERICAN CIVIL LIBERTIES UNION
                                  FOUNDATION
12                                BY:  SARAH E. BRANNON, ESQ.
                                  915 15TH STREET NORTHWEST
13                                WASHINGTON, DC 20005

14                                COZEN O'CONNOR
                                  BY:  ROBERT S. CLARK, ESQ.
15                                ONE LIBERTY PLACE
                                  1650 MARKET STREET, SUITE 2800
16                                PHILADELPHIA, PENNSYLVANIA 19103

17                                COZEN O'CONNOR
                                  BY:  AMANDA GIGLIO, ESQ.
18                                3 WORLD TRADE CENTER
                                  NEW YORK, NEW YORK 10007
19
                                  NAACP LEGAL DEFENSE FUND
20                                BY:  STUART C. NAIFEH, ESQ.
                                  40 RECTOR STREET, FIFTH FLOOR
21                                NEW YORK, NEW YORK 10006

22   FOR THE DEFENDANT, R. KYLE   NELSON MULLINS RILEY &
     ARDOIN, IN HIS OFFICIAL      SCARBOROUGH, LLP
23   CAPACITY AS SECRETARY OF     BY:  PHILLIP J. STRACH, ESQ.
     THE STATE OF LOUISIANA:           ALYSSA RIGGINS, ESQ.
24                                301 HILLSBOROUGH STREET,
                                  SUITE 1400
25                                RALEIGH, NORTH CAROLINA 27603

```
1                                    SHOWS, CALI & WALSH, LLP
                                     BY:  JOHN C. WALSH, ESQ.
2                                    628 ST. LOUIS STREET
                                     BATON ROUGE, LOUISIANA 70821
3
     FOR THE INTERVENORS,            OFFICE OF THE ATTORNEY GENERAL,
4    PHILLIP DEVILLIER AND           LOUISIANA DEPARTMENT OF JUSTICE
     CAMERON HENRY:                  BY:  C. TOM JONES, ESQ.
5                                    1885 NORTH THIRD STREET
                                     BATON ROUGE, LOUISIANA 70804
6
7    OFFICIAL COURT REPORTER:        SHANNON L. THOMPSON, CCR
                                     UNITED STATES COURTHOUSE
8                                    777 FLORIDA STREET
                                     BATON ROUGE, LOUISIANA 70801
9                                    SHANNON_THOMPSON@LAMD.USCOURTS.GOV
                                     (225)389-3567
10
11          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY USING
                  COMPUTER-AIDED TRANSCRIPTION SOFTWARE
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1 **INDEX**

2 **PAGE**

3 **PLAINTIFFS' WITNESS:**

4 **COMMISSIONER SHERRI WHARTON HADSKEY**

5 DIRECT EXAMINATION BY MS. GIGLIO                9

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    (AUGUST 6, 2025)
 2                (CALL TO THE ORDER OF COURT)
 3         THE COURT:  OKAY.  GOOD MORNING.
 4              BE SEATED.
 5              CALL THE CASE, PLEASE.
 6         THE DEPUTY CLERK:  THIS IS CIVIL ACTION NO. 22-178,
 7  DR. DOROTHY NAIRNE AND OTHERS VERSUS R. KYLE ARDOIN AND OTHERS.
 8         THE COURT:  OKAY.  GOOD MORNING, COUNSEL.
 9              WOULD YOU MAKE YOUR APPEARANCES FOR THE RECORD,
10  PLEASE.
11         MS. BRANNON:  YOUR HONOR, THIS IS SARAH BRANNON FOR
12  THE PLAINTIFFS AND ACLU.
13         THE COURT:  GOOD MORNING, MS. BRANNON.
14              GO AHEAD.
15         MR. CLARK:  GOOD MORNING, YOUR HONOR.
16              ROBERT CLARK OF COZEN O'CONNOR FOR THE
17  PLAINTIFFS.
18         MR. NAIFEH:  STUART NAIFEH FROM THE LEGAL DEFENSE
19  FUND FOR THE PLAINTIFFS.
20         THE COURT:  GOOD MORNING.
21         MS. GIGLIO:  GOOD MORNING, YOUR HONOR.
22              AMANDA GIGLIO FROM COZEN O'CONNOR FOR THE
23  PLAINTIFFS.
24         THE COURT:  GOOD MORNING.
25              COUNSEL FOR THE DEFENDANTS?
```

1          **MR. STRACH:**  GOOD MORNING, YOUR HONOR.

2                PHIL STRACH FOR -- COUNSEL FOR THE SECRETARY OF

3     STATE.

4          **THE COURT:**  GOOD MORNING, MR. STRACH.

5          **MR. STRACH:**  GOOD MORNING.

6          **MS. RIGGINS:**  GOOD MORNING, YOUR HONOR.

7                ALYSSA RIGGINS, ALSO FOR THE SECRETARY OF STATE.

8          **THE COURT:**  GOOD MORNING.

9          **MR. WALSH:**  GOOD MORNING, YOUR HONOR.

10               JOHN WALSH, SECRETARY OF STATE.

11         **MR. SMITH:**  GOOD MORNING, YOUR HONOR.

12               BRANDON SMITH FOR THE ATTORNEY GENERAL'S OFFICE.

13         **MR. JONES:**  TOM JONES, ALSO, YOUR HONOR, FOR CAMERON

14    HENRY.

15         **THE COURT:**  I'M SORRY.  I KNOW THAT MY COURT REPORTER

16    IS NOT GOING TO HEAR THAT, SIR.

17         **MR. JONES:**  I KNOW.  I'VE BEEN SICK FOR A WEEK.  LET

18    ME TRY THIS MICROPHONE.

19         **THE COURT:**  THANK YOU, SIR.

20         **MR. JONES:**  IT'S TOM JONES, YOUR HONOR.  I'M WITH THE

21    ATTORNEY GENERAL'S OFFICE, AND WE'RE HERE TODAY FOR PHILLIP

22    DEVILLIER AND CAMERON HENRY IN THEIR OFFICIAL CAPACITIES.

23         **THE COURT:**  THANK YOU, SIR.

24               OKAY.  AGAIN, GOOD MORNING.

25               THE COURT ORDERED AN EVIDENTIARY HEARING ON THE

1  STATE'S -- STATE DEFENDANTS', I SHOULD SAY, MOTION TO STAY
2  THESE PROCEEDINGS.
3              THE FIRST ORDER OF BUSINESS IS FOR COUNSEL TO
4  ADVISE THE COURT, EITHER THROUGH EVIDENCE OR THROUGH
5  STIPULATION, WHAT THE TIME FRAME IS FOR THE SECRETARY OF STATE
6  TO CONDUCT THE ELECTIONS IN THIS PARTICULAR CASE.
7              **MR. STRACH:**  THANK YOU, YOUR HONOR.
8              **THE COURT:**  MR. STRACH, WHY DON'T YOU APPROACH HERE.
9              **MR. STRACH:**  OH.
10             **THE COURT:**  IT'S A LOT EASIER FOR EVERYBODY.  THANK
11  YOU, SIR.
12             **MR. STRACH:**  GOOD POINT.
13             YOUR HONOR, I BELIEVE WE FILED A PLEADING THAT
14  SAID THAT JANUARY 1, 2027 WOULD BE THE DATE BY WHICH, IF WE HAD
15  A MAP, WE KNOW THAT WE COULD HAVE THAT IMPLEMENTED IN TIME FOR
16  THE 2027 ELECTIONS.
17             **THE COURT:**  OKAY.
18             **MR. STRACH:**  WE HAVE ASKED MS. SHERRI HADSKEY TO BE
19  HERE.  SHE'S HERE IN THE COURTROOM.  WE CAN HAVE HER TESTIFY
20  ABOUT THAT IF THE COURT HAS ANY QUESTIONS FOR HER, BUT THAT'S
21  SORT OF OUR BOTTOM LINE.
22             **THE COURT:**  I SAW THE JOINT SUBMISSION, WHICH WAS IN
23  A LETTER FORM.  I JUST WANTED TO MAKE SURE FOR THE RECORD THAT
24  THE SECRETARY OF STATE WAS CONFIRMING THAT JANUARY 1, 2027 WAS
25  THE LATEST POSSIBLE DATE THAT THE SECRETARY COULD HAVE A MAP IN

1    ORDER TO CONDUCT THE 2027 STATE SENATE AND HOUSE ELECTIONS.  IS

2    THAT CORRECT?

3              **MR. STRACH:**  THAT'S CORRECT, YOUR HONOR.

4              **THE COURT:**  OKAY.  THE COURT DOESN'T NEED TO HEAR

5    FROM MS. HADSKEY.  HOWEVER, IF THE PLAINTIFFS WISH TO EXAMINE

6    MS. HADSKEY ON THAT PARTICULAR ISSUE, I WILL CERTAINLY ASK HER

7    TO TAKE THE STAND AND LET YOU ASK HER SOME QUESTIONS.  IT WILL

8    BE LIMITED, HOWEVER, TO THAT ISSUE AS TO WHEN IS THE LATEST

9    TIME WE CAN GET A MAP.

10             **MS. GIGLIO:**  OF COURSE, YOUR HONOR.  WE WOULD ONLY

11   APPRECIATE THE OPPORTUNITY TO ASK ANY QUESTIONS ABOUT THE

12   ASSUMPTIONS THAT ARE BUILT INTO THAT DATE, MEANING WHAT THE

13   SECRETARY ASSESSED WHEN THEY CAME TO THAT CONCLUSION, WHAT KIND

14   OF MAP THAT THEY WERE CONTEMPLATING IMPLEMENTING, WHETHER THERE

15   ARE ANY VARIABLES THAT MIGHT AFFECT THAT DATE.

16             **THE COURT:**  MR. STRACH?

17             **MR. STRACH:**  SO, YOUR HONOR, WE CERTAINLY DON'T

18   OBJECT TO THE PLAINTIFFS ASKING MS. HADSKEY FOR SORT OF THE

19   BASIS FOR HER REASONING BEHIND THAT DATE.  THE BASIS FOR THAT

20   DATE MOSTLY LOOKS FORWARD.  IT'S LIKE, "I NEED A MAP HERE

21   BECAUSE I KNOW I CAN PROGRAM THINGS," ET CETERA.  IF THEY START

22   ASKING ABOUT HYPOTHETICALS, SPECULATIVE LIKE, "WHAT IF THIS,

23   WHAT IF THAT," THAT'S IMPOSSIBLE FOR HER TO ANSWER.

24             **THE COURT:**  I WILL TRUST YOU TO OBJECT.

25                  LET'S HAVE MS. HADSKEY TAKE THE STAND, AND WE'LL

1  CONFINE THE QUESTIONING TO THE THOUGHT PROCESS OR THE FACTORS

2  THAT WENT INTO THE JANUARY 1, 2027 DATE.

3           GOOD MORNING, MS. HADSKEY.

4       **THE WITNESS:**  GOOD MORNING.

5        **COMMISSIONER SHERRI WHARTON HADSKEY,**

6     **HAVING BEEN DULY SWORN, TESTIFIED AS FOLLOWS:**

7       **MR. STRACH:**  YOUR HONOR, MAY I INTERRUPT?

8       **THE COURT:**  YOU MAY.

9           GO AHEAD AND TAKE THE STAND, SHERRI.

10      **THE WITNESS:**  OH.

11      **MR. STRACH:**  WE HAVE A DOCUMENT THAT'S ON THE

12  SECRETARY OF STATE'S WEBSITE WITH THE 2027 SORT OF ELECTION

13  TIMELINE.

14      **THE COURT:**  CYCLE.

15      **MR. STRACH:**  DO YOU MIND IF -- PRIOR TO COUNSEL --

16  OH.  YOU'RE GOING TO HAND HER THAT?

17      **MS. GIGLIO:**  I CAN HAND HER THAT.

18      **MR. STRACH:**  OKAY.  THAT'S GREAT.

19      **MS. GIGLIO:**  IF THE COURT DOESN'T MIND, WE COULD JUST

20  DO THAT.

21      **THE COURT:**  GREAT.  YOU CAN PUT IT ON THE ELMO AND

22  THAT WAY EVERYBODY CAN SEE IT.

23      **MR. STRACH:**  OKAY.

24      **THE COURT:**  INCLUDING THE COURT.

25      **MR. STRACH:**  THAT WOULD BE GREAT.

COMMISSIONER SHERRI WHARTON HADSKEY

1            AND IF YOU DON'T MIND GIVING THE -- WILL IT SHOW
2    UP ON SHERRI'S --
3            **THE DEPUTY CLERK:**  YES.
4            **MR. STRACH:**  GREAT.  THANK YOU.
5            **THE COURT:**  OKAY.  WHY DON'T YOU STATE YOUR NAME --
6            **MS. GIGLIO:**  OF COURSE, YOUR HONOR.
7            **THE COURT:**  -- FOR THE RECORD AGAIN.
8            **THE DEPUTY CLERK:**  HOLD ON ONE SECOND.
9            **MS. GIGLIO:**  SURE.
10           **THE DEPUTY CLERK:**  WOULD YOU PLEASE STATE YOUR NAME
11   AND SPELL IT FOR THE RECORD.
12           **THE WITNESS:**  CERTAINLY.  SHERRI, S-H-E-R-R-I,
13   WHARTON, W-H-A-R-T-O-N, HADSKEY, H-A-D-S-K-E-Y.
14           **THE COURT:**  GO AHEAD.
15           **MS. GIGLIO:**  GOOD MORNING, YOUR HONOR.
16                      **DIRECT EXAMINATION**
17   **BY MS. GIGLIO:**
18   **Q.**   GOOD MORNING, COMMISSIONER HADSKEY.
19   **A.**   GOOD MORNING.
20           **MS. GIGLIO:**  AMANDA GIGLIO, G-I-G-L-I-O, FOR THE
21   BENEFIT OF THE COURT REPORTER.  I'M ONE OF THE ATTORNEYS FOR
22   THE PLAINTIFFS.
23   **BY MS. GIGLIO:**
24   **Q.**   IT'S GOOD TO YOU SEE AGAIN.
25   **A.**   GOOD TO SEE YOU.

COMMISSIONER SHERRI WHARTON HADSKEY

1  **Q.**  THANK YOU FOR TAKING THE TIME TODAY.

2  **A.**  SURE.

3  **Q.**  I JUST HAVE A FEW QUESTIONS.

4  **A.**  OF COURSE.

5  **Q.**  SO, COMMISSIONER, I --

6         **THE COURT:**  I BELIEVE IT'S SECRETARY.  RIGHT?

7         **MS. GIGLIO:**  NO.

8         **THE COURT:**  COMMISSIONER?

9         **THE WITNESS:**  YES, MA'AM.

10        **THE COURT:**  COMMISSIONER, OKAY.

11        **THE WITNESS:**  THANK YOU.

12        **MS. GIGLIO:**  I APOLOGIZE, YOUR HONOR.

13        **THE WITNESS:**  NO, NO.  THANK YOU.

14        **THE COURT:**  I JUST GAVE YOU A PROMOTION.

15        **THE WITNESS:**  I LIKE THAT.

