IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**HAROLD HARRIS, et al.**                                                                               **PLAINTIFFS**

**v.**                                                               **CIVIL ACTION NO.: 3:24-CV-289-GHD-RP**

**DESOTO COUNTY, MISSISSIPPI, et al.**                                  **DEFENDANTS**

<u>**ORDER GRANING MOTION TO STRIKE**</u>

      This matter is before the court on the Defendants' Motion to Strike Portions of William S. Cooper's Reply Report. ECF 205. The defendants ask the court to strike the two new illustrative redistricting plans presented by Cooper in his "reply" report. The plaintiffs oppose the motion. The court finds the motion is well taken and should be granted.

**Procedural Background**

      The plaintiffs -- two black individual DeSoto County, Mississippi residents, a predominately black national membership service organization with a chapter in Desoto County, and the DeSoto County chapter of the NAACP -- brought this action under Section 2 of the Voting Rights Act seeking injunctive and other relief against the defendants DeSoto County, the county board of supervisors, and the county election commission.[1] The plaintiffs challenge DeSoto County's 2022 redistricting plan, which the plaintiffs allege does not afford black voters in any of the county's five districts the opportunity to elect their preferred candidates to any county office.

      Of relevance to the present motion, the United States Supreme Court held in *Thornburg v. Gingles* that to prevail on a claim of vote dilution such as the plaintiffs', the aggrieved minority group generally must satisfy three preconditions, the first of which – now often referred to as "Gingles 1" -- is that "the minority group must be able to demonstrate that it is sufficiently large and geographically

---

[1] The plaintiffs' complaint also named as a defendant Dale Thompson in her official capacity as the county circuit clerk responsible for conducting county elections, but the claims against that defendant have since been dismissed.

compact to constitute a majority in a single-member district." 478 U.S. 30, 50, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986).

On April 18, 2025 – their deadline to designate expert witnesses – the plaintiffs designated (among other retained experts) William S. Cooper as a demographics and redistricting expert and provided Cooper's written report containing his opinions and other information as required by Federal Rule of Civil Procedure 26(a)(2)(B). According to the report, the plaintiffs asked Cooper "to determine whether the Black population in DeSoto County is 'sufficiently large and geographically compact' to allow for one majority-Black district in a five-district plan – i.e., a single-member district that meets the first *Gingles* precondition ('Gingles 1')." Cooper report, ECF 205-1 at 5 (footnotes omitted). In purported satisfaction of Gingles 1, Cooper's report presents three alternative five-district plans for DeSoto County – referred to as Illustrative Plans 1, 2, and 3 – that, according to Cooper, "demonstrate three different ways to draw a majority-Black district based on the 2020 Census." *Id.* at 6. Cooper opines, "Each illustrative plan meets the 50%+1 Gingles 1 requirement in a majority-Black district, with a majority Black voting age population ('BVAP')." *Id.* (footnote omitted). Cooper opines further, "All three of the illustrative plans comply with traditional redistricting principles, including population equality, compactness, contiguity, respect for communities of interest, and the non-dilution of minority voting strength." *Id.*

On July 11, 2025 – their expert designation deadline -- the defendants designated (among other retained experts) Sean P. Trende, Ph.D., whose written report states the defendants asked him to evaluate Cooper's expert report, in particular the three illustrative plans presented therein. In his report, Trende criticizes Cooper's three illustrative plans, both generally and individually. For instance, Trende opines that Cooper's maps "often subordinate his proposed traditional redistricting

principles to racial goals." Trende report, ECF 204-2 at 7.[2] Of relevance to the present motion, Trende criticizes the "narrowness" by which Cooper's maps reach the Gingles 1 50%+1 threshold, opining that said narrowness is relevant, when viewed in conjunction with other factors, to "the extent to which [Cooper's] decisions were driven by purely racial decisionmaking." *Id.* at 21. Also of relevance to the present motion, Trende criticizes Cooper's Illustrative Plan 1 for not accounting for incumbency, as "it pairs 60% of the county's incumbents in districts with other incumbents." *Id.* at 41. According to Trende, "When Mr. Cooper accounts for incumbency … his maps struggle and often produce less compact districts than any of those found in the Enacted Map." *Id.*

