IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | |
|---|---|
| HAROLD HARRIS, PASTOR ROBERT TIPTON, JR., DELTA SIGMA THETA SORORITY, INC., and DESOTO COUNTY MS NAACP UNIT 5574,<br><br>*Plaintiffs*,<br><br>v.<br><br>DESOTO COUNTY, MISSISSIPPI; DESOTO COUNTY BOARD OF SUPERVISORS; and DESOTO COUNTY ELECTION COMMISSION,<br><br>*Defendants*. | No. 3:24-cv-00289-GHD-RP |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO STRIKE**

Plaintiffs Harold Harris, Pastor Robert Tipton, Jr., Delta Sigma Theta Sorority, Inc., and DeSoto County MS NAACP Unit 5574 (together, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to the Defendants' Motion to Strike witness Wendy Johnson and several exhibits proffered by Plaintiffs, numbered PX-249 through 254 and PX-272. ECF No. 361.

Defendants' attempt to strike Wendy Johnson from Plaintiffs' witness list is meritless. As the witness list makes explicit, Ms. Johnson will testify as the corporate designee of Plaintiff Delta Sigma Theta Sorority, Inc. ("DST"). Her testimony, although important, will be limited to matters of an exclusively corporate nature: DST will testify through Ms. Johnson concerning its corporate

1

structure, its mission, and limited details regarding its membership and activities. Each of these issues is a topic about which Defendants have sought and received discovery from DST in this case. Defendants provide no authority that requires a corporation to testify at trial through the same individual who was its deposition designee pursuant to Federal Rule of Civil Procedure 30(b)(6). Indeed, in this case, three different individuals have already testified on behalf of DST pursuant to Fed. R. Civ. P. 30(b)(6) and 33(b)(1)(B). Defendants have not previously expressed any concern about that practice. They have had—and used—extensive opportunity to discover details about DST, and suffer no prejudice from DST testifying through Ms. Johnson at trial.

Defendants' motion also requests that this Court strike several exhibits proffered by Plaintiffs. Defendants offer no case law or other analysis in support of this request, and, indeed, do not even describe the exhibits at issue. The exhibits in question are all documents created by Defendants and published on DeSoto County's official website. Plaintiffs' Exhibits 250–253 are copies of the website listing of the priorities of four of the DeSoto County Supervisors.[1] Plaintiffs' Exhibit 272 is the list of the County's polling locations as of June 24, 2025, also published by the County on its official website.[2] It is simply the latest version, to date, of the lists of polling places previously produced by Defendants that are designated PX-255–263, that Defendants themselves were obligated to produce.

The challenged exhibits thus are all documents that were created by Defendants, and that were, at all times, in Defendants' possession, custody, and control. Plaintiffs never had any

---

[1] *See* DeSoto County, MS – Official Website, *Board of Supervisors*, https://www.desotocountyms.gov/100/Board-of-Supervisors (last visited December 27, 2025).
[2] *See* DeSoto County, MS – Official Website, *Precinct Polling Place* (June 25, 2025), https://www.desotocountyms.gov/documentcenter/view/1085.

2

responsibility to disclose them. Defendants were nevertheless on notice of Plaintiffs' intended use of all these exhibits and have no possible claim of prejudice.[3]

## BACKGROUND

Plaintiffs, including DST, a non-profit 501(c)(7) corporation, commenced this lawsuit in September 2024. After a brief stay, discovery commenced in January 2025 and closed on October 6, 2025. Over the course of discovery, Defendants obtained extensive discovery from Plaintiffs, including DST. Defendants propounded requests for production, in response to which Plaintiffs provided thousands of pages of documents, including many from DST and its members. The documents DST provided included emails, event flyers, and social media posts demonstrating DST's commitment to voter education, including regarding redistricting in DeSoto County. *See, e.g.*, Exhibit GG to Resp. in Opp. to Mot. for Summ. J, ECF No. 318-33 (composite exhibit of flyers and email); *see also* Op. Denying Defs.' Mot. for Summ. J. at 8, ECF No. 358 (discussing this evidence). Defendants also served twenty-two interrogatories (many of which were compound interrogatories covering multiple topics), including some addressed specifically and solely to DST. *See* Ex. 2 (compendium of DST interrogatory responses).[4] Plaintiff DST provided several sets of sworn answers to these interrogatories. *See id*. DST's initial responses to the interrogatories, as well as its first supplemental responses, were verified and sworn to by Shulandra Kerr, acting on behalf of the corporation. *See id*. at 47, 61. DST's second and third supplemental responses were verified and sworn to by Tameka Simmons, acting on behalf of the corporation. *See id.* at 95, 106. Among myriad other information, the interrogatory responses included details of DST members