16        **THE COURT:**  AND YOU DIDN'T EVEN HAVE TO GET ELECTED.

17        **THE WITNESS:**  THAT'S THE BEST.

18        **THE COURT:**  OKAY.  LET'S PROCEED.  THAT WAS MY

19  MISTAKE.

20        **MS. GIGLIO:**  THAT'S ALL RIGHT, YOUR HONOR.

21  **BY MS. GIGLIO:**

22  **Q.**  SO GOOD MORNING, COMMISSIONER.

23  **A.**  GOOD MORNING.

24  **Q.**  SO MY UNDERSTANDING IS THAT IT'S THE SECRETARY OFFICE'S

25  REPRESENTATION THAT YOU NEED MAPS BY JANUARY 1, 2027?

COMMISSIONER SHERRI WHARTON HADSKEY

1    **A.**   THAT'S CORRECT.

2    **Q.**   IN ORDER TO MAKE SURE THAT THEY ARE FULLY IMPLEMENTED FOR

3    THE 2027 ELECTION CYCLE.  THAT'S RIGHT?

4    **A.**   THAT'S CORRECT.

5    **Q.**   OKAY.  AND BASED ON THE CALENDAR THAT YOU CAN SEE I

6    BELIEVE ON YOUR SCREEN, WHICH IS -- I UNDERSTAND THIS TO BE THE

7    2027 ELECTION CALENDAR.  IS THAT CORRECT?

8    **A.**   THAT IS CORRECT.

9    **Q.**   AND THIS IS A DOCUMENT THAT'S PREPARED BY YOUR OFFICE.  IS

10   THAT RIGHT?

11   **A.**   THAT IS CORRECT.

12   **Q.**   SO IT'S MY UNDERSTANDING -- BUT I'D LIKE YOUR

13   CONFIRMATION -- THAT THE ACTUAL IMPLEMENTATION PROCESS OCCURS

14   BEFORE THE DEADLINE TO SUBMIT NOMINATING PETITIONS TO THE

15   REGISTRAR OF VOTERS.  IS THAT -- OR THE -- EXCUSE ME.  I'M

16   SORRY.  THE DEADLINE FOR OBTAINING SIGNATURES FOR NOMINATING

17   PETITIONS.  IS THAT RIGHT?

18   **A.**   THAT'S CORRECT.

19   **Q.**   SO THE FIRST DAY TO OBTAIN SIGNATURES FOR THE NOMINATING

20   PETITION IS THE DAY THAT YOUR OFFICE WILL HAVE IMPLEMENTED THE

21   MAP.  IS THAT RIGHT?

22   **A.**   THE FIRST DAY FOR NOMINATING PETITIONS FOR THE OCTOBER

23   ELECTION.

24   **Q.**   YES, OF COURSE.

25   **A.**   THAT IS CORRECT.

COMMISSIONER SHERRI WHARTON HADSKEY

1    **Q.**   SO --

2    **A.**   YES.

3    **Q.**   I'M SORRY TO INTERRUPT YOU, COMMISSIONER.

4    **A.**   NO, NO, NO.  YOU'RE GOOD.

5    **Q.**   GREAT.

6            SO FOR -- I JUST WANT TO BE CLEAR.  ON THIS MAP IT

7    INDICATES THE GUBERNATORIAL PRIMARY.  THAT'S ALSO THE

8    LEGISLATIVE ELECTIONS.  IS THAT RIGHT?

9    **A.**   THAT'S CORRECT.

10   **Q.**   SO THE DATE THAT YOUR OFFICE WOULD NEED THOSE MAPS TO BE

11   IMPLEMENTED BASED ON THIS CALENDAR IS APRIL 5TH OF 2027.  IS

12   THAT RIGHT?

13   **A.**   THAT'S COMPLETED AND ALL VOTERS NOTIFIED, ET CETERA, YES.

14   **Q.**   GOT IT.

15           OKAY.  AND THE TASKS -- I JUST WANT TO BE CLEAR --

16   INVOLVED IN IMPLEMENTING MAPS HAVEN'T CHANGED BETWEEN 2023 AND

17   NOW.  IS THAT RIGHT?

18   **A.**   THAT IS CORRECT, WITH A SLIGHT DIFFERENCE OF WE HAVE NOW

19   MOVED TO CLOSED PARTY PRIMARIES.  AND WITH THE CLOSED PARTY

20   PRIMARY SYSTEM, THERE IS -- IT'S MORE INTRICATELY INVOLVED IN

21   OUR ERIN, OUR ELECTIONS AND REGISTRATION INFORMATION NETWORK

22   SYSTEM.

23   **Q.**   UH-HUH.

24   **A.**   SO THERE'S MORE WORK INVOLVED, DECLARATIONS, AND VARIOUS

25   THINGS THAT HAD TO BE FACTORED INTO THIS AS WELL.

COMMISSIONER SHERRI WHARTON HADSKEY

1   **Q.**   GREAT.  UNDERSTOOD.

2   **A.**   IT'S MORE -- IT'S MORE CUMBERSOME, I GUESS, IS A GOOD WAY

3   TO PUT IT.

4   **Q.**   UNDERSTOOD.

5         SO THE JULY 1ST DATE THAT YOU REPRESENTED TO THE

6   COURT --

7   **A.**   JANUARY 1ST?

8         **THE COURT:**  JANUARY 1ST.

9         **MS. GIGLIO:**  OH.  I'M SO SORRY.

10  **BY MS. GIGLIO:**

11  **Q.**   DID I SAY JULY?

12  **A.**   YEAH.  THAT'S OKAY.

13  **Q.**   YES, JANUARY 1ST.

14        THE JANUARY 1ST, 2027 DATE THAT YOU GAVE TO THE COURT

15  WOULD GIVE YOUR OFFICE ABOUT THREE MONTHS TO IMPLEMENT THESE

16  MAPS.  IS THAT RIGHT?

17  **A.**   THAT IS CORRECT.

18  **Q.**   OKAY.  AND THAT'S THE MAXIMUM AMOUNT OF TIME THAT YOUR

19  OFFICE WOULD NEED TO IMPLEMENT THE MAPS.  RIGHT?

20  **A.**   THAT'S CORRECT.  I AM MAKING THE ASSUMPTION THAT IT WOULD

21  BE 105 REPRESENTATIVE DISTRICTS AND 39 SENATE DISTRICTS.

22  **Q.**   AND JUST TO BE CLEAR FOR THE RECORD, THAT'S 109 HOUSE

23  DISTRICTS, ALL OF THE HOUSE DISTRICTS.  RIGHT?

24  **A.**   105?

25  **Q.**   105.

COMMISSIONER SHERRI WHARTON HADSKEY

1   A.   YES.

2   Q.   GREAT.

3          AND THEN 39 SENATE DISTRICTS --

4   A.   THAT'S CORRECT.

5   Q.   -- ARE ALL OF THE SENATE DISTRICTS.  CORRECT?

6   A.   THAT'S CORRECT.

7   Q.   SO YOUR MAP OR YOUR DATE ASSUMES THAT EVERY SINGLE

8   DISTRICT IN THE LEGISLATIVE MAP WILL CHANGE?

9   A.   WOULD HAVE SOME SORT OF DISTRICT CHANGE, THAT'S CORRECT.

10  Q.   GOT IT.

11          AND I'D JUST LIKE TO QUICKLY GO OVER SOME OF THE

12  TASKS THAT ARE INVOLVED IN IMPLEMENTING A MAP AND HOW MUCH TIME

13  THE SECRETARY HAS ASSUMED OR ESTIMATED THAT IMPLEMENTATION WILL

14  TAKE, JUST SO THAT I UNDERSTAND.

15  A.   SURE.

16  Q.   SO IT'S MY UNDERSTANDING THAT THE FIRST STEP IN

17  IMPLEMENTING A NEW MAP IS PROOFREADING THE MAP.  IS THAT RIGHT?

18  A.   WE RECEIVED THE MAP IN HAND, AND WE BEGAN THE PROOFING

19  PROCESS.

20          AND WOULD YOU LIKE ME TO STEP YOU THROUGH IT, THROUGH

21  THE PROCESS?

22  Q.   SURE.

23  A.   OKAY.

24  Q.   WELL, I CAN --

25  A.   SURE.

COMMISSIONER SHERRI WHARTON HADSKEY

1  **Q.**  I CAN WALK A LITTLE BIT THROUGH IT.

2  **A.**  SURE.

3  **Q.**  BUT YOU'RE HAPPY TO --

4  **A.**  OKAY.

5  **Q.**  MY UNDERSTANDING IS THAT PROOFREADING INVOLVES LINING OUT

6  THE PRECINCTS AND THEN MAKING SURE THAT THE RIGHT VOTERS END UP

7  IN THE RIGHT AREAS?

8  **A.**  CORRECT.

9  **Q.**  IS THAT CORRECT?

10 **A.**  THAT IS CORRECT.

11 **Q.**  OKAY.  AND IT'S A THREE-STEP PROOFREADING PROCESS.  IS

12 THAT RIGHT?

13 **A.**  THAT IS RIGHT.

14 **Q.**  AND THAT MEANS THAT THREE DIFFERENT PEOPLE REVIEW THE MAP

15 AND REVIEW THE LINE-BY-LINE CHANGES TO MAKE SURE THAT

16 EVERYTHING IS RIGHT?

17 **A.**  CORRECT.  AND THERE'S OTHER THINGS TAKEN INTO

18 CONSIDERATION, SUCH AS YOU HAVE THE APRIL 17TH ELECTION.  AND

19 WHEN YOU'RE LOOKING AT THE APRIL 17TH ELECTION, YOU SEE

20 QUALIFYING DATES:  1/13 TO 1/15.

21 **Q.**  UH-HUH.

22 **A.**  SO THERE IS A DEADLINE PREVIOUS TO THAT THAT THE PARISH

23 GOVERNING AUTHORITIES HAVE TO SUBMIT PRECINCT CHANGES OR

24 POLLING PLACE CHANGES AND THINGS LIKE THAT.  SO WHEN WE'RE

25 LOOKING AT THE REDISTRICTING PROCESS, WE'RE ALSO -- YOU CAN'T

COMMISSIONER SHERRI WHARTON HADSKEY

1   JUST TAKE THE PRECINCTS THAT WERE THERE BEFORE.  YOU'RE LOOKING

2   AT ARE THERE ANY CHANGES IN ST. LANDRY, ARE THERE ANY CHANGES

3   IN EAST BATON ROUGE, AND THEN FACTORING THAT INTO THE PROOFING

4   PROCESS FOR THE REDISTRICTING PROCESS.

5   **Q.**   UNDERSTOOD.

6   **A.**   OKAY.

7   **Q.**   AND SO THE JANUARY 1ST DEADLINE THAT YOU'VE GIVEN THE

8   COURT ASSUMES THAT ALL OF THOSE PRECINCT CHANGES, ALL OF THOSE

9   -- ALL OF THE INFORMATION THAT YOU'RE RECEIVING FROM OTHER

10  OFFICES IS RECEIVED?

11  **A.**   CORRECT.

12  **Q.**   AND I JUST WANT TO ASK:  SO WHY DOES THE SECRETARY HAVE A

13  THREE-LEVEL PROOFREADING PROCESS FOR THE MAPS?

14  **A.**   BECAUSE PREVIOUSLY WITHOUT THE LEVEL OF PROOFING THAT WE

15  WERE DOING -- AND WE -- THAT'S THE SECRETARY'S PROOFING

16  PROCESS.  IT GOES FROM US TO THE REGISTRAR OF VOTERS TO PROOF

17  AS WELL, BECAUSE THE LAST THING WE EVER WANT TO DO IS PROVIDE

18  VOTERS WITH THE INCORRECT BALLOT DURING THE ELECTION PROCESS.

19          SO AS WE'RE LOOKING AT THE MAP AND LOOKING AT THE

20  DISTRICTS AND LOOKING AT WHETHER THERE'S A SPLIT PRECINCT OR A

21  WHOLE PRECINCT AND DOES THE REGISTRAR HAVE THAT INFORMATION

22  CORRECTLY LISTED INTO THE ERIN SYSTEM AND MAKING CERTAIN THAT

23  IT IS ALL CORRECT, THAT IS KEY.

24          THE OTHER PART OF IT IS THAT IT'S A DIFFERENT SET OF

25  EYES, SO IT'S NOT THE SAME PERSON LOOKING AT IT THREE TIMES.

COMMISSIONER SHERRI WHARTON HADSKEY

1    Q.    UH-HUH.

2    A.    AND IT'S NOT THE SAME REGISTRAR.  THEY LOOK AT IT AND

3    THEIR STAFF LOOKS AT IT TO BE CERTAIN.  ONCE IN A WHILE

4    SOMETHING WILL GET THROUGH THAT SHOULDN'T HAVE AND WE CATCH IT.

5    Q.    UH-HUH.

6    A.    BUT IT'S VERY DIFFICULT.  SO WE'RE TRYING TO BE CERTAIN;

7    DOT "I'S," CROSS "T'S," MAKE SURE EVERYTHING IS ACCURATE.

8    Q.    TOTALLY UNDERSTOOD.  WHEN I PROOFREAD A BRIEF THAT I'VE

9    WRITTEN, I OFTEN WILL MISS A MISTAKE.

10   A.    RIGHT.  AND IF WE FIND -- IF THE MAP WAS SUBMITTED TO US

11   AND THEN THE LANGUAGE WITH THE MAP WAS SUBMITTED TO US AND WE

12   FIND SOMETHING THAT'S A DISCREPANCY, WE NEED THE TIME TO GO

13   BACK TO WHOEVER SUBMITTED THE MAP TO SAY "YOU HAVE THE LANGUAGE

14   HERE."

15   Q.    UH-HUH.

16   A.    "BUT YOU HAVE WHAT'S ON THE MAP THIS WAY, AND WE NEED

17   CLARIFICATION."

18   Q.    GOT IT.

19   A.    SO WE FACTOR IN A LITTLE BIT OF TIME FOR THAT AS WELL.

20   Q.    SURE.

21         AND THE JANUARY 1ST DEADLINE THAT YOU'VE GIVEN TO THE

22   COURT, THAT IMPLEMENTS THE WORK THAT THE REGISTRAR OF VOTERS

23   DOES TO PROOFREAD THE MAPS ALSO?

24   A.    NO.  THAT WOULD COME -- WE WOULD START WITH THE MAP.

25   Q.    UH-HUH.

COMMISSIONER SHERRI WHARTON HADSKEY

1   **A.**  AND THE SECRETARY OF STATE'S OFFICE WOULD BEGIN THAT, AND

2   THEN IT WOULD BE SUBMITTED TO THE REGISTRAR OF VOTERS IN THAT

3   PATH DOWN THE LINE IN JANUARY.  AND THEN ONCE THEY PROOF AND

4   EVERYTHING IS FINALIZED AND ALL THE DISTRICTS ARE PLACED --

5   ORIGINALLY THEY'RE PLACED IN A PLAN.  THEY'RE NOT ACTUALLY IN

6   THE -- I GUESS THE BEST WAY TO EXPLAIN IT IS YOU'VE CREATED A

7   WORD DOCUMENT BUT YOU DIDN'T SAVE IT.

8   **Q.**  UH-HUH.