On August 11, 2025, the plaintiffs served a "reply" report prepared by Cooper in response to Trende's report. In his reply report, not only does Cooper defend his three previously presented illustrative plans against Trende's criticisms, he also presents two new alternative plans -- Illustrative Plans 4 and 5. According to Cooper, he developed Illustrative Plan 4, which has a higher BVAP than the previous three plans, "to negate Dr. Trende's 'narrowness' claim that seems to suggest I had to make race-based decisions to squeak across the 50%+1 threshold." Cooper reply report, ECF 205-3 at 6. Also, after acknowledging and defending against Trende's criticism of Illustrative Plan 1 for its high percentage of incumbent pairings, and pointing out that Illustrative Plans 2 and 3 avoid incumbent conflicts altogether while still retaining "reasonably compact" Gingles 1-compliant districts, Cooper states, "Nonetheless, it makes sense to consider Illustrative Plan 5, which locks in District 3 as drawn in Illustrative Plan 1 [which district Trende agrees is compact] but with fewer plan-wide incumbent conflicts." *Id.* at 9. In summary of his reply report, Cooper opines that "the five Illustrative Plans that I have developed are clearly within the norm in terms of traditional redistricting principles, including population equality, compactness, contiguity, respect for political subdivision

---

[2] This refers to the ECF page number and not to the page as numbered in Trende's report.

boundaries, respect for communities of interest, and non-dilution of minority voting strength." *Id.* at 2 (footnotes omitted).

The defendants now move to strike Illustrative Plans 4 and 5 from Cooper's reply report as untimely because those two plans were not provided on or before the plaintiffs' expert designation deadline and because they exceed the permissible scope of supplemental or rebuttal expert reports. In opposition, the plaintiffs argue that the court need not analyze whether the subject plans constitute permissible supplements to Cooper's initial report because, the plaintiffs argue, they were provided instead as permissible expert "rebuttal" evidence under Federal Rule of Civil Procedure Rule 26(a)(2)(D)(ii). As such, the court will confine its analysis to whether Illustrative Plans 4 and 5 constitute permissible expert rebuttal evidence and, if not, whether they should be stricken as untimely.

## Law and Analysis

Federal Rule of Civil Procedure 26(a)(2)(A) requires a party to "disclose to the other parties the identity of any witness it may use at trial to present" expert testimony. For a retained expert, this disclosure must be accompanied by the expert's written report containing, among other information, "a complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," and "any exhibits that will be used to summarize or support them." FED. R. CIV. P. 26(A)(2)(B)(i)-(iii). Expert disclosures must be made "at the time and in the sequence that the court orders." FED. R. CIV. P. 26(A)(2)(D). Under this court's local rules, expert disclosures must be made "no later than the time specified in the case management order." L. U. CIV. R. 26(A)(2).

In the present case, Cooper's Illustrative Plans 4 and 5 were disclosed well after the plaintiffs' expert designation deadline. As such, unless the plans constitute permissible expert

rebuttal evidence, their disclosure was untimely, and the court must then determine whether they should be stricken. The court will begin with the threshold issue.

### A. Whether Cooper's Illustrative Plans 4 and 5 are permissible expert rebuttal evidence.

Federal Rule of Civil Procedure 26(a)(2)(D)(ii) permits a disclosure of expert evidence within 30 days after another party's expert disclosure "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified" in the other party's disclosure. The purpose of rebuttal disclosures is just that – to rebut – and such disclosures "are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co Inc.*, 73 F.3d 546, 571 (5th Cir. 1996).