---

[3] Plaintiffs respectfully withdraw PX-254, and will not proffer it in their case in chief. And Defendants, since filing their motion, have advised Plaintiffs that they withdraw their objection to PX-249. Ex. 1 (email from Nicholas Morisani to Daniel Hessel, Dec. 27, 2025).
[4] Citations to page numbers of Ex. 2 refer to the ECF pagination.

who are Black and are registered voters living in Horn Lake or surrounding areas that have been "cracked" by the districting plan at issue in this lawsuit. *See id.* at 102–03; *see also* ECF No. 358 at 7 (discussing this testimony).

In addition to its extensive document production, DST submitted to a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). Defendants noticed seventy-two topics for that deposition. Notice to Take Dep. of Delta Sigma Theta, Inc., ECF No. 215. Given the breadth of the topics and the extent to which they included details regarding the activities of DST's local alumnae chapter, DST designated Dr. Jackie Nickson, who had recently ended her term as President of the DeSoto County alumnae chapter, to testify on its behalf at the deposition. As noted above, three different individuals have already testified on behalf of DST pursuant to Fed. R. Civ. P. 30(b)(6) and 33(b)(1)(B). At no point during discovery did Defendants object to the fact that DST had provided sworn testimony through three different individuals, or otherwise express any concern whatsoever.

Plaintiffs included Wendy Johnson on their witness list, explicitly cabining her testimony to information on behalf of DST as its corporate designee. *See* Exhibit 1 to Defs.' Mot. to Strike at 1, ECF No. 361-1 (Plaintiffs' Witness List to Pretrial Order). Ms. Johnson is the National Secretary of DST and is on the National Executive Committee. Her testimony will be limited in scope, and is intended to support DST's standing in this case. Ms. Johnson will testify on DST's behalf to the Sorority's corporate structure, its relationship with its local alumnae chapter, its mission, and its membership. While important, the information is straightforward in nature, and the National Secretary of DST is the most appropriate person to testify authoritatively to these corporate facts. DST has provided all this information to Defendants in response to their discovery requests, and Defendants have had ample notice and opportunity to seek discovery from DST on

4

these topics, including as part of their seventy-two topic Rule 30(b)(6) deposition. Ms. Johnson, who is a corporate officer based in Pennsylvania, will not provide any testimony about DeSoto County's redistricting process or other substantive contested issues from her personal knowledge.

Defendants also seek to strike Plaintiffs' Exhibits 250–253 and 272. As noted above, all of the exhibits at issue were created by Defendants and are maintained on DeSoto County's website for access by the public. *See supra* fns. 1, 2. All were either previously disclosed to Defendants or were documents that Defendants should have produced in response to Plaintiffs' document requests.

Defendants' motion to strike should be denied in its entirety.

## ARGUMENT

**I.     PLAINTIFFS HAD NO OBLIGATION TO DISCLOSE DST'S SPECIFIC CORPORATE DESIGNEE.**

Defendants' efforts to strike Ms. Johnson from Plaintiffs' witness list miss the mark entirely. Plaintiffs intend to call Ms. Johnson as a corporate designee of DST. Ms. Johnson's testimony will be limited to information that she is providing on DST's behalf. She will *not* be testifying in her personal capacity or based on personal knowledge. In other words, by designating Ms. Johnson to testify on its behalf, DST will "appear[] vicariously through" her. *Resolution Trust Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993). While of course it will be Ms. Johnson taking the stand, it is DST that will be testifying through her—just as it testified through other corporate designees during discovery.