9   **A.**  OVER HERE YOU HAVE A SAVED DOCUMENT.  THIS IS STAYING THIS

10   WAY UNTIL EVERYBODY SAYS -- THEY BLESS IT AND SAY "THIS IS 100

11   PERCENT ACCURATE."  THEN IT GOES INTO THE ACTUAL LIVE ERIN

12   SYSTEM.

13   **Q.**  UH-HUH.

14   **A.**  AND THAT'S WHEN WE'RE -- OUR I.T. DIVISION IS ABLE TO

15   PRODUCE THE DOCUMENTS TO GO TO THE OFFICE OF STATE PRINTING.

16   AND THE OFFICE OF STATE PRINTING TAKES THAT INFORMATION WITH

17   THE REGISTERED VOTERS' NAMES AND THE CARD THEY'RE GOING TO

18   RECEIVE AND THE LETTER OF NOTIFICATION AND THE DISTRICTS THAT

19   THEY'RE GOING INTO, AND THEY'LL HAVE ALL OF THAT INFORMATION

20   ASSEMBLED, PLACED INTO THE ENVELOPES, AND PRODUCED FOR -- TO

21   START THE MAILING PROCESS.

22   **Q.**  SURE.

23   **A.**  STATE PRINTING HAS CONFIRMED WITH ME TIME AND TIME AGAIN

24   THAT IT TAKES THEM -- THE MOST THAT THEY CAN SEND -- ASSEMBLE,

25   AND HAVE EVERYTHING READY AND SEND IS A HUNDRED THOUSAND A DAY.

COMMISSIONER SHERRI WHARTON HADSKEY

1   **Q.**   UH-HUH.

2   **A.**   SO WHEN WE'VE HAD TO REDISTRICT FOR MILLIONS OF PEOPLE --

3   **Q.**   UH-HUH.

4   **A.**   -- WE HAVE TO FACTOR IN, THAT IF THERE'S A HUNDRED

5   THOUSAND A DAY GOING OUT, HOW LONG IS THAT GOING TO TAKE BEFORE

6   EVERY VOTER IN THE STATE IS GOING TO RECEIVE THAT CARD AND BE

7   NOTIFIED.

8   **Q.**   SURE.

9   **A.**   AND WE'RE DOING THE BEST THAT WE CAN TO MAKE CERTAIN THAT

10   EVERYONE IS NOTIFIED BEFORE THE NOMINATING PETITION DATE

11   4/5/2027.

12   **Q.**   UNDERSTOOD.

13       I JUST WANT TO UNDERSTAND: WHEN THAT PROCESS THAT

14   YOU JUST DESCRIBED THAT THE REGISTRAR OF VOTERS UNDERTAKES AND

15   THEN THE STATE PRINTING OFFICE UNDERTAKES OCCURS IN LINE WITH

16   THE OCTOBER 9TH ELECTION CALENDAR THAT'S IN FRONT OF YOU, DOES

17   THAT OCCUR BEFORE OR AFTER THE 4/5/2027 DATE?

18   **A.**   THIS PROCESS IS GOING TO HAVE TO BE BEFORE THE 4/5 DATE.

19   **Q.**   OKAY.

20   **A.**   AND LET ME EXPLAIN WHY.

21   **Q.**   SURE.

22   **A.**   BECAUSE IF YOU LOOK, WE HAVE AN APRIL 17TH DATE. ONCE WE

23   START WITH THE BALLOTS COMING IN AND THE REGISTRAR OF VOTERS

24   FOR THAT APRIL 17TH DATE YOU MAILED YOUR BALLOT BACK, WE'RE

25   UPDATING OUR ERIN SYSTEM LIVE TO SAY "YOUR BALLOT WAS RECEIVED

COMMISSIONER SHERRI WHARTON HADSKEY

1   ON THIS DATE AND TIME," ET CETERA, ET CETERA.  THEN EARLY
2   VOTING, YOU CAN SEE EARLY VOTING DATES 4/3 TO 4/10.  SO AS
3   EARLY VOTING IS GOING ON -- LET'S SAY YOU'RE ON THE 5TH OF
4   EARLY VOTING -- YOU ARE EARLY VOTING ALL DAY LONG AND THEN THAT
5   INFORMATION IS REAL-TIME.  THE NEXT DAY YOU CAN GO ONTO THE
6   SECRETARY OF STATE'S WEBSITE AND SEE THAT YOU VOTED AT THE
7   BAKER TOWN HALL AS AN EARLY VOTER.
8   **Q.**   UH-HUH.
9   **A.**   AND IT'S UPDATED.  IN ORDER TO UPDATE THAT INFORMATION
10  STATEWIDE, IT TAKES AN OVERNIGHT BUILD.  THEY START THAT
11  OVERNIGHT BUILD AT 7 P.M.  EARLY VOTING ENDS AT 6 P.M.
12  **Q.**   UH-HUH.
13  **A.**   THAT GIVES ME A ONE-HOUR WINDOW TO DO ANY KIND OF WORK --
14  **Q.**   SURE.
15  **A.**   -- THAT I WOULD HAVE TO DO.  SO WE'RE PLAYING BEAT THE
16  CLOCK ON THAT 4/5 DATE TO TRY AND MAKE THIS WORK AND HAVE
17  EVERYTHING DONE SO THAT IT DOESN'T INTERFERE WITH THE ELECTION.
18          ALSO, OUR I.T. DIVISION CONFIRMED WITH ME THAT WE
19  CAN'T CHANGE THE DISTRICTS IN THE MIDDLE OF THAT PROCESS FOR
20  THE APRIL OR MAY ELECTION.
21  **Q.**   UH-HUH.
22  **A.**   SO THAT LEADS INTO WHY THE JANUARY DATE IS SO IMPORTANT.
23  **Q.**   SURE.
24  **A.**   I ALSO CHECKED WITH STATE PRINTING, AND I CHECKED WITH
25  OTHER VENDORS ON THIS ABOUT THE LEAD TIME FOR THE PAPER THAT

COMMISSIONER SHERRI WHARTON HADSKEY

1   THEY HAVE TO ORDER.  AND THE LEAD TIME --

2   **Q.**   SURE.

3   **A.**   THERE'S A LOT OF FACTORS THAT WERE BUILT INTO HOW THIS

4   COULD WORK.  AND I'M DEPENDING ON ALL OF THESE VARIOUS ENTITIES

5   TO DO WHAT THEY'RE TELLING ME TO DO -- THAT THEY CAN DO, OR I'M

6   GOING TO BE OVER THERE WITH THEM AT NIGHT TRYING TO -- TRYING

7   TO ORDER PAPER AND GET WHAT WE NEED TO GET DONE.

8   **Q.**   SURE.  UNDERSTOOD.

9          AND I'LL WRAP UP IN JUST A MINUTE.  I JUST WANT TO

10  MAKE SURE I UNDERSTAND HOW THE ELECTIONS ACTUALLY PLAY WITH

11  EACH OTHER, WHICH IS SORT OF WHAT YOU'RE TALKING ABOUT, AT

12  LEAST AS I UNDERSTAND IT RIGHT NOW.

13  **A.**   SURE.

14  **Q.**   SO THE APRIL 5, 2027 DATE IS THE DATE THAT YOU NEED THE

15  STATE MAP IMPLEMENTED IN ORDER TO HOLD THOSE ELECTIONS IN 2027.

16  CORRECT?

17  **A.**   APRIL 5TH.

18  **Q.**   APRIL 5TH OF 2027, THE --

19  **A.**   THE NOMINATING PETITION.

20  **Q.**   YES.

21  **A.**   NOT THE ELECTION DATE, YES.

22  **Q.**   CORRECT.

23  **A.**   YES.

24  **Q.**   AND SO WHAT YOU ARE TALKING ABOUT NOW IS AN INTERPLAY

25  BETWEEN AN APRIL 3, 2027 EARLY VOTING DEADLINE OR DATE IN THE

COMMISSIONER SHERRI WHARTON HADSKEY

1   APRIL 17TH ELECTIONS THAT ARE SCHEDULED IN 2027.  IS THAT
2   RIGHT?
3   **A.**   THAT'S CORRECT.
4   **Q.**   AND YOU JUST SAID THAT YOU CAN'T IMPLEMENT A MAP WHILE AN
5   ELECTION IS GOING ON.  IS THAT RIGHT?
6   **A.**   WHILE EARLY VOTING -- WHILE THERE ARE PROCEDURES GOING ON
7   THAT ARE INVOLVED IN THAT ELECTION PROCESS.  YOU CAN IMAGINE IF
8   WE HAVE A ONE-HOUR WINDOW DURING EARLY VOTING TO TRY AND DO
9   THIS.
10  **Q.**   UH-HUH.
11  **A.**   THAT'S JUST NOT A LOT OF TIME --
12  **Q.**   SURE.
13  **A.**   -- FOR SEVEN DAYS IN A ROW.
14  **Q.**   UH-HUH.
15  **A.**   SO WE'RE DOING EVERYTHING WE CAN TO BEAT THAT.  AND I FEEL
16  CONFIDENT THAT WE CAN IF WE HAVE THAT MAP IN HAND JANUARY 1ST.
17  **Q.**   OKAY.  AND I JUST WANT TO BE CLEAR.  WHEN DOES AN ACTIVE
18  ELECTION CYCLE THAT WOULD IMPACT YOUR ABILITY TO CONTINUE TO
19  WORK ON -- I'M SO SORRY -- IMPLEMENTING THE MAP -- WHEN DOES AN
20  ACTIVE ELECTION CYCLE START AND END BASED ON THE CALENDAR
21  THAT'S IN FRONT OF YOU?
22          **MR. STRACH:**  OBJECTION, YOUR HONOR.  THAT'S A PRETTY
23  VAGUE QUESTION.
24          **THE COURT:**  WOULD YOU MIND REPHRASING IT, PLEASE?
25          **MS. GIGLIO:**  SURE.

COMMISSIONER SHERRI WHARTON HADSKEY

1   BY MS. GIGLIO:

2   Q.   WHAT DATES -- LET'S TAKE THE APRIL 17TH ELECTION, FOR

3   EXAMPLE.  WHAT DATES WOULD STOP YOUR OFFICE FROM BEING ABLE TO

4   CONTINUE WORKING TO IMPLEMENT A MAP CONNECTED TO THE STATE

5   LEGISLATURE AND THE LEGISLATIVE ELECTIONS THAT WILL HAPPEN ON

6   OCTOBER 9TH?

7   A.   IT IS THE 4/3 DATE.  I'M BANKING ON -- THE 4/5 DATE IS THE

8   NOMINATING PETITION.  I AM -- I FEEL 99.9 PERCENT CERTAIN THAT

9   WE WILL MAKE IT BEFORE 4/3.

10  Q.   OKAY.

11  A.   AND THAT IS THE DATE THAT WOULD BE MY STOPPING POINT.  AND

12  THAT IS WHY THE JANUARY DATE IS SO IMPORTANT.

13  Q.   UNDERSTOOD.

14       SO THE DATE THAT EARLY VOTING BEGINS IN ANOTHER

15  ELECTION WOULD FREEZE YOUR OFFICE'S ABILITY TO CONTINUE

16  IMPLEMENTING THE MAP?

17  A.   FOR THIS PARTICULAR CIRCUMSTANCE --

18  Q.   UH-HUH.

19  A.   -- WHEN YOU LOOK AT OTHER FACTORS -- IF YOU GAVE ME

20  DIFFERENT INFORMATION FOR A DIFFERENT ELECTION DATE, THERE MAY

21  BE OTHER FACTORS THAT WOULD AFFECT IT, SUCH AS IF IT'S LATER IN

22  THE YEAR, WE'RE DOING NOT ONLY THE ELECTION PROCESS IN MAY, BUT

23  WE IMMEDIATELY GO INTO A CANVASS PROCESS AND THEN WE GO INTO A

24  YEARLY MAINTENANCE PROCESS AND THEN WE GO INTO -- ET CETERA, ET

25  CETERA.

COMMISSIONER SHERRI WHARTON HADSKEY

1    SO IT DEPENDS ON WHERE YOU ARE IN THE YEAR AS TO WHAT

2    IT IS THAT COULD AFFECT THE PROCESS.  DOES THAT MAKE SENSE?

3    **Q.**   YES, IT DOES.

4    **A.**   OKAY.

5    **Q.**   GREAT.

6    AND I JUST WANT TO CLARIFY.  PROOFREADING THE MAP IS

7    THE ONLY TASK THAT YOUR OFFICE UNDERTAKES IN IMPLEMENTING A NEW

8    MAP WHEN IT'S PASSED BY THE LEGISLATURE OR IMPLEMENTED BY A

9    COURT?

10   **A.**   WE ACTUALLY PHYSICALLY GO INTO THE ERIN SYSTEM FOR THE

11   LEGISLATIVE SEATS AND ENTER THE INFORMATION.  WHERE IT GETS

12   TRICKY IS IF THE MAP PRODUCES A PRECINCT IN -- LET'S SAY THERE

13   ARE 50 PRECINCTS IN THE STATE THAT END UP BEING SPLIT.  SO PART

14   OF THE PRECINCT WOULD BE IN A REP DISTRICT 6 AND THE OTHER PART

15   IN REP DISTRICT 7 OR SENATE DISTRICT 1 AND SENATE DISTRICT 2.

16   WHEN IT GETS TO THAT LEVEL, OUR OFFICE CAN -- WE CAN MOVE WHOLE

17   PRECINCTS.

18   **Q.**   UH-HUH.

19   **A.**   SO WE'RE ACTUALLY PHYSICALLY MOVING THE VOTERS INTO THE

20   AREA, BUT WHEN THEY'RE SPLIT WE'RE UNABLE TO DO THAT.  THE

21   REGISTRAR OF VOTERS HAS TO DO THAT PROCESS, AND THEY HAVE TO

22   LOOK AT IT STREET BY STREET, LINE BY LINE --

23   **Q.**   UH-HUH.

24   **A.**   -- TO MAKE SURE THAT THE SPLIT PRECINCTS ARE DONE.  SO IT

25   DEPENDS ON THE MAP AS TO THE LEVEL OF WHO'S GOING TO DO WHICH

COMMISSIONER SHERRI WHARTON HADSKEY

1    WORK.

2    **Q.**    UNDERSTOOD.

3          SO THE WORK INVOLVED IN ACTUALLY IMPLEMENTING THE

4    DATA INTO ERIN AND IN PROOFREADING THE MAP WILL BE DONE BETWEEN

5    JANUARY 1, 2027 AND APRIL 5, 2027.  IS THAT RIGHT?

6    **A.**    THAT IS CORRECT.  ACTUALLY THE WORK THAT'S GOT -- THAT'S

7    GOING TO BE DONE -- SO THERE'S 64 PARISHES IN THE STATE.

8    **Q.**    UH-HUH.