In determining whether an expert disclosure constitutes permissible rebuttal evidence, courts in the Fifth Circuit have found it helpful to consider (1) what evidence the rebuttal expert purports to contradict or rebut, (2) whether the purported rebuttal evidence is on the same subject matter as that identified in the opponent's expert disclosure, and (3) whether the purported rebuttal evidence is intended solely to contradict or rebut the opponent's expert evidence. *See, e.g., Complete Logistical Services, LLC v. Ruhl*, No. 18-3799, 2019 WL 2340933, at *2 (E.D. La. June 3, 2019) (citing *Poly-America, Inc. v. Serrot Intern., Inc.*, No. 300-1457, 2002 WL 1996561, at *15 (N.D. Tex. Aug. 26, 2002)); *YETI Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 WL 394511, at *2 (W.D. Tex. Jan 27, 2017); *Wireless Agents, L.L.C. v. Sony Ericsson Mobile Communications,* No. 3:05-CV-0289-D, 2006 WL 5127278, at *2 (N.D. Tex. May 31, 2006). In the present case, Cooper's Illustrative Plans 4 and 5 fail under these considerations.

Although Cooper's Illustrative Plans 4 and 5 purport to rebut Trende's report, the subject matters of Trende's report are Cooper's Illustrative Plans 1, 2, and 3 -- the only alternative plans put forward by Cooper in his initial report. Although in his reply report Cooper defends those three plans against Trende's criticisms, Cooper also presents two new alternative plans about which Trende did not opine. This is improper. "[A] rebuttal report does not allow its proponent an opportunity for a re-do of earlier reports of the proponent's primary experts and should be limited to rebutting testimony of the opposing expert and not more." *American General Life Insurance Company v. Russell*, 110 Fed. R. Evid. Serv. 484, No. 16-851-JWD-RLB, 2019 WL 4411819, at *7 (M.D. La. Sep. 16, 2019).

Even if Cooper's Illustrative Plans 4 and 5 can be viewed, as the plaintiffs urge, as being offered to rebut evidence on the same subject matter identified in Trende's report, it is clear they are not intended *solely* for that purpose as is required by the rule. They are also intended to serve as additional evidence supporting the plaintiffs' effort to meet their Gingles 1 burden as part of their prima facie case. Not only is this purpose apparent from Cooper's summary of his reply report quoted herein above, but the plaintiffs make it clear in their brief, which states that in his reply report Cooper "offered additional evidence [Illustrative Plans 4 and 5] specifically to rebut claims made by Defendants' experts *and in further support of his original opinion*." Plaintiffs' brief, ECF 238 at 8 (emphasis added). As to the importance of the additional evidence, the plaintiffs state, "Illustrative Maps 4 and 5, along with Illustrative Maps 1, 2, and 3, go to the heart of the case: whether the first *Gingles* precondition can be met in DeSoto County." *Id.* at 11.

The court finds that Illustrative Plans 4 and 5 are not intended solely to contradict or rebut evidence on the same subject matter identified in Trende's report. As such, the disclosure

of those two additional plans was untimely, and the court must consider whether they should be stricken.

**B. Whether Illustrative Plans 4 and 5 should be stricken.**

Federal Rule of Civil Procedure 37(c) states, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Under Local Uniform Civil Rule 26(a)(2), a party must make "full and complete" expert disclosures no later than the time specified in the case management order, and absent a finding of just cause, "failure to make full expert disclosures by the expert designation deadline is grounds for prohibiting introduction of that evidence at trial." In exercising its discretion whether to exclude a witness who was not properly designated, the court considers four factors: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Geiserman v. MacDonald,* 893 F.2d 787, 791 (5th Cir. 1990). The court discusses each of these factors in turn below.