There is no requirement that a corporation testify at trial through the same corporate designee as in a deposition. Defendants seemingly assert that only the Rule 30(b)(6) deponent may testify on behalf of a corporation once designated. *See* Mem. in Supp. of Defs.' Mot. to Strike at 6, ECF No. 362. But they cite *no authority* to support this proposition, and relevant authority

5

provides otherwise. "[N]othing in Rule 30(b)(6) requires a corporate party to call its designees as witnesses or bars it from calling another of its employees as a witness." *Johnson v. Big Lots Stores, Inc.*, Nos. 04-3201, 05-6627, 2008 WL 6928161, at *5 (E.D. La. May 2, 2008). Indeed, multiple "courts have explained that a corporate party is not bound to call its 30(b)(6) designees and that a corporate party is permitted to call corporate employees who were not 30(b)(6) representatives." *Id.* (collecting cases); *cf.* Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2103 (3d ed. 2004) (discussing corporate party "call[ing] the same *or another witness* . . . at trial."). Indeed, over the course of discovery in this case, Defendants did not express the slightest objection to DST's offering sworn testimony through three different individuals pursuant to Federal Rules of Civil Procedure 30(b)(6) and 33(b)(1)(B).

Similarly, Plaintiffs were not required to list Ms. Johnson in their initial disclosures. Several courts have observed that the Federal Rules of Civil Procedure do not contemplate the naming of *any* corporate designee in disclosures (let alone *every potential* designee). In *Moore v. Computer Assocs. Int'l, Inc.*, for example, the court explained that the text of Federal Rule of Civil Procedure 26(a)(1) is "limited to individuals and exclusive of corporate entities, an exclusion which would necessarily apply to individuals who testify on behalf of corporate entities." 653 F. Supp. 2d 955, 959 (D. Ariz. 2009); *see also id.* (collecting cases in which courts held Rule 26(a)(1) does not require disclosure of any corporate designees). The *Moore* court further explained that the Federal Rules have "separate treatment of corporations and individuals during discovery," with Rules 30(b)(6) and 33(b)(1)(B) governing discovery of corporations. *Id*. In *Moore*, the court denied a motion to strike an undisclosed corporate designee because the moving party "could have submitted the appropriate questions to Defendant [corporation] within the body of the Rule 30(b)(6) deposition notice and Defendant would then have been obligated to produce a deponent

6

with sufficient corporate knowledge to answer the questions." *Id*. Here, as in *Moore*, DST seeks to call a different corporate witness than in the Rule 30(b)(6) deposition. But *unlike* in *Moore*, there is no surprise or failure on the part of Defendants to elicit information during discovery—all of DST's planned testimony through Ms. Johnson has been elicited through discovery. Defendants suffer no prejudice whatsoever.

This Court relied on *Moore* to deny a similar motion to strike in *Garth v. RAC Acceptance East, LLC*, No. 1:19-cv-192-DMB-RP, 2021 WL 4432829 (N.D. Miss. Sept. 27, 2021). Contrary to Defendants' contention, this Court's decision in *Garth* is applicable here. In *Garth*, this Court held that, under certain circumstances, a party could call a corporate representative that had not been disclosed in discovery to offer information that was "corporate in nature" and "could be elicited from any number of corporate representatives." *Id.* at *4. Both those requirements are met here. Ms. Johnson is the National Secretary of DST, serving on the National Executive Committee, and her testimony will be limited to information that is "corporate in nature" regarding DST's structure, mission, and membership. *Id*. She will not provide any testimony on any other factual issues. Additionally, Ms. Johnson's testimony "could be elicited from any number of corporate representatives." *Id*. Other corporate representatives have in fact sworn to the information she will offer at trial; as explained above, DST has offered sworn testimony through three other individuals in this case.

The final element that led this Court to deny a motion to strike in *Garth* is also present here. In *Garth*, this Court reconciled two competing strains of case law regarding corporate testimony by previously undisclosed witnesses. The Court's analysis turned on the extent to which the party moving to strike a witness had notice and opportunity to seek discovery concerning the proffered testimony. *See id*. at *2–4. *Garth* relied on several cases in which courts denied motions

7

to strike because the moving party had the opportunity to depose a corporate representative on the relevant topics during a Rule 30(b)(6) deposition. *See id.* at *2 (citing *Moore*, 653 F. Supp. 2d at 959–60, and *Krawczyk v. Centurion Capital Corporation*, No. 06-6273, 2009 WL 395458, at *6 (N.D. Ill. Feb. 18, 2009). Although *Garth* discussed this element in the context of whether the topics were specified in Rule 26(a) disclosures, the reasoning turned on whether, as a practical matter, the moving party had "notice of the potential need to conduct further corporate discovery on [the] topic" to be discussed at trial. *Id.* at *3. Indeed, in *Moore*, on which *Garth* relied, there is no indication that *any* corporate representative was listed in Rule 26 disclosures, and the *Moore* court's analysis concluded that such disclosure was not required. *Moore*, 653 F. Supp. 2d at 959–60.

Here, Defendants plainly had notice of the need to seek discovery from DST on the limited topics Ms. Johnson will discuss at trial. They have had ample opportunity to discover details regarding DST during discovery and have in fact conducted extensive discovery. Defendants requested and received extensive document production and propounded twenty-two interrogatories, which DST answered and supplemented throughout this litigation. *See* Ex. 2. Most notably, Defendants' 30(b)(6) deposition of DST noticed seventy-two topics, covering myriad aspects of DST's organizational structure, activities, and allegations in this case. *See* ECF No. 215. In the face of such expansive discovery of DST, there is no basis to conclude that Defendants lacked adequate notice of the limited testimony DST intends to offer through Ms. Johnson.

This fact pattern is a far cry from cases in which courts have granted motions to strike. Although *Garth* discusses cases in which the paucity of disclosures "impair[ed] the opposing party's ability to properly notice a Rule 30(b)(6) deposition or conduct other discovery," it found them inapplicable, and those cases are no more applicable here. *Garth*, 2021 WL 4432829, at *3.

For example, *Garth* discusses but distinguishes *Rogers v. Bank of America, N.A.*, No. 13-1333-CM-TJ, 2014 WL 4681031 (D. Kan. Sept. 19, 2014). There, the defendant corporation refused to identify various corporate employees, each of whom appeared to have *different* information regarding the claims and defenses in the case. *See id*. at *6. Nothing similar is present here. Similarly, *Garth* distinguishes *Toney v. Hakala*, No. 4:10-cv-2056-JAR, 2012 WL 1554911 (E.D. Mo. Apr. 30, 2012), in which the court concluded the moving party was "prevent[ed] . . . from conducting effective discovery." *Id*. at *1. By contrast, Defendants here conducted extensive paper discovery and a seventy-two topic 30(b)(6) deposition of DST and never raised with the court any argument that they were prevented from discovery of DST, nor do they do so now. This is self-evidently not an instance where Defendants' discovery was impaired.

## II. IN THE ALTERNATIVE, THE NON-DISCLOSURE OF MS. JOHNSON WAS HARMLESS, AND SHE SHOULD BE PERMITTED TO TESTIFY.

Because Ms. Johnson is a corporate designee of Plaintiff DST, and Defendants had notice that a DST corporate designee would testify in this case, this Court need not engage in a Rule 37(c) analysis. But such an analysis favors permitting Ms. Johnson's testimony.

DST's testimony through Ms. Johnson is important. She will testify to DST's 501(c)(7) corporate structure, its mission, and provide limited details regarding DST's membership. These issues go to DST's standing in the case, helping to prove that this lawsuit is germane to DST's purpose and that DST has at least one member that would have standing in their own right to bring this case. *See* ECF No. 358 at 6–8 (discussing associational standing). Defendants are unavailing in relying on *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381 (5th Cir. 1996), to justify the exclusion of Ms, Johnson's testimony here. In *Barrett*, the testimony at issue was expert testimony by four experts, who had failed to disclose their opinions or appear for depositions by the court's deadline. *Id*. at 377–78. The sheer extent of that testimony, and its complicated expert nature, distinguishes

9

that case from this one. Here, Ms. Johnson will offer important, but limited and straightforward testimony on issues that have been extensively covered in discovery.

Moreover, Defendants have suffered no prejudice here. As explained, they have conducted extensive discovery regarding DST, and there is no prejudice to them if DST's testimony is delivered by Ms. Johnson or by another corporate representative. All of the testimony that Ms. Johnson will proffer has been discussed or otherwise previewed in DST's deposition, its interrogatory answers, and/or its document production. DST's prior sworn testimony is binding on its corporate designee just as any individual witness is bound by her prior sworn testimony. *See* Wright & Miller, *supra* § 2103.

Finally, any failure to disclose Ms. Johnson is explainable. Plaintiffs had no reason to believe that it would be controversial that a corporation could select its preferred agent to offer testimony at trial, regardless whether that agent was the 30(b)(6) deponent. Indeed, the case law makes clear that a corporation can generally choose its corporate representative, and that while Ms. Johnson may be taking the stand, it is DST that will be testifying vicariously through her. *See Resolution Trust Corp.*, 985 F.2d at 197. Moreover, DST has already offered sworn testimony in this case through three different individuals, and Defendants never expressed any concern about that. Against this backdrop, it is understandable that Plaintiffs did not anticipate the need to name every possible potential corporate witness in their initial disclosures. This is especially true because as set forth above, Defendants had notice that a DST corporate representative would testify at trial. And, given the extraordinary number of topics on which DST was deposed, Plaintiffs reasonably understood that Defendants had the notice and opportunity that disclosures are meant to provide.

## III. DEFENDANTS HAVE NO BASIS FOR A CHALLENGE TO PLAINTIFFS' EXHIBITS.

Defendants seek to exclude several of Plaintiffs' exhibits by invoking Rule 37(c)(1), which provides:

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). By its terms, this rule applies only to failure to disclose under Rule 26(a), or failure to supplement the disclosures required by Rule 26(a) pursuant to Rule 26(e). *Mission Toxicology, LLC v. UnitedHealthcare Ins. Co.*, 499 F. Supp. 3d 338, 344 (W.D. Tex. 2020). The documents that Defendant moves to strike, however, are not subject to Rule 26(a), and, therefore, cannot be subject to Rule 26(e). Rule 26(a) requires disclosure only of items in the *disclosing* party's possession, custody, or control. *Drayton v. United Airlines, Inc.*, No. 23-20017, 2023 WL 5919327 (5th Cir. Sept. 11, 2023).

As noted above, however, the documents at issue here were obtained from Defendants' own official website. Plaintiffs' Exhibits 250-253, appended as Ex. 3 through 6, are "priorities" of DeSoto County Supervisors Medlin, Gardner, Denison, and Caldwell, respectively, as listed on the County's website. *See supra* n.1. Moreover, Plaintiffs' expert, Professor Marvin King, disclosed his analysis of PX-250-253 in his initial Expert Report, served on Defendants on April 18, 2025. *See* ECF No 318-6 *(*King Expert Report at 40 and fn. 176). Finally, PX-272, appended as Ex. 7, is simply the County's most recent list of its polling places, published on the County's official website. *See supra* fn 2. Plaintiffs served Requests for Production on Defendants requiring them to produce "the official list of polling places used in each election through and including the most recent one." Ex. 8 (Plaintiffs' First Requests for Production of Documents, Request No. 4).

11

In response, Defendants produced their lists of polling locations for the years 2012, 2015, 2019, 2020, 2022, 2023, and lists of polling locations dated June 7, 2022 and May 1, 2023. Plaintiffs designated these documents as PX-255 through 263, and Defendants do not object to those exhibits. Defendants have the ongoing duty to supplement the lists of polling locations they produced when new versions of the list become available. Fed. R. Civ. P. 26(e). Accordingly, Defendants should have produced the document designated PX-272—the most recent polling-place list currently available—but they failed to do so. Defendants therefore cannot meet their burden of showing that Plaintiffs failed to meet their disclosure obligation under Rule 26(a). Plaintiffs had no obligation to disclose documents to the party that created and maintained them. *Moss v. Fairborn City Schools*, No. 3:08-cv-393, 2010 WL 11538379 (S.D. Ohio Mar. 5, 2010) (plaintiff not required to provide defendant with documents already defendant's possession).

    Meanwhile, Rule 26(e) requires:

A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

(A)    in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . .

Fed. R. Civ. Pro. Rule 26(e)(1). This Rule's plain terms apply only to disclosures made pursuant to Rule 26(a), that is, of information or property in the "possession, custody, or control" of the disclosing party. Again, the documents at issue here belong to Defendants.

    As Defendants note, moreover, the purpose of the disclosure requirements of Rule 26 is to "eliminate unfair surprise to the opposing party." ECF No. 362 at 3 (citing cases). Defendants cannot claim any surprise here: they have been on notice for many months of Plaintiffs' intent to rely on the specific documents at issue. Defendants knew as of April 18, 2025—more than five

months before the close of discovery—that Plaintiffs' expert, Professor King, had analyzed PX-250–253, the statements of priorities of Supervisors Medlin, Gardner, Denison, and Caldwell, in forming his expert opinions in this case. *See* Fed. R. Civ. Pro. 26(e)(1)(A) (duty to supplement applies only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing").

Finally, Defendants were on clear notice of Plaintiffs' intent to introduce Defendants' lists of polling places because Plaintiffs requested their production during discovery, and Defendants produced the earlier iterations of the polling place lists. Defendants failed to produce the most recent version, shirking their ongoing disclosure obligation, and should not be heard to object to Plaintiffs' having done their job for them.

There is no basis for any motion to strike PX-250–253 or PX-272.

### IV. IN THE ALTERNATIVE, ANY NON-DISCLOSURE OF PX-250-253 OR PX-272 WAS HARMLESS.

As set forth above, Rule 37(c) is inapplicable to the exhibits that are the subject of Defendants' motion. In any event, analysis of the alleged non-disclosure of these exhibits favors denial of the motion to strike.

The exhibits are important. The Supervisors' own descriptions of their priorities, PX-250–253, provide evidence directly relevant to an issue addressed by the Complaint and addressed throughout the discovery process: whether the Board of Supervisors is responsive to the needs of Black citizens of the County; they are also part of the basis for the opinion of Plaintiffs' expert on that topic. Plaintiffs' Exhibit 272, the most recent list of DeSoto County's polling places, is also directly relevant to an issue addressed by the Complaint and throughout the discovery process. It is important to the accuracy of the record in this case for the most recent version of the polling locations to be in evidence. These documents are all highly relevant to Plaintiffs' proof in the case.

13

There is, moreover, no prejudice to Defendants. They cannot claim to be surprised by the introduction of their own documents. For the same reason, any alleged failure of disclosure by Plaintiffs is explainable. They disclosed the relevant documents within their own possession, custody, or control, but reasonably believed they had no obligation to disclose Defendants' publicly- available documents, or documents obtained or requested from Defendants themselves.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Strike.

                                      Dated: December 29, 2025

                                      Respectfully submitted,

| | |
|---|---|
| */s/ Joshua Tom* | */s/ Brenda Wright* |
| Joshua Tom (Miss. Bar No. 105392) | Brenda Wright* |
| **ACLU OF MISSISSIPPI** | Victor Genecin* |
| 101 South Congress Street | Breanna Williams* |
| Jackson, MS 39201 | Jory Burks* |
| Telephone: (601) 354-3408 | **NAACP LEGAL DEFENSE AND** |
| jtom@aclu-ms.org |    **EDUCATIONAL FUND, INC.** |
| | 40 Rector Street, 5th Floor |
| Daniel J. Hessel* | New York, NY 10006 |
| Ruth Greenwood* | Telephone: (212) 965-2200 |
| **ELECTION LAW CLINIC** | Facsimile: (212) 226-7592 |
| **HARVARD LAW SCHOOL** | bwright@naacpldf.org |
| 6 Everett Street, Ste. 4105 | vgenecin@naacpldf.org |
| Cambridge, MA 02138 | bwilliams@naacpldf.org |
| (617) 496-0222 | jburks@naacpldf.org |
| dhessel@law.harvard.edu | |
| rgreenwood@law.harvard.edu | Víctor Jones* |
| | Pilar Whitaker* |
| Amir Badat (Miss. Bar No. 106599) | **NAACP LEGAL DEFENSE AND** |
| **BADAT LEGAL PLLC** |    **EDUCATIONAL FUND, INC.** |
| P.O. Box 15 | 700 14th Street NW, Suite 600 |
| Tougaloo, MS 39174 | Washington, DC 20005 |
| Phone: (601) 462-9592 | Telephone: (202) 216-2720 |
| amir.badat@gmail.com | Facsimile: (202) 682-1312 |
| | vjones@naacpldf.org |
| | pwhitaker@naacpldf.org |
| | |
| | *Attorneys for Plaintiffs* |
| | *\*Admitted Pro Hac Vice* |

## CERTIFICATE OF SERVICE

I, Brenda Wright, hereby certify that on December 29, 2025, I electronically filed this motion with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record in this action.

        Respectfully submitted,

        */s/ Brenda Wright*
        Brenda Wright