9    **A.**    WE DO -- WE'RE DOING AS MANY AS WE CAN.  AND THEN AS SOON

10   AS OUR STAFF PROOFS AND RELEASES AND THE REGISTRAR PROOFS AND

11   RELEASES AND ET CETERA, THAT FIRST TEN PARISHES CAN GO TO STATE

12   PRINTING.  AND IF IT'S 200,000 VOTERS, THEY'RE GOING TO BE ABLE

13   TO DO A HUNDRED THOUSAND AND THEN ANOTHER HUNDRED THOUSAND.

14   **Q.**    UH-HUH.

15   **A.**    AND IN THE MEANTIME, WE'RE OVER HERE TRYING TO DO THE NEXT

16   GROUP.

17   **Q.**    SURE.

18   **A.**    AND SO IT'S A DOMINO EFFECT OF HOW IT'S GOING TO PLAY OUT.

19   BY THE 4/3 DATE, EVERYTHING --

20   **Q.**    IS DONE?

21   **A.**    YEAH, EVERYTHING HAS TO BE DONE.  SO EVERYTHING WOULD NEED

22   TO BE TO STATE PRINTING BEFORE THAT TIME, IF THAT MAKES SENSE.

23   **Q.**    GOT IT.

24   **A.**    AND THEN IF -- SORRY.  I LOVE MY JOB.

25   **Q.**    NO.  PLEASE.

COMMISSIONER SHERRI WHARTON HADSKEY

1  **A.**  AND I LIKE TO --

2  **Q.**  PLEASE.

3  **A.**  AND THEN IF -- LET'S SAY WE'RE GOING DOWN THE LINE AND

4  SOMETHING DOES GET MOVED AND THE REGISTRAR OF VOTERS COMES BACK

5  AND SAYS "I KNOW THAT YOU PROOFED THIS THREE TIMES, BUT WE'RE

6  SEEING THIS AND OUR PARISH GOVERNING AUTHORITY MADE A CHANGE TO

7  THIS AREA AND THAT STREET IS NOT LINED OUT RIGHT," IT TAKES YOU

8  BACK TO THE BEGINNING --

9  **Q.**  UH-HUH.

10  **A.**  -- TO CORRECT THAT PROCESS TO GO BACK THROUGH.

11  **Q.**  YEP.

12  **A.**  SO THAT TIME FRAME IS BUILT IN THERE AS WELL.

13  **Q.**  GOT IT.

14       SO THE MAXIMUM AMOUNT OF TIME THAT YOUR OFFICE WILL

15  NEED TO DO ALL OF THIS IS ABOUT THREE MONTHS?

16  **A.**  THAT'S CORRECT.

17  **Q.**  OKAY.  NOW, COMMISSIONER, I JUST WANT TO ASK A COUPLE MORE

18  QUESTIONS ABOUT HOW YOUR OFFICE CAN ACTUALLY --

19       **MS. GIGLIO:**  YOUR HONOR, MAY I CONFER WITH COUNSEL

20  FOR ONE MOMENT?

21       **THE COURT:**  BRIEFLY.

22  **BY MS. GIGLIO:**

23  **Q.**  COMMISSIONER, I JUST WANT TO RETURN VERY QUICKLY TO YOUR

24  COMMENT BEFORE ABOUT THE CHANGE BETWEEN 2023 AND 2025 WITH

25  RESPECT TO CLOSING PRIMARIES.

COMMISSIONER SHERRI WHARTON HADSKEY

1   **A.**   UH-HUH.

2   **Q.**   IS THAT FOR ALL ELECTIONS THAT ARE HAPPENING IN LOUISIANA?

3   **A.**   IT'S THE SPRING ELECTIONS THAT ARE INVOLVED. BUT THE SAME

4   EXACT INDIVIDUALS THAT ARE CERTIFIED ELECTION SPECIALISTS ARE

5   THE SAME ONES THAT ARE DOING THE WORK FOR THE CLOSED PARTIES

6   AND ALSO THE REDISTRICTING AND ALSO THE EARLY VOTING.

7   **Q.**   SURE.

8   **A.**   IT'S A -- WE'RE ADDING IN MORE WORK ON THE STAFF TO

9   CONDUCT THE CLOSED PARTY SYSTEM.

10   **Q.**   AND FORGIVE ME IF THIS IS INCREDIBLY IGNORANT, BUT IS THAT

11   TRUE FOR BOTH STATE AND FEDERAL ELECTIONS, ALL ELECTIONS THAT

12   TAKE PLACE IN LOUISIANA?

13   **A.**   IN THE SPRING. SO IF THERE'S FEDERAL ELECTIONS IN THE

14   SPRING, IT'S A NEW CLOSED PARTY SYSTEM. IF THERE ARE STATE

15   ELECTIONS IN THE SPRING, IT'S A NEW CLOSED PARTY SYSTEM.

16   **Q.**   OKAY.

17   **A.**   NOT -- THE STATE ELECTIONS ARE NOT INVOLVED IN WHO CAN

18   VOTE ON THE CLOSED PARTY PART OF IT, BUT THEY ARE ON THE

19   BALLOT, SUCH AS A CONSTITUTIONAL AMENDMENT OR THE SHERIFF IN

20   BAKER OR THINGS LIKE THAT. THEY CAN RUN ON THE SPRING

21   ELECTION. THEY MAY NOT NECESSARILY BE CAUGHT IN THE CLOSED

22   PARTY PORTION OF IT.

23   **Q.**   UH-HUH.

24   **A.**   BUT IT'S STILL A CLOSED PARTY AND A SECOND PARTY PRIMARY

25   ELECTION.

COMMISSIONER SHERRI WHARTON HADSKEY

1    **Q.**   UNDERSTOOD.

2          AND IS THAT GOING TO BE TRUE FOR FALL ELECTIONS OR IS

3    IT JUST THE SPRING OF 2026 -- OR THE SPRING OF -- ARE YOU

4    REFERRING TO SPRING OF 2026 OR 2027?

5    **A.**   I'M REFERRING TO THE SPRING OF 2026 AND 2027.

6    **Q.**   OKAY.

7    **A.**   SO LET ME EXPLAIN.

8    **Q.**   PLEASE.

9    **A.**   SO 2026 THE CLOSED PARTIES INVOLVE THE SENATE RACE, THE

10   UNITED STATES REP RACE, THE PUBLIC SERVICE COMMISSIONER TWO

11   DISTRICTS, THE U.S. SUPREME COURT TWO DISTRICTS.

12   **Q.**   UH-HUH.

13   **A.**   2027 IT INVOLVES THE BESE DISTRICTS.  AND SO THEY ARE BOTH

14   CLOSED PARTY ELECTIONS.

15          AND 2028 WE HAVE THE SAME.  YOU'RE GOING TO HAVE

16   OPPOSITE DISTRICTS FOR PUBLIC SERVICE COMMISSIONER, OPPOSITE

17   DISTRICTS FOR U.S. SUPREME COURT, AND THE OPPOSITE SENATE AND

18   U.S. REPS.

19          SO THROUGHOUT THAT TIME FRAME, THERE ARE GOING TO BE

20   CLOSED PARTY ELECTIONS IN ORDER TO HAVE THAT WORK.  AND THE

21   ONLY TIME FRAME THAT WE HAVE IN THE MIDDLE OF THE SPRING AND

22   THE FALL -- OH.  GOSH, I'M SORRY.

23   **Q.**   THAT'S ALL RIGHT.

24   **A.**   -- TO CONDUCT -- TO CONDUCT OUR UPDATES AND OUR PROCESSES

25   SUCH AS CANVASS AND ET CETERA IS DIRECTLY FOLLOWING THE SPRING

COMMISSIONER SHERRI WHARTON HADSKEY

1  ELECTIONS AND PRIOR TO THE FALL ELECTION QUALIFYING TIME FRAME.
2  **Q.**   SURE.  UNDERSTOOD.
3  **A.**   AND THE OTHER THING THAT WE -- THE STATE -- AND I'M SURE
4  YOU'RE AWARE, OUR VOTING MACHINES ARE FROM 1991.  SO WE ARE IN
5  THE PROCESS RIGHT NOW OF ATTEMPTING TO FINALIZE THE PROCUREMENT
6  OF A NEW VOTING SYSTEM.  AND SOMEWHERE IN THE MIX OF ALL OF
7  THAT, WE'RE GOING TO HAVE TO IMPLEMENT A NEW VOTING SYSTEM.
8          WE NO LONGER HAVE PARTS FOR OUR ELECTION DAY
9  MACHINES.  SO WE ARE ROBBING PETER TO PAY PAUL TO MAKE SURE
10 THAT WE CAN CONTINUE TO CONDUCT THE ELECTIONS.  BUT THERE HAS
11 TO BE A TIME FRAME IN THERE BUILT IN --
12 **Q.**   SURE.
13 **A.**   -- TO DO THAT PROCESS.
14 **Q.**   TOTALLY UNDERSTOOD.
15 **A.**   I KNOW THAT'S PROBABLY MORE THAN YOU NEED.
16 **Q.**   NO, NO.  IT'S INTERESTING TO KNOW.
17 **A.**   BUT I HOPE THAT THAT HELPS.
18 **Q.**   NO, IT DOES.
19          I JUST HAVE A COUPLE MORE QUESTIONS, COMMISSIONER.
20 SO, COMMISSIONER, WHEN A -- IF -- WHEN A REMEDIAL MAP -- OR A
21 -- EXCUSE ME.
22          WHEN A MAP THAT REDISTRICTS DISTRICTS IS CHALLENGED
23 IN COURT --
24 **A.**   UH-HUH.
25 **Q.**   -- DOES YOUR OFFICE CONTINUE TO IMPLEMENT THAT MAP WHILE

COMMISSIONER SHERRI WHARTON HADSKEY

1    IT IS UNDER COURT CHALLENGE?

2    **A.**   I DON'T THINK I'VE -- I DON'T REMEMBER HAVING THAT.  I

3    MEAN, IF IT'S STILL IN COURT AND NOTHING HAS BEEN RULED ON AND

4    THIS IS THE OFFICIAL MAP AND WE'RE TOLD THIS IS THE ONE THAT WE

5    ARE INSTRUCTED TO GO FORWARD WITH AT THAT TIME, OF COURSE WE'RE

6    GOING TO DO WHAT THE COURT ORDERS AT THAT TIME.

7    **Q.**   SURE.

8    **A.**   I GUESS -- IS THAT WHAT YOU'RE ASKING?

9    **Q.**   SURE.

10   **A.**   OKAY.

11   **Q.**   WELL, YEAH.  I WAS ASKING REALLY IS YOUR OFFICE ABLE TO

12   CONTINUE WITH THE IMPLEMENTATION PROCESS THAT WE TALKED ABOUT

13   WHILE A MAP IS BEING REVIEWED BY COURTS.

14   **A.**   SURE.  BUT IF WE IMPLEMENT THAT MAP, WE CAN'T TURN AROUND

15   AND TAKE IT BACK.

16   **Q.**   GOT IT.

17   **A.**   YEAH.

18   **Q.**   SO THAT WAS MY NEXT QUESTION.

19   **A.**   RIGHT, RIGHT.

20   **Q.**   WAY TO JUMP THE GUN.

21   **A.**   IT WOULD BE VERY DIFFICULT.  I DON'T EVEN KNOW THAT WE

22   COULD DO THAT.  WE COULDN'T TAKE IT BACK RIGHT AWAY.  WE WOULD

23   NEED THAT SAME TIME FRAME MOVING FORWARD --

24   **Q.**   UH-HUH.

25   **A.**   -- IN ORDER TO --

COMMISSIONER SHERRI WHARTON HADSKEY

1  Q.  REVERT BACK.

2  A.  -- MAKE A CHANGE.  IT WOULD BE A NEW MAP.

3  Q.  UNDERSTOOD.

4  A.  A NEW RULING.

5  Q.  SO YOU COULDN'T EASILY REVERT BACK TO THE MAP THAT WAS

6  ALREADY IN PLACE?

7  A.  NO.

8  Q.  OKAY.

9  A.  IN FACT, IT WOULD BE VOTER CONFUSION ALL OVER THE PLACE,

10  BECAUSE THE VOTERS WOULD HAVE BEEN NOTIFIED THAT THEY'RE IN REP

11  DISTRICT 2 AND REP DISTRICT 7 AND NOW YOU'RE GOING TO NOTIFY

12  THEM THEY'RE IN 5 AND 3.  AND THAT WOULD BE SOLID VOTER

13  CONFUSION.

14  Q.  SURE.

15        WELL, I JUST WANT TO CLARIFY.  WHEN I -- IF THE

16  VOTERS WERE NEVER NOTIFIED -- JUST THE PROOFREADING PROCESS,

17  JUST THE ACTUAL PROCESS IN ERIN THAT YOUR OFFICE UNDERTOOK --

18  IS THERE A WAY TO REVERT THAT PROCESS BACK MORE EASILY OR WOULD

19  YOU ESSENTIALLY START FROM SCRATCH?

20  A.  WELL, THAT WOULD ONLY BE THE FIRST TWO WEEKS, 'CAUSE WE'RE

21  STARTING WITH THE FIRST PARISHES AND WE'RE ROLLING IT OUT.

22  Q.  OKAY.

23  A.  SO SOMEBODY WOULD HAVE TO TELL US WITHIN 14 DAYS TO --

24  Q.  UNDERSTOOD.

25  A.  -- STOP THE RIDE.  WE WANT TO GET OFF.

COMMISSIONER SHERRI WHARTON HADSKEY

1  **Q.**  OKAY.

2  **A.**  LIKE THIS IS NOT GONNA WORK.

3  **Q.**  UNDERSTOOD.

4  **A.**  OKAY.

5  **Q.**  THANK YOU SO MUCH.

6  **A.**  YOU'RE WELCOME.

7         **MS. GIGLIO:**  THAT'S ALL MY QUESTIONS.

8         **THE COURT:**  MR. STRACH, DO YOU HAVE ANYTHING FOR YOUR

9  CLIENT?

10        **MR. STRACH:**  I DON'T HAVE ANY FOLLOW-UP ON THAT.

11        **THE COURT:**  COMMISSIONER HADSKEY, THANK YOU, AS

12 ALWAYS, FOR YOUR KNOWLEDGE AND YOUR PREPAREDNESS.

13        **THE WITNESS:**  THANK YOU, YOUR HONOR.

14        **THE COURT:**  APPRECIATE YOU.

15        **THE WITNESS:**  IT'S GOOD TO SEE YOU.

16        **THE COURT:**  OKAY.  IS THERE ANYTHING FURTHER WITH

17 RESPECT TO THE LAST POSSIBLE DATE THAT THE SECRETARY OF STATE

18 WOULD REQUIRE IN ORDER TO IMPLEMENT ANY NEW OR REMEDIAL MAPS,

19 IF ORDERED?

20        **MR. STRACH:**  THERE'S NOTHING FURTHER FROM US, YOUR

21 HONOR.

22        **MS. BRANNON:**  YES, YOUR HONOR.  I THINK PLAINTIFFS

23 JUST WANT TO CLARIFY THAT THAT'S THE LAST POSSIBLE DATE THAT

24 THE SECRETARY HAS REPRESENTED THEY NEED A MAP WITH ALL APPEALS,

25 ALL PROCEEDINGS COMPLETED, BECAUSE YOU -- THE POSITION IS THEY

| | |
|---|---|
| 1 | ARE NOT -- THAT HAS BEEN ARTICULATED IS THAT THE SECRETARY IS |
| 2 | NOT GOING TO START THIS FOUR-MONTH PROCESS UNTIL THERE'S A |
| 3 | RESOLUTION. |
| 4 | SO I JUST WANT TO MAKE SURE THAT THAT'S CLEAR. |
| 5 | WHEN WE'RE TALKING ABOUT THE LAST POSSIBLE DATE, WE'RE TALKING |
| 6 | ABOUT THE LAST POSSIBLE DATE THAT THE DEFENDANTS HAVE |
| 7 | REPRESENTED IS NEEDED TO HAVE A MAP THAT HAS BEEN FINALIZED. |
| 8 | **THE COURT:** THANK YOU. |
| 9 | OKAY. IF THE PARTIES DESIRE, THEY MAY PRESENT |
| 10 | BRIEF ORAL ARGUMENT BOTH IN SUPPORT OF THE STAY -- THE MOTION |
| 11 | TO STAY AND IN OPPOSITION TO THE MOTION TO STAY. |
| 12 | MR. STRACH, IT'S YOUR MOTION. DO YOU WANT TO |
| 13 | MOVE FORWARD? |
| 14 | **MR. STRACH:** ALL RIGHT. THANK YOU, YOUR HONOR. |
| 15 | WE'VE BRIEFED IT. THE COURT HAS READ THE |
| 16 | BRIEFS. I'M NOT GOING TO REGURGITATE THEM. I THINK THERE'S |
| 17 | SORT OF TWO PRIMARY WAYS TO FRAME THIS. OBVIOUSLY WE DON'T |
| 18 | HAVE A RULING FROM THE FIFTH CIRCUIT YET. OBVIOUSLY THE |
| 19 | *CALLAIS* CASE, WHICH IS GOING TO BE REARGUED, IS POTENTIALLY |
| 20 | SIGNIFICANT. NONE OF US KNOW IN THIS COURTROOM HOW SIGNIFICANT |
| 21 | IT WILL BE; ALTHOUGH I WILL TELL YOU THAT THE QUESTION THAT |
| 22 | THEY ASKED THE PARTIES TO BRIEF IS A PRETTY SIGNIFICANT |
| 23 | QUESTION. |
| 24 | **THE COURT:** UH-HUH. |
| 25 | **MR. STRACH:** AND I DON'T THINK ANYONE CAN DENY THAT. |

1   SO THE QUESTION IS --

2   **THE COURT:** TELL ME AGAIN WHAT THE QUESTION WAS. I

3   READ IT IN THE NEWSPAPER, BUT I'D LIKE TO HEAR IT FROM YOU.

4   **MR. STRACH:** ALL RIGHT. I WILL TRY TO FIND -- I

5   SHOULD HAVE BROUGHT MY FILE UP. BUT IT WAS BASICALLY DOES THE

6   INTENTIONAL --

7   **THE COURT:** YES, YOU CAN SUMMARIZE.

8   **MR. STRACH:** DOES THE INTENTIONAL CREATION OF A

9   SECOND MAJORITY-BLACK DISTRICT VIOLATE --

10  **THE COURT:** THE EQUAL --

11  **MR. STRACH:** IS IT UNCONSTITUTIONAL.

12  **THE COURT:** DOES IT VIOLATE THE EQUAL --

13  **MR. STRACH:** RIGHT. YEAH, YEAH.

14  **THE COURT:** OKAY. GOTCHA.

15  **MR. STRACH:** WHICH WAS THE ISSUE IN *ROBINSON*.

16  **THE COURT:** YES.

17  **MR. STRACH:** WAS SORT OF THE ISSUE IN *CALLAIS*. IT

18  GOT DANCED AROUND AT THE U.S. SUPREME COURT, AND NOW THE

19  SUPREME COURT IS SAYING "NO, WE'RE GOING TO -- WE WANT TO GET

20  TO THE QUESTION."

21  **THE COURT:** WELL, WASN'T IT -- YOU SAY IT WAS KIND OF

22  THE ISSUE IN *CALLAIS*. IT WAS THE ISSUE. IT WAS A THREE-JUDGE

23  PANEL THAT DECIDED *CALLAIS* BECAUSE IT WAS A CONSTITUTIONAL

24  CHALLENGE UNDER THE FOURTEENTH AMENDMENT. RIGHT?

25  **MR. STRACH:** THEY RULED IT WAS A RACIAL GERRYMANDER.

1    BUT THEY DID NOT ANSWER THE QUESTION SPECIFICALLY OF WOULD IT
2    BE UNCONSTITUTIONAL TO DRAW THE SECOND MAJORITY-BLACK DISTRICT.
3    THEY RULED ON THE DISTRICT THAT WAS DRAWN AND THEY --
4         **THE COURT:**  AS A RACIAL GERRYMANDER UNDER THE
5    FOURTEENTH AMENDMENT.
6         **MR. STRACH:**  THAT'S RIGHT.  BUT THEY DIDN'T ANSWER
7    THE QUESTION OF WHETHER IT WOULD BE POSSIBLE TO DRAW ANOTHER
8    MAJORITY-BLACK DISTRICT THAT WAS CONSTITUTIONAL.
9         **THE COURT:**  BECAUSE THAT WOULD HAVE BEEN AN ADVISORY
10   OPINION OR --
11        **MR. STRACH:**  IT WOULD HAVE BEEN.  SO THEY --
12        **THE COURT:**  I MEAN, THAT'S ALL THEY HAD BEFORE THEM
13   WAS THAT MAP.
14        **MR. STRACH:**  SO NOW THE SUPREME COURT, THOUGH, IS
15   LIKE TEEING UP THE QUESTION.  LIKE THEY'RE TEEING UP THE
16   QUESTION ALL THESE COURTS HAVE, LIKE, AVOIDED TO ANSWER.
17        **THE COURT:**  WELL, THEY DIDN'T AVOID THEM.  THEY
18   DIDN'T HAVE THE QUESTION BEFORE THEM.  I MEAN --
19        **MR. STRACH:**  WELL --
20        **THE COURT:**  -- YOU GIVE US A LOT OF -- YOU GIVE US A
21   LOT OF LEEWAY AND, FRANKLY, WE DON'T HAVE THAT.  WE DECIDE THE
22   VERY NARROW ISSUE THAT'S BEFORE US.
23        **MR. STRACH:**  THAT'S RIGHT.
24        **THE COURT:**  AND COURTS OF APPEAL -- WELL, THIS WAS A
25   THREE-JUDGE PANEL.  THEY ARE GOING TO CONFINE THEIR INQUIRY AND

1   RULING GENERALLY TO THE MOST NARROW ISSUE THAT'S BEFORE THEM.

2            **MR. STRACH:**  AND I THINK THAT'S RIGHT.  AND IT SOUNDS

3   LIKE THE SUPREME COURT NOW IS READY TO TACKLE A BROADER ISSUE.

4            **THE COURT:**  I GET YOU.

5            **MR. STRACH:**  SO --

6            **THE COURT:**  NOW, WHAT DO YOU THINK ABOUT THE NORTH

7   DAKOTA CASE?  AM I THROWING YOU A CURVEBALL?  THE SUPREME COURT

8   SAID --

9            **MR. STRACH:**  OH.  IS THAT --

10           **THE COURT:**  -- STAY THIS CASE PENDING THE PLAINTIFFS'

11  FILING OF A WRIT APPLICATION.

12           **MR. STRACH:**  WAS THAT THE -- WAS THAT THE CASE

13  INVOLVING THE --

14           **THE COURT:**  INDIVIDUAL STANDING.

15           **MR. STRACH:**  -- INDIVIDUAL STANDING?  THAT ONLY DOJ

16  COULD FILE THESE CASES?

17           **THE COURT:**  YES.  AND THAT PARTICULAR CIRCUIT -- I

18  CAN'T REMEMBER WHO THE NORTH DAKOTA CIRCUIT IS.

19           **MR. STRACH:**  IT --

20           **THE COURT:**  BUT THAT PARTICULAR CIRCUIT SAYS "YES."

21           **MR. STRACH:**  IT WAS THE EIGHTH CIRCUIT.

22           **THE COURT:**  EIGHTH.

23           **MR. STRACH:**  AND I DON'T HAVE A CLUE ON THAT.

24           **THE COURT:**  SO YOU DON'T THINK THAT FACTORS IN?  I

25  DON'T KNOW IF IT DOES OR NOT.  I'M INTERESTED IN WHAT YOU

1  THINK.

2  **MR. STRACH:** I THINK IT -- I THINK IT COULD. THE

3  PROBLEM IS THEY STAYED THE EIGHTH CIRCUIT DECISION.

4  **THE COURT:** RIGHT.

5  **MR. STRACH:** BUT WE DON'T -- WE DON'T REALLY KNOW WHY

6  AND WE DON'T KNOW HOW. AND, HONESTLY, IN THAT CASE JUSTICE

7  KAVANAUGH IS GOING TO PROBABLY BE THE DECIDER. RIGHT? AND SO

8  WE DON'T REALLY KNOW AT THIS POINT WHAT'S GOING TO HAPPEN

9  THERE.

10  WHAT WE DO KNOW IS WE HAVE OUR OUTSTANDING FIFTH

11  CIRCUIT CASE, WHICH WE'VE NOT -- NONE OF US HAVE HEARD FROM.

12  **THE COURT:** ARGUED IN JANUARY.

13  **MR. STRACH:** ARGUED IN JANUARY.

14  **THE COURT:** GOT YOU.

15  **MR. STRACH:** AND HERE WE ARE IN AUGUST, I THINK, AND

16  THEN --

17  **THE COURT:** NO SHAME TO THE FIFTH CIRCUIT.

18  GO AHEAD.

19  **MR. STRACH:** OH, NO, NOT AT ALL.

20  **THE COURT:** THIS IS HARD WORK GETTING THIS DONE FAST.

21  **MR. STRACH:** BUT, YOU KNOW, HEY, IT'S -- IT IS TOUGH

22  WORK. AND THEN WE'VE GOT *CALLAIS*, WHICH IS A LOUISIANA CASE --

23  **THE COURT:** UH-HUH.

24  **MR. STRACH:** -- WHICH BEARS DIRECTLY -- IF THE COURT

25  READS THE QUESTION THAT THEY PRESENTED, THEY ACTUALLY SAID,

1    "ANSWER THIS QUESTION" AND THEY REFERENCED -- YEAH.  THEY
2    REFERENCED A QUESTION RAISED ON PAGES 36 TO 38 --
3              **THE COURT:**  RIGHT.
4              **MR. STRACH:**  -- OF THE BRIEF FOR APPELLEES.
5              **THE COURT:**  UH-HUH.
6              **MR. STRACH:**  WHICH BASICALLY KIND OF RAISED THIS
7    ISSUE OF TEMPORAL PROXIMITY FOR THE VRA, WHICH RAISED THIS
8    ISSUE OF CAN YOU DRAW A SECOND MAJORITY-BLACK DISTRICT IN
9    LOUISIANA WITHOUT IT BEING, YOU KNOW, FACIALLY
10   UNCONSTITUTIONAL.  SO THE COURT CLEARLY HONED IN ON THOSE TWO
11   PAGES OF THE BRIEF FOR THE PLAINTIFFS.
12             **THE COURT:**  UH-HUH.
13             **MR. STRACH:**  AND THEY WERE CLEARLY INTERESTED IN
14   THAT.  SO WE'VE GOT THE FIFTH CIRCUIT CASE, WE'VE GOT THE
15   SUPREME COURT IN *CALLAIS*, WHICH, LIKE, COMPLETELY INTERSECTS
16   WITH THIS CASE.  AND I WOULD NOTE THAT IN THOSE TWO PAGES OF
17   THE APPELLEES' BRIEF, 36 TO 38, THEY REFERENCE OUR BRIEFING IN
18   THIS CASE, IN *NAIRNE*, IN A FOOTNOTE I THINK.  AND SO THEY'RE
19   COMPLETELY INTERTWINED.
20             AND I KNOW MY COLLEAGUES ARE GOING TO BE LIKE,
21   WELL, THIS IS ALL SPECULATIVE.  WE DON'T KNOW.  BUT, I MEAN,
22   THIS IS A PRETTY SIGNIFICANT TIME FLUENCE OF EVENTS AND -- OF
23   LEGAL EVENTS, AND I THINK -- I THINK IT'S SOMETHING THAT THE
24   COURT WILL AND SHOULD TAKE SERIOUSLY.
25             BUT THEN THE SECOND POINT -- BECAUSE THE

PRACTICAL CONCERN, YOUR HONOR, IS WE'VE GOT ALL THESE APPELLATE
CASES THAT ARE DIRECTLY GOING TO IMPACT THIS CASE, AND DOES THE
COURT MOVE FORWARD IN AUGUST AND THEN HAVE TO DO A REDO.
RIGHT?  AND JUST -- IT'S -- FROM A JUDICIAL ECONOMY, JUDICIAL
EFFICIENCY PERSPECTIVE, THAT SEEMS TO US --

        **THE COURT:**  I'M AGAINST IT.  I'M AGAINST A REDO, JUST
SO THAT YOU KNOW.

        **MR. STRACH:**  YEAH.  I DON'T WANT TO DO A REDO.

        THEN THE OTHER PROBLEM IS A MORE PRACTICAL
CONCERN, WHICH, AS MS. HADSKEY KIND OF REFERRED TO ON THE
STAND, IS IF THE COURT SAYS "ALL RIGHT, IN AUGUST HERE'S YOUR
NEW LEGISLATIVE DISTRICTS" AND THEN CARDS START GETTING MAILED
OUT TO PEOPLE BECAUSE THE ELECTION MACHINERY HAS GOT TO RUN,
THEN THE FIFTH CIRCUIT COMES BACK AND SAYS "NO," OR THE U.S.
SUPREME COURT COMES BACK WITH A COMPLETELY DIFFERENT SECTION 2
STANDARD, WHICH BRINGS US BACK INTO THIS COURT COMING BACK --

        **THE COURT:**  WOULDN'T THEY HAVE TO -- THEY WOULD HAVE
TO STEP BACK *MILLIGAN*, WHICH WAS JUST TWO YEARS AGO.

        **MR. STRACH:**  I DON'T THINK SO.  I ACTUALLY THINK --
YOU KNOW, I HOPE I DON'T GET IN TROUBLE FOR SAYING THIS.  BUT I
THINK THAT THE DISTRICT THAT THE LEGISLATURE DREW WAS A PRETTY
BRAZEN RACIAL GERRYMANDER, AND THAT'S MY CLIENT'S POSITION.
AND SO I DON'T THINK THEY'D HAVE TO STEP BACK.  I THINK THAT
THEY MIGHT TWEAK SOME ASPECTS OF *ALLEN*.  I THINK THEY MIGHT
FINALLY START HONING IN ON WHAT'S COMPACTNESS MEAN AND WHAT

1    DOES POPULATION COMPACTNESS MEAN, ALL OF WHICH WERE A DIRECT

2    ISSUE IN THIS CASE, AND THEY MIGHT START TIGHTENING UP THE

3    *GINGLES* STANDARDS.  I THINK, AT A MINIMUM, THAT'S WHAT THEY'RE

4    GOING TO DO.  AGAIN, YOU KNOW, THEY MIGHT THROW THE WHOLE

5    FRAMEWORK OUT ALTOGETHER.  I DON'T THINK THEY'RE GOING TO DO

6    THAT, BUT THEY MAY TIGHTEN UP THE POPULATION COMPACTNESS

7    STANDARD SO THAT YOU CAN'T JUST USE COMPUTER TECHNOLOGY TO

8    STRING TOGETHER BLACK COMMUNITIES ANYMORE AND SAY, "OH, THIS IS

9    A VRA DISTRICT."

10              SO I THINK -- I THINK THAT -- I MEAN, I DON'T

11   THINK THEY HAVE TO WALK BACK *ALLEN*.  I THINK THEY HAVE TO TWEAK

12   IT.

13          **THE COURT:**  WELL, IF THE RESULT IS JUST TO GIVE

14   FURTHER CLARIFICATION TO *GINGLES* AND NOT WALK BACK *MILLIGAN* AS

15   I QUESTIONED, THEN DRAWING A REMEDIAL MAP IN THIS CASE IS

16   PRETTY STRAIGHTFORWARD.  I MEAN, WE HAVE TO TAKE INTO

17   ACCOUNT -- YOUR WORDS -- THE TWEAKING, BUT IT'S NOT A NEW DAY

18   DAWNING, IF YOU'RE READING THE TEA LEAVES CORRECTLY.

19          **MR. STRACH:**  IT COULD BE, YOUR HONOR.  THE DISTRICTS

20   THAT HAVE BEEN DRAWN BY THE PLAINTIFFS IN THIS CASE, IF I'M

21   RIGHT ABOUT HOW THE SUPREME COURT MIGHT TWEAK SECTION 2 IN

22   *CALLAIS* OR COULD COMPLETELY UNDO IT, THEN THOSE DISTRICTS WOULD

23   NOT FLY, IN MY MIND.

24          **THE COURT:**  RIGHT.

25              BUT IF IT'S JUST A TWEAK, IT SEEMS TO ME THAT

1    THERE'S A BASELINE NOW.  THESE REMEDIAL DISTRICTS PROPOSED BY

2    THE PLAINTIFFS ARE THIS BASELINE.  SO NOW THE BASELINE HAS TO

3    CHANGE IN ORDER TO ACCOMMODATE THE FINE-TUNING OR, YOUR WORDS,

4    "TWEAKING."

5         **MR. STRACH:**  YEAH.

6         **THE COURT:**  IT SHOULDN'T BE THAT HARD.  I MEAN, MAYBE

7    I DON'T UNDERSTAND.

8         **MR. STRACH:**  I THINK I WOULD RESPECTFULLY DISAGREE

9    WITH THAT.  I THINK IF THE SUPREME COURT SAYS, LIKE, "OH, HEY,

10   POPULATION COMPACTNESS IS ACTUALLY A THING NOW AND, LIKE, WE'RE

11   GOING TO ENFORCE THAT," THEN I THINK IF THIS COURT ADOPTS THE

12   PLAINTIFFS' DISTRICTS IN -- THIS MONTH, THEN THEY ARE GOING TO

13   HAVE TO TOTALLY BE UNDONE.  AND IF THE SUPREME COURT ANSWERS

14   THE QUESTION ABOUT WHETHER IT'S PERMISSIBLE FOR A COURT OR A

15   STATE TO USE RACE FOR THE SOLE PURPOSE OF DRAWING A

16   MAJORITY-BLACK DISTRICT IN LOUISIANA, THEN IT'S GOING TO BE

17   UNDONE.  AND SO I THINK THAT THERE ARE OUTCOMES THAT COULD

18   COMPLETELY UNDO WHAT THE COURT DOES THIS MONTH IN AUGUST.  AND

19   SO WE THINK -- YOU KNOW, WE THINK THE COURT IN ITS EXERCISE OF

20   JUDICIAL RESTRAINT SHOULD CONSIDER THAT.

21        **THE COURT:**  WELL, WITH ALL DUE RESPECT, EVERY SINGLE

22   THING THIS COURT DOES HAS A CHANCE OF COMPLETE AND UTTER

23   OBLITERATION AND REVERSAL.

24        **MR. STRACH:**  I KNOW.  I KNOW IT, I KNOW IT, I KNOW

25   IT.

1     **THE COURT:**  THAT'S NOTHING NEW.

2     **MR. STRACH:**  I KNOW IT.  BUT WHY WASTE THE COURT'S

3     TIME, WHY WASTE THE STATE'S TIME, YOU KNOW?

4     **THE COURT:**  I KNOW WHAT YOU'RE SAYING.

5     **MR. STRACH:**  AND THEN THE OTHER THING, THOUGH, WHICH

6     I THINK IS ACTUALLY A MORE SIGNIFICANT CONCERN, IS THE VOTERS.

7     RIGHT?  LIKE IF THE COURT SAYS "ALL RIGHT.  HERE'S YOUR MAP,"

8     AND THE ELECTION MACHINERY GOES AND CARDS GO OUT AND THEN

9     SOMETHING CHANGES AND IT'S ALL GOT TO GO SOMEWHERE ELSE, THE

10    VOTERS IN LOUISIANA ARE GOING TO BE THE LOSERS BECAUSE THEY'RE

11    JUST GOING TO BE CONFUSED AS CRAP.  AND I THINK MS. HADSKEY

12    ALLUDED TO THAT.  THEY'RE GOING TO BE LIKE, "WELL, I GOT THIS

13    CARD.  NOW I GOT THIS CARD.  WHAT DISTRICT DO I VOTE IN?"  AND

14    YOU'RE TALKING ABOUT LEGISLATIVE DISTRICTS, WHICH ARE CLOSER TO

15    HOME.  THEN THEY'RE GOING TO HAVE, ON TOP OF THAT, POTENTIAL

16    CHANGES TO THE CONGRESSIONAL DISTRICTS, AND THEY'RE GOING TO BE

17    GETTING NEW CARDS ON CONGRESSIONAL DISTRICTS POTENTIALLY.  AND

18    SO THEY'RE GOING TO BE GETTING ALL THESE FREAKING CARDS IN THE

19    MAIL, AND THEY'RE GOING TO BE LIKE, "WHAT IN THE HECK IS GOING

20    ON?  YOU KNOW, WHAT DISTRICT DO I LIVE IN?  WHERE DO I VOTE?"

21    AND I JUST THINK THAT THAT'S UNFAIR TO THE VOTERS.

22    **THE COURT:**  OKAY.  THANK YOU.

23    **MR. STRACH:**  THANK YOU.

24    **THE COURT:**  OKAY.  LET ME HEAR FROM THE PLAINTIFFS.

25    MS. BRANNON, DON'T TAKE THE COURT'S COMMENT ON A

1    REDO AS INDICATIVE.  IT'S JUST PRAGMATIC.

2            **MS. BRANNON:**  YES.  WELL, YOUR HONOR, I WAS GOING TO

3    ACTUALLY -- I HAVE SOME THINGS I WANT TO SAY, BUT I WAS GOING

4    TO START WITH THAT AND SORT OF START WITH THE BIG PICTURE AND

5    THEN I CAN TALK A LITTLE BIT MORE ABOUT --

6            **THE COURT:**  GO AHEAD.

7            **MS. BRANNON:**  I'M HAPPY TO ANSWER A LITTLE BIT OF

8    QUESTIONS ABOUT WHAT'S PENDING IN THE EIGHTH CIRCUIT, WHICH IS

9    THE NORTH DAKOTA CASE.

10            YOU KNOW, THE ISSUE HERE -- AND WE ARE

11   SYMPATHETIC TO THE UNCERTAINTIES.  WE ARE SYMPATHETIC TO THE

12   COURT'S TIME.  BUT THE REALITY OF HOW THIS CASE HAS MOVED

13   FORWARD AND WHAT THE DEFENDANTS ARE CLAIMING:  THEY NEED A MAP

14   BY JANUARY 1ST, IF WE DO A POSTPONEMENT OF A REMEDIAL MAP TILL

15   THE SUMMER OF 2026, WHICH WAS WHAT THE DEFENDANTS ARE ASKING

16   FOR, THERE WILL NOT BE A FINAL DECISION ABOUT WHAT THE

17   LEGISLATIVE MAP IN LOUISIANA SHOULD LOOK LIKE BY JANUARY 1,

18   BECAUSE THE PLAINTIFFS HAVE -- I MEAN THE DEFENDANTS -- WE HAVE

19   STIPULATED.  WE ASKED AND SAID WE WOULD AGREE TO THAT SCHEDULE

20   IF THEY WOULD STIPULATE NOT TO TAKE A STAY.  NOT THAT THEY

21   WOULD HAVE TO WAIVE ANY OF THEIR RIGHTS TO AN APPEAL OF ANY

22   ORDER FROM THIS COURT ABOUT A REMEDIAL MAP, BUT THEY WOULD

23   AGREE NOT TO DO A STAY, NOT TO RAISE *PURCELL* ARGUMENTS SO THAT

24   WE COULD BE IN A POSITION WHERE THE MAPS COULD BE IN PLACE TO

25   BE IMPLEMENTED ON THEIR SCHEDULE OF JANUARY 1ST.

1    IF WE WAIT TILL AUGUST OF 2026 TO GET A REMEDIAL
2  MAP, THEN WE ARE BEING PUT IN A POSITION WHERE THERE WILL BE NO
3  REMEDIAL MAP FOR THE OCTOBER 2027 ELECTION, WHICH MEANS OUR
4  CLIENTS, WHO HAVE ALREADY LIVED FOR FOUR YEARS UNDER A MAP THAT
5  THIS COURT FOUND TO BE UNLAWFUL, WILL HAVE TO ALSO THEN HAVE AN
6  ELECTION IN OCTOBER OF 2027, AGAIN, USING A MAP THAT THIS COURT
7  HAS FOUND TO BE UNLAWFUL.  AND THAT CREATES A SITUATION WHERE
8  EVEN IF PLAINTIFFS PREVAIL ON ALL OF THE APPEALS, WE MIGHT NOT
9  HAVE AN EQUITABLE MAP FOR THE OCTOBER OF 2027 ELECTION.  AND
10 THEN THAT PUTS THIS COURT IN A POSITION WHERE THE ONLY WAY TO
11 HAVE A LEGAL AND LAWFUL MAP IS TO ORDER SPECIAL ELECTIONS AFTER
12 OCTOBER OF 2027, AND THAT CREATES A REAL RISK THAT THERE WILL
13 NEVER BE A REMEDY IN THIS CASE, AND THAT MEANS OUR PLAINTIFFS
14 MAY HAVE HAD TO LIVE UNDER UNLAWFUL MAPS FOR A DECADE.
15    SO THIS IS WHERE WE COME IN AT; THAT WE ARE NOT
16 TRYING TO WASTE THE COURT'S TIME.  WE ARE SYMPATHETIC TO THE
17 REDO, BUT IT IS AN IMPOSSIBLE SITUATION FOR US TO AGREE TO A
18 POSTPONEMENT OF ANY KIND THAT CREATES THIS SCENARIO.
19    AND WE KNOW, YOU KNOW, *ROBINSON* -- YOUR ORDER
20 WAS ISSUED IN JUNE OF 2022.  WE DIDN'T GET A FINAL JUDGMENT
21 FROM THE FIFTH CIRCUIT ABOUT THAT ORDER UNTIL NOVEMBER.  THAT'S
22 17 MONTHS.  I THINK WE'VE ALREADY DISCUSSED WE ARE 20 MONTHS IN
23 FROM YOUR ORDER IN THE *NAIRNE* CASE, AND WE STILL DON'T HAVE A
24 RULING FROM THE FIFTH CIRCUIT.  SO THE IDEA THAT WE COULD GET A
25 REMEDIAL MAP IN AUGUST OF 2026 AND SOMEHOW HAVE RESOLUTION THAT

1    THE DEFENDANTS WOULD AGREE TO IMPLEMENT BY JANUARY OF 2027 IS

2    NOT REALISTIC AND IT PUTS US IN AN IMPOSSIBLE SITUATION.

3                SO WE ARE JUST SORT OF AT THIS PLACE WHERE, YOU

4    KNOW, WE DON'T REALLY HAVE ANY OTHER CHOICE EXCEPT TO AGREE --

5    TO ARGUE THAT THE COURT SHOULD KEEP THE SCHEDULE THAT IS ON THE

6    DOCKET NOW FOR THE END OF THIS MONTH.  ALL THE WORK HAS ALREADY

7    BEEN DONE.  IT'S ONLY GOING TO TAKE A COUPLE OF DAYS.  THERE'S

8    NOT THAT MUCH HARM IN HAVING US COME BACK.  THERE WILL BE A

9    MAP.  I DON'T THINK THAT THERE WILL BE ANY CONFUSION FROM

10   VOTERS, BECAUSE PRESUMABLY IF THE DEFENDANTS ARE NOT HAPPY WITH

11   YOUR REMEDIAL MAP, THEY WILL BE ABLE TO SEEK A STAY AND THEY'LL

12   START AN APPEAL PROCESS BASED ON THE REMEDIAL ORDER IMMEDIATELY

13   THAT WILL GIVE OVER A YEAR TO COME BACK AND GET THAT APPEAL

14   PROCESS RESOLVED, ALONG WITH ALL THE OTHER APPEALS.

15            **THE COURT:**  EXCEPT YOU JUST TOLD ME THAT IT WAS --

16   THAT IT'S BEEN 17 MONTHS PENDING IN THIS CASE AND 20 MONTHS --

17   IT WAS 20 MONTHS IN *ROBINSON*.

18            **MS. BRANNON:**  SO THERE'S --

19            **THE COURT:**  SO EVEN IF THE COURT -- FIRST OF ALL, IT

20   IS, I THINK, AMBITIOUS TO THINK THAT THE COURT COULD RULE FROM

21   THE BENCH NEXT WEEK.  I MEAN, YOU, YOURSELVES HAVE ASKED FOR A

22   SPECIAL MASTER, OKAY, INDICATING THAT MAYBE THIS IS A LITTLE

23   MORE COMPLICATED THAN YOURS TRULY CAN HANDLE.  NO OFFENSE

24   TAKEN.  MAYBE IT IS.  SO IT'S GOING TO BE A COUPLE OF MONTHS.

25   IF THE COURT NEEDS A SPECIAL MASTER OR APPOINTS A SPECIAL

```
1    MASTER, IT'S CERTAINLY GOING TO BE A COUPLE OF MONTHS, AND IT'S
2    GOING TO BE 30 DAYS BEFORE THE COURT CAN ENTER A WRITTEN RULING
3    THAT'S SUBSTANTIATED WITH LAW AND FACTS.
4                 SO EVEN IF THAT HAPPENS, YOU STILL MAY NOT MAKE
5    THE -- YOU HAVE A VERY GOOD CHANCE OF NOT MAKING THE 2027
6    ELECTION.
7         MS. BRANNON:  SO I UNDERSTAND.  AND WE AGREE AND WE
8    REALIZE THAT THERE'S A RISK INVOLVED IN ALL OF THIS.  WE JUST
9    DON'T UNDERSTAND WHY WE SHOULD CONTRIBUTE FURTHER DELAY TO THAT
10   RISK.  SO IF WE POSTPONE IT ANOTHER YEAR --
11        THE COURT:  AND I UNDERSTAND.
12        MS. BRANNON:  -- THAT ALMOST ESSENTIALLY GUARANTEES
13   WE WON'T HAVE A MAP.  AND IF THE COURT MOVES FORWARD AND WE
14   HAVE A REMEDIAL MAP IN THE NEXT, YOU KNOW, FEW MONTHS --
15        THE COURT:  I KNOW.
16        MS. BRANNON:  -- YOU KNOW, WE STILL THINK A SPECIAL
17   MASTER WOULD BE OF ASSISTANCE TO THE COURT.  WE WOULD OBVIOUSLY
18   DEFER TO YOUR JUDGMENT ABOUT THAT.  BUT IF WE WERE TO HAVE A
19   REMEDIAL MAP IN THE NEXT FEW MONTHS, THAT DOESN'T ADD FURTHER
20   DELAY AND DOESN'T PUT US IN A CIRCUMSTANCE WHERE I THINK THAT
21   THE EVENTUALITY OF NOT HAVING ENOUGH TIME IS ALMOST CERTAIN.
22                 SO THAT'S WHERE THE PLAINTIFFS ARE COMING FROM.
23   IN TERMS OF TRYING TO FIGURE OUT HOW TO HAVE ALL THESE MOVING
24   PARTS AND, YOU KNOW, THE BACK-AND-FORTH THAT THE COURT JUST HAD
25   WITH DEFENSE COUNSEL ABOUT *CALLAIS*, THAT IS COMPLETELY READING
```

1    THE TEA LEAVES.  *CALLAIS* IS ACTUALLY A VERY DIFFERENT CASE.

2    IT'S A CONSTITUTIONAL CASE.  IT'S NOT A VOTING RIGHTS ACT CASE.

3    THE ISSUE IN *CALLAIS* IS THAT THE MAPS THAT WAS ADOPTED BY THE

4    LEGISLATURE IS ACTUALLY FAIRLY DIFFERENT FROM THE MAP THAT WAS

5    PUT FORTH AS AN ILLUSTRATIVE MAP IN THE *ROBINSON* PROCEEDINGS.

6    WE DON'T HAVE THAT CASE HERE.  THE MAPS THAT WE HAVE PROPOSED

7    AS REMEDIAL MAPS ARE VERY SIMILAR TO THE MAP THAT THIS COURT

8    SAW IN THE ILLUSTRATIVE -- WAS PUT FORTH AS AN ILLUSTRATIVE MAP

9    IN THE TRIAL PROCEEDINGS.  SO SOME OF THE FACTUAL ISSUES THAT

10   ARE AT PLAY IN *CALLAIS* ARE NOT RELEVANT HERE.  AND THERE'S JUST

11   A LOT OF UNCERTAINTY.

12               I'M HAPPY TO ANSWER THAT THE -- IT'S THE EIGHTH

13   CIRCUIT THAT'S THE NORTH DAKOTA CASE.

14          **THE COURT:**  YES.

15          **MS. BRANNON:**  AND THERE IS NO SUR-PETITION THAT'S

16   BEEN FILED YET.  THERE'S NO CERT THAT'S GRANTED.  THAT

17   PARTICULAR ISSUE ABOUT PRIVATE RIGHT OF ACTION IS NOT A LIVE

18   ISSUE IN *CALLAIS*.  SO THERE IS NO GUARANTEE THAT THE SUPREME

19   COURT IS, A, GOING TO GRANT CERT -- I MEAN, IT SEEMS LIKELY,

20   BUT WE DON'T KNOW THAT -- AND THERE'S NO GUARANTEE THAT *CALLAIS*

21   WILL RESOLVE THAT ISSUE.

22               SO, YOU KNOW, THE SUPREME COURT HAS BEEN VERY

23   CLEAR OVER THE YEARS THAT IT IS NOT THE ROLE OF LOWER COURTS TO

24   TRY AND READ THE TEA LEAVES ABOUT WHAT THE SUPREME COURT IS OR

25   IS NOT GOING TO DO.

1    **THE COURT:** I AGREE.

2    **MS. BRANNON:** THE LAW IS THE LAW. THIS CASE IS ON

3    ALL FOURS WITH *MILLIGAN* AND YOUR COURT'S FINDING IS COMPLETELY

4    CONSISTENT WITH WHAT THE SUPREME COURT SAID IN *MILLIGAN*. SO WE

5    ARE JUST VERY CONCERNED THAT HAVING BROUGHT A CASE THAT WAS

6    CONSISTENT WITH WHAT THE SUPREME COURT SAID THE LAW SHOULD BE

7    ABOUT VIOLATIONS IN THE VOTING RIGHTS ACT, THAT WE ARE GOING TO

8    BE IN A POSITION WHERE OUR PLAINTIFFS ARE NOT ABLE TO HAVE AN

9    EQUITABLE MAP EVEN IF THEY WIN ALL OF THE PENDING APPEALS.

10   SO THAT'S, YOU KNOW, I THINK THE CONCERN THAT WE

11   HAVE AND WE ARE PREPARED TO GO FORWARD. IT WILL ONLY TAKE A

12   FEW DAYS TO DO THE REMEDIAL HEARING.

13   I ALSO JUST WANT TO ADDRESS THE FACT THAT

14   PLAINTIFFS DON'T EXPECT THAT WE WOULD HAVE A HEARING AND/OR A

15   SPECIAL MASTER AND THIS MAP WOULD GET -- THERE WOULD BE A

16   REMEDIAL PLAN THAT THE COURT WOULD ORDER IN THE FALL AND THAT

17   THAT WOULD SOMEHOW IMMEDIATELY IMPACT VOTERS, BECAUSE THEN

18   THERE WOULD BE TIME TO DO THE APPEALS THAT WE ASSUME THE

19   DEFENDANTS WANT TO TAKE. THE VOTERS WOULD NOT BE NOTIFIED

20   ABOUT THE IMPACTS OF THAT REMEDIAL PLAN UNTIL SOMETIME LATER IN

21   THE PROCESS, PRESUMABLY, AS COMMISSIONER HADSKEY LAID OUT, IN

22   APRIL OF 2027 IN ADVANCE OF THE OCTOBER 2027 ELECTION.

23   **THE COURT:** OKAY. YOU RECALL -- I KNOW BECAUSE YOU

24   WERE INVOLVED -- THE *ROBINSON* CASE. WE FOUND OURSELVES IN THIS

25   KIND OF DILEMMA IN THE *ROBINSON* CASE, AND THE COURT MOVED

1    FORWARD WITH THE REMEDIAL HEARING ONLY TO BE TOLD BY THE
2    SUPREME COURT NOT TO.
3            **MS. BRANNON:**  SO I THINK WHAT HAPPENED SOME IN THE
4    *ROBINSON* IS THAT THE TIMING WAS MUCH MORE -- WAS A MUCH
5    NARROWER AND A MUCH TIGHTER TIME FRAME.
6            IN THIS CASE, YOUR ORDER THAT THERE IS -- NEEDS
7    TO BE A REMEDIAL MAP HAS BEEN IN PLACE SINCE FEBRUARY OF 2023
8    -- OR 2024.  THAT IS NOW TWO LEGISLATIVE SESSIONS WHERE THE
9    DEFENDANTS HAVE HAD PLENTY OF TIME TO COME UP WITH THEIR OWN
10   PROPOSED REMEDIAL MAP.
11           IN *ROBINSON* THE SUPREME COURT STAYED AND THEN
12   THERE WAS NOT AS MUCH TIME BETWEEN WHEN THE STAY WAS LIFTED
13   FROM THE SUPREME COURT AND WHEN THE COURT MOVED FORWARD.  WE
14   ARE NOT IN THE SAME SITUATION, AND I DO NOT THINK IT IS ON ALL
15   FOURS WITH THE ADVICE THAT THE SUPREME COURT GAVE IN THAT CASE.
16           **THE COURT:**  NO.  BUT THE SUPREME COURT -- WHILE THE
17   CASE WAS PENDING A REMEDIAL HEARING, I MEAN, A REMEDIAL HEARING
18   WAS SET TO GO, AND THE UNITED STATES SUPREME COURT DIRECTED
19   THIS COURT TO STAY PROCEEDINGS PENDING *MILLIGAN*.  THAT'S NOT
20   DIFFERENT FROM THIS.  I MEAN, THE SUPREME COURT HASN'T DONE
21   THAT, BUT AM I --
22           **MS. BRANNON:**  SO IN *ROBINSON* THERE WAS A STAY OF THE
23   MERITS DECISION IN THE SUMMER OF 2022, GIVEN THAT *MILLIGAN* WAS
24   PENDING.  AND THEN WHEN THE ISSUE -- THE COURT ISSUED ITS
25   OPINION ABOUT THE MERITS OF THE VOTING RIGHTS ACT IN *MILLIGAN*

1    IN THE SUMMER OF 2023, THE SUPREME COURT LIFTED THE STAY IN
2    *ROBINSON*, AND THEN YOUR HONOR CHOSE TO MOVE FORWARD WITH THE
3    REMEDIAL HEARING IN THE SUMMER OF 2023.

4              **THE COURT:**  RIGHT.

5              **MS. BRANNON:**  AND THEN THE SUPREME COURT STAYED THAT
6    PROCEEDING, BUT I -- THE SUPREME COURT ORDER WAS NOT -- DID NOT
7    HAVE A LOT OF CLARITY, AS THEY OFTEN DON'T.  BUT AT THAT POINT
8    THERE WAS ALSO A VERY GENUINE QUESTION AS TO WHETHER THE
9    LEGISLATURE HAD HAD A SUFFICIENT PERIOD OF TIME TO CONSIDER
10   COMING UP WITH ITS OWN ALTERNATIVE MAP.  AND WHAT THE SUPREME
11   COURT SAID WAS "LET'S WAIT AND GIVE THE LEGISLATURE TIME."  AND
12   IN THE MEANTIME, IN THAT CIRCUMSTANCE THE FIFTH CIRCUIT MOVED
13   WITHIN A COUPLE OF MONTHS.  BUT -- AND THEN THE LEGISLATURE
14   DID.

15              BUT IN THIS CASE, THERE'S NOT THAT SAME TIME
16   ISSUE BECAUSE THERE'S NO STAY.  THERE'S NEVER BEEN A STAY AT
17   ISSUE IN THIS CASE.  THIS CASE HAS ALWAYS BEEN PROCEEDING.  AT
18   ANY POINT IN TIME THE LEGISLATURE WOULD HAVE BEEN FREE TO DO
19   ITS WORK TO COME UP WITH ITS OWN REMEDIAL MAP.  IT'S BEEN OVER
20   A YEAR.  THE LEGISLATURE HAS BEEN IN SESSION FOR TWO CYCLES AND
21   HAS CHOSEN NOT TO DO THAT.  THAT OPPORTUNITY WAS NOT PRESENTED
22   IN THE TIME FRAME IN *ROBINSON*.  SO I THINK THAT THE GUIDANCE
23   FROM THE SUPREME COURT IN *ROBINSON* IS NOT NECESSARILY
24   APPLICABLE TO THE SITUATION WE'RE IN RIGHT NOW.

25              **THE COURT:**  OKAY.  THANK YOU.

1          **MS. BRANNON:** YES. THANK YOU VERY MUCH, YOUR HONOR.

2     AND, YOU KNOW, WE ARE SYMPATHETIC TO THE SITUATION THAT YOU'RE

3     IN, BUT I JUST WANT TO CONVEY, YOU KNOW, OUR PLAINTIFFS --

4          **THE COURT:** I'M SYMPATHETIC TO THE POSITION THAT

5     EVERYBODY'S IN, INCLUDING THE VOTERS OF THIS STATE.

6          **MS. BRANNON:** YEAH. WE FILED OUR COMPLAINT IN MARCH

7     OF 2022 AND THE VOTERS OF LOUISIANA ARE STILL -- HAVE BEEN

8     STILL SUBJECTED TO UNLAWFUL MAPS. AND SO THAT IS OUR CONCERN

9     AND OUR DRIVING FORCE. THANK YOU.

10         **THE COURT:** OKAY. THE COURT HAS STUDIED THIS A LOT

11    AND LOOKED INTO THIS A LOT AND HAS BENEFITED FROM THE SAGE

12    ORAL ARGUMENT OF COUNSEL.

13              JUST A BRIEF HISTORY AND PROCEDURAL POSTURE

14    BEARS REVIEW. AS MS. BRANNON POINTED OUT, THE NAIRNE

15    PLAINTIFFS FILED THIS SUIT IN MARCH OF 2022 ASKING -- OR

16    CHALLENGING THE LAWFULNESS OF THE HOUSE AND SENATE MAPS DRAWN

17    BY THE STATE LEGISLATURE UNDER THE VOTING RIGHTS ACT. THE

18    COURT SET IT FOR A BENCH TRIAL IN JANUARY OF 2023. IN THE

19    MEANTIME, IN JUNE OF 2022, THERE WAS AN INJUNCTION ISSUED IN

20    THE -- THIS COURT ISSUED AN INJUNCTION IN THE *ROBINSON* CASE,

21    WHICH DEALT WITH CONGRESSIONAL REDISTRICTING. THE FIFTH

22    CIRCUIT DENIED THE STAY, BUT THE UNITED STATES SUPREME COURT

23    ORDERED *ROBINSON* "HELD IN ABEYANCE" -- THAT'S A QUOTE --

24    PENDING *MILLIGAN*.

25              IN JULY OF 2022, THE STATE MOVED FOR A STAY IN

1    THIS CASE BASED, IN PART, ON THE STAY -- OR THE HOLDING IN
2    ABEYANCE IN *ROBINSON* AND THE DIRECTION OF THE UNITED STATES
3    SUPREME COURT IN *ROBINSON*.
4                ON AUGUST 30TH, THE COURT STAYED THIS CASE ON
5    THE -- GRANTED THE STATE'S MOTION TO STAY.  AND THE REASONS ARE
6    IMPORTANT.  THE COURT FOUND THAT BY HOLDING *ROBINSON* IN
7    ABEYANCE PENDING THE OUTCOME OF *MERRILL*, THE SUPREME COURT
8    UNMISTAKABLY COMMUNICATED THAT THE OUTCOMES IN THOSE CASES ARE
9    INTERTWINED.  ALTHOUGH THE PLAINTIFFS HERE ATTEMPTED TO
10   DISTINGUISH *ROBINSON* FROM THE INSTANT CASE -- IN THAT CASE,
11   THIS PARTICULAR CASE, THE *NAIRNE* CASE, THERE IS NO QUESTION
12   THAT BOTH CASES ARISE UNDER SECTION 2 OF THE VOTING RIGHTS ACT,
13   NOR IS THERE ANY SERIOUS DEBATE THAT THE SUPREME COURT HAS
14   EXPRESSED THAT CASES APPLYING SECTION 2 ARE BETTER HELD UNTIL
15   *MERRILL* IS DECIDED.
16               THE FUNDAMENTAL VOTING RIGHTS OF BLACK
17   LOUISIANANS ARE PARAMOUNT, BUT IGNORING THE CLEAR YIELD SIGN
18   FROM THE SUPREME COURT AND PROCEEDING IN THIS CASE NOW IS NOT
19   THE BEST WAY TO VINDICATE THOSE RIGHTS.  AND THAT'S THE
20   QUESTION THAT THE COURT IS STRUGGLING WITH HERE:  IS THERE A
21   CLEAR YIELD SIGN FROM THE UNITED STATES SUPREME COURT IN THIS
22   CASE?  AND IT'S A VERY DIFFICULT AND A VERY NUANCE QUESTION: BE
23   TRUSTED BY OR OPPOSED BY THE WELL-ESTABLISHED FACT THAT
24   DISTRICT COURTS AREN'T IN THE BUSINESS OF READING TEA LEAVES.
25   WE'RE IN THE BUSINESS OF APPLYING THE LAW AS THE COURT FINDS IT

1   ON THE DATE AND TIME OF THE TRIAL ON THE MERITS.  WHEN THE
2   FACTS ARE FOUND, APPLY THE LAW THAT IS IN PLACE AT THAT TIME
3   THAT THE FACTS ARE FOUND, NOT TRYING TO FIGURE OUT WHETHER
4   HIGHER COURTS ARE GOING TO CHANGE THE LEGAL LANDSCAPE.
5                   MOVING ON IN THE HISTORY OF THIS CASE, THE
6   UNITED STATES SUPREME COURT DECIDED *MILLIGAN* IN JUNE OF 2023,
7   THE DAY AFTER THE PLAINTIFFS MOVED TO LIFT THE STAY IN THIS
8   CASE, AND THE COURT DID SO AND TRIED THIS CASE ON LIABILITY IN
9   NOVEMBER OF 2023.
10                  IN JANUARY OF 2024, THE COURT FOUND THAT SENATE
11  BILL 8 -- OR I'M SORRY.  THE COURT RULED THAT THE HOUSE AND
12  SENATE MAPS -- NOT SENATE BILL 8.  SENATE BILL 1 AND 14 --
13  HOUSE BILL 14 VIOLATED SECTION 2 OF THE VOTING RIGHTS ACT AND
14  ENJOINED.  THE STATE APPEALED.  THAT APPEAL IS STILL PENDING
15  AND WAS ARGUED IN JANUARY BEFORE A THREE-JUDGE PANEL.  THE
16  REMEDIAL HEARING IS NOW SET IN TWO WEEKS.
17                  IN THE MEANTIME OF ALL OF THIS, A GROUP OF
18  VOTERS CHALLENGED SENATE BILL 8, WHICH WAS THE CONGRESSIONAL
19  MAPS THAT THIS COURT -- THAT THE COURT DIRECTED -- OR NOT
20  DIRECTED -- THAT THE COURT INDICATED NEEDED TO BE REDRAWN AND
21  SENATE BILL 8 WAS THE RESULT OF THAT REDRAWING.  WHITE VOTERS
22  CHALLENGED SENATE BILL 8 UNDER THE FOURTEENTH AMENDMENT IN THE
23  *CALLAIS* CASE, AND THE *CALLAIS* THREE-JUDGE PANEL FOUND THAT THAT
24  MAP UNJUSTIFIABLY CONSIDERED RACE, THAT CASE IS PENDING APPEAL
25  IN THE UNITED STATES SUPREME COURT.  IT WAS ARGUED LAST TERM.

1   THE COURT CONTINUED IT TO THE NEXT TERM AND, AS MR. STRACH HAS
2   POINTED OUT, THE SUPREME COURT HAS ASKED FOR VERY SPECIFIC
3   ADDITIONAL BRIEFING AND INDICATED THAT THEY WILL MAKE A
4   DECISION IN *CALLAIS* IN THE NEXT TERM.  WHEN IN THE NEXT TERM?
5   I DON'T KNOW.
6               THE PARTIES BRIEFED, BUT NO PARTY HERE TODAY
7   ARGUED WHAT ARE THE FACTORS THAT APPLY TO THE COURT'S
8   DISCRETIONARY REVIEW OF A MOTION TO STAY.  THE COURT HAS
9   INHERENT POWER TO STAY ITS PROCEEDINGS, WHICH IS INCIDENTAL TO
10  THE INHERENT POWER TO CONTROL DISPOSITION OF CAUSES ON ITS
11  DOCKET, THE TIME AND EFFORT OF THE COURT, THE TIME AND EFFORT
12  OF COUNSEL, AND WITH ALL DUE RESPECT AND IN MIND OF THE
13  LITIGANTS IN THIS CASE, NOT JUST THE LITIGANTS, BUT THE VOTERS
14  IN THE STATE OF LOUISIANA.  SO THE COURT IS DIRECTED TO WEIGH
15  THE COMPETING INTERESTS AND MAINTAIN AN EVEN BALANCE IN
16  EXERCISING ITS DISCRETION ON WHETHER TO STAY OR NOT.  THAT
17  INCLUDES, NO. 1, WHAT IS THE POTENTIAL HARDSHIP TO THE
18  NONMOVING PARTY.  THE NONMOVING PARTY HAS STATED THEIR HARDSHIP
19  ELOQUENTLY, WHICH -- BUT THE COURT DOES NOTE THAT MS. BRANNON
20  RATHER STRAIGHTFORWARDLY CONCEDED THAT WHAT IS AT ISSUE IS A
21  FURTHER DELAY.
22               THIS CASE IS FAR FROM OVER IN TERMS OF DELAYS.
23  IF THE COURT MOVES FORWARD NEXT WEEK, YOU STILL HAVE THE COURT
24  OF APPEAL AND THE U.S. SUPREME COURT.  AND YOU HAVE TWO ROUNDS
25  BECAUSE YOU HAVE A ROUND OF STAYS, STAY APPLICATIONS, AND THEN

1   YOU HAVE A ROUND OF APPELLATE REVIEW.  SO IF *ROBINSON* IS ANY

2   INDICATION, IT'S A TWENTY-MONTH -- WE'RE TWENTY MONTHS AWAY IF

3   HISTORY IS ANY INDICATION, FROM A DETERMINATIVE DECISION ON THE

4   MAPS IN THIS CASE.

5            ONE OF THE OTHER FACTORS IS:  IS THERE A

6   SUBSTANTIAL LIKELIHOOD THAT THE CHALLENGER, THE STAY MOVANT,

7   WILL SUCCEED?  THAT REQUIRES THE COURT TO READ THE TEA LEAVES

8   AND THE COURT DECLINES TO DO THAT.  HOWEVER, THE COURT DOES

9   NOTE THAT THERE IS A CONFLUENCE OF CIRCUMSTANCES HERE, TO USE

10   MR. STRACH'S WORDS.  IT IS UNMISTAKABLE TO THIS COURT THAT

11   *ROBINSON* AND *CALLAIS* ARE VERY CLOSELY INTERTWINED WITH THIS

12   CASE, NOT IN THE FACTS BECAUSE THEY INVOLVE OBVIOUSLY DIFFERENT

13   RACES AND ONE'S FEDERAL RACES OR NATIONAL RACES, AND THE OTHER

14   BEING STATE RACES.  HOWEVER, IT COULD NOT BE MORE CLEAR THAT

15   THE UNITED STATES SUPREME COURT INTENDS TO ADDRESS THE

16   INTERPLAY BETWEEN SECTION 2 OF THE VOTING RIGHTS ACT AND THE

17   FOURTEENTH AMENDMENT.

18            SO WHILE THE PLAINTIFFS HAVE -- OR THE STAY

19   MOVANTS HAVE NOT DEMONSTRATED SUCCESS ON THE MERITS OF THEIR

20   CLAIM, THEY HAVE DEMONSTRATED A SUBSTANTIAL LIKELIHOOD THAT

21   THERE IS GOING TO BE A CHANGE IN THE GAME.

22            HARDSHIP AND INEQUITY TO THE MOVING PARTY IF THE

23   ACTION IS NOT STAYED, THE COURT FINDS THAT FACTOR NEUTRAL.

24   THERE'S NO MORE HARDSHIP OR INEQUITY ON THE MOVANT THAN THERE

25   IS ON THE NON-MOVANT.  I THINK THE HARDSHIP AND INEQUITY OF

1  GRANTING OR NOT GRANTING THE STAY IS PRETTY APPARENT TO BOTH
2  PARTIES.
3          JUDICIAL ECONOMY.  YOU KNOW, THE TAXPAYERS OF
4  THIS COUNTRY PAY ME TO TRY CASES, AND IF I HAVE TO TRY THEM AND
5  TRY THEM AGAIN, IT WOULDN'T BE THE FIRST TIME.  SO WHILE I SAID
6  I DON'T PARTICULARLY CHALLENGE OR RELISH THE IDEA OF A REDO,
7  IT'S PART OF THE -- IT'S PART OF THE JOB.  AND THAT'S NOT GOING
8  TO DRIVE THE COURT'S DECISION.  BUT IN TERMS OF THE ECONOMY OF
9  THE PARTIES, THE RISK OF CONFUSION TO THE VOTERS, THOSE ARE
10 THINGS THAT THE COURT FACTORS IN.
11         IT'S A HARD CALL AND IT'S A TIGHT CALL, BUT IN
12 LIGHT OF EVERYTHING THAT HAS BEEN ARGUED AND EVERYTHING THAT
13 I'VE JUST SAID, THE COURT IS GOING TO GRANT THE STAY.  THE
14 PARTIES ARE -- THE COURT IS -- THE MATTER IS STAYED PENDING
15 RESOLUTION BY THE UNITED STATES SUPREME COURT.  AND I'M QUITE
16 CERTAIN THAT THE PLAINTIFFS WILL FILE AN IMMEDIATE MOTION TO
17 LIFT THE STAY.
18         FOR THE RECORD, THE COURT DOES FIND IT -- AND
19 PERHAPS THE COURT OF APPEAL CAN ADDRESS THIS AT THE RIGHT TIME,
20 BUT THE STATE'S UNWILLINGNESS TO CONCEDE ON THE ISSUE OF STAY
21 AND ON THE ISSUE OF *PURCELL* IS VERY TELLING.  AND IT'S VERY
22 TELLING OF WHAT HAS BEEN AN UNDERLYING THEME IN ALL OF THESE
23 CASES, WHICH IS:  DELAY, DELAY, DELAY RULES THE DAY.  AND IT'S
24 NOT RIGHT.  IT'S NOT FAIR TO THE VOTERS.  IT'S UNPROFESSIONAL.
25 AND PERHAPS ANOTHER COURT THAT IS MORE WISE THAN I WILL ADDRESS

1　THOSE ISSUES.  THAT'S THE COURT'S RULING.

2　　　　　　　IS THERE ANYTHING FURTHER?

3　　　　　**MR. STRACH:**  NOT FROM US, YOUR HONOR.

4　　　　　**MS. BRANNON:**  YOUR HONOR, I JUST WOULD LIKE TO

5　CLARIFY YOUR ORDER.  THE PLAINTIFFS -- THE DEFENDANTS HAVE MADE

6　SEVERAL PROPOSALS THAT WE DO NOT -- EVEN FOURTEEN DAYS WAITING.

7　IF WE GET A RULING FROM THE SUPREME COURT IN *CALLAIS*, WE DO NOT

8　AGREE TO THEIR PROPOSAL, THAT WE SHOULD MEET AND CONFER AND

9　WAIT FOR FOURTEEN DAYS.  SO DO YOU HAVE A SUGGESTION?  BECAUSE

10　I THINK THAT'S EXTRA DAYS.

11　　　　　**THE COURT:**  NO.  I THINK AS SOON AS THE COURT ISSUES

12　A RULING IN *CALLAIS*, YOU HAVE THE GREEN LIGHT TO FILE A MOTION

13　TO LIFT THE STAY.

14　　　　　**MS. BRANNON:**  OKAY.

15　　　　　**MR. STRACH:**  WE CERTAINLY WOULD NOT -- I MEAN, ON THE

16　TIMING OF THE FILING OF THE MOTION, WE CERTAINLY WOULDN'T

17　OPPOSE THAT.

18　　　　　**THE COURT:**  YES.  I MEAN, I'M NOT GOING TO BIND YOU

19　TO WAIVE YOUR STAY OR YOUR *PURCELL*, AND I'M NOT GOING TO BIND

20　THEM TO WAIT EVEN A MINUTE AFTER THE U.S. SUPREME COURT DECIDES

21　*CALLAIS*.

22　　　　　**MS. BRANNON:**  AND WE WILL PROPOSE AN EXPEDITED

23　SCHEDULE.  WE DON'T WANT TO WAIT FOURTEEN DAYS TO DISCUSS IT

24　WITH THEM.  WE WILL MOVE IMMEDIATELY.

25　　　　　**THE COURT:**  FILE YOUR MOTION FOR AN EXPEDITED

1  SCHEDULE.  YOU HAVE THIS COURT'S COMMITMENT THAT THIS COURT

2  WILL NOT DELAY.  I WILL DO EVERYTHING I CAN TO GET YOU ON THE

3  DOCKET, INCLUDING MOVING CASES.  SO MAKE NO MISTAKE OF IT, IF

4  IT'S GOING TO GET DELAYED, IT'S GOING TO GET DELAYED BY A COURT

5  OTHER THAN MINE.

6          **MS. BRANNON:**  YOUR HONOR, WE VERY MUCH APPRECIATE

7  THAT, AND WE WILL DO EVERYTHING ON OUR PART TO HELP ASSIST AND

8  FACILITATE THAT.

9          **THE COURT:**  OKAY.

10          **MS. BRANNON:**  THANK YOU.

11          **THE COURT:**  ALL RIGHT.

12          **MR. STRACH:**  AND WE WILL NOT STAND IN THE WAY OF

13  THAT.

14          **THE COURT:**  OKAY.  COURT'S ADJOURNED.

15          **THE LAW CLERK:**  ALL RISE.

16              COURT IS NOW ADJOURNED.

17              **(WHEREUPON, THIS MATTER WAS ADJOURNED.)**

18                      * * *

19

20

21

22

23

24

25

1        **CERTIFICATE**

2        I, SHANNON THOMPSON, CCR, OFFICIAL COURT REPORTER FOR THE

3    UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF LOUISIANA,

4    CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT, TO

5    THE BEST OF MY ABILITY AND UNDERSTANDING, FROM THE RECORD OF

6    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7

8                    _Shannon Thompson_

9                    SHANNON THOMPSON, CCR

10                   OFFICIAL COURT REPORTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25