First, in explanation of a failure to meet the court's deadlines, a party must show "that the deadlines [could not] reasonably be met despite the diligence of the party needing the extension." *Newsome v. International Paper Company*, 123 F.4th 754, 766 (5th Cir. 2024) (quoting *Filgueira v. U.S. Bank Nat's Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (per curiam)). In the present case, the plaintiffs reassert – incorrectly -- that the subject disclosure was timely. This explanation does not suffice. The plaintiffs also point to defense counsel's correspondence consenting to the plaintiffs' submission of expert rebuttal reports. However, that correspondence expressly reserves the right to challenge any rebuttal reports procedurally or substantively, and there is

certainly no language in that correspondence consenting to Cooper's submission of additional alternative redistricting plans that could and should have been disclosed on or before the plaintiffs' expert designation deadline. ECF 237-1. The plaintiffs' explanation is lacking, and this factor weighs heavily in favor of exclusion, which "is particularly appropriate" where the party has "failed to provide an adequate explanation for their failure to identify their expert within the designated timetable." *Betzel v. State Farm Lloyds,* 480 F.3d 704, 707 (5th Cir. 2007) (quoting *1488, Inc. v. Philisec Inv. Corp.,* 939 F.2d 1281, 1289 (5th Cir. 1991)).

Second, as to the importance of Cooper's Illustrative Plans 4 and 5, their exclusion would not deprive the plaintiffs of evidence supporting their Gingles 1 showing altogether. Even if that were the case, it would be no bar to exclusion. *See Geiserman*, 893 F.2d 793-94 (affirming exclusion of plaintiff's untimely disclosed expert testimony and resulting summary judgment). As it happens, though, Cooper and the plaintiffs maintain that Cooper's Illustrative Plans 1, 2 and 3 satisfy the Gingles 1 precondition while complying with traditional redistricting principles. Taking the plaintiffs' position at face value, Illustrative Plans 4 and 5 are not of vital importance.

Third, at to the potential prejudice in allowing the testimony, "[e]ven when 'the degree of prejudice suffered by the [other party] due to the late designation would not have been great, a district court still has discretion to control pretrial discovery and sanction a party's failure to follow a scheduling order." *Stewart v. Gruber*, No. 23-30129, 2023 WL 8643633, at *6 (5th Cir. 2023) (quoting *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281, 1288-89 (5th Cir. 1991)). In the present case, however, the potential prejudice to the defendants is significant. Although the defendants had the opportunity to depose Cooper after the untimely disclosure of Illustrative Plans 4 and 5, the defendants and Trende were deprived of the opportunity to prepare and submit rebuttal expert opinions as to those plans. "A party suffers prejudice if an expert report is

produced late because the party missed the opportunity to designate rebuttal witnesses." *Avneri v. Hartford Fire Insurance Company*, No. 4:16-CV-00917, 2017 WL 4517955, at *4 (E.D. Tex. Oct. 10, 2017). Further, Cooper's untimely disclosure, if permitted, would disrupt the court's discovery schedule, would result in additional expense to the defendants, and would disrupt the defendants' preparation of their case – all prejudices that have been recognized by the Fifth Circuit. *See Barrett v. Atlantic Richfield Co.,* 95 F.3d 375, 381 (5th Cir. 1996); *Geiserman,* 893 F.2d at 791.

Finally, as to the availability of a continuance to cure the prejudice, and to the extent the prejudice could be cured given its nature, the plaintiffs oppose a continuance. In fact, the plaintiffs prevailed on their motion to expedite the trial of this case, and the court recently sided with the plaintiffs again in denying the defendants' motion to stay this case or continue trial pending the United States Supreme Court's forthcoming decision in a case examining the constitutionality and interpretation of Section 2 of the Voting Rights Act.

Having considered the relevant factors, the court finds that Cooper's untimely disclosed Illustrative Plans 4 and 5 should be stricken.

## Conclusion

For the above reasons, the Defendants' Motion to Strike Portions of William S. Cooper's Reply Report [ECF 205] is GRANTED, those portions of Cooper's reply report pertaining to Illustrative Plans 4 and 5 are STRICKEN, and Cooper is precluded from testifying about those plans at trial.

**SO ORDERED**, this the 12th day of November, 2025.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE