FORM 3 (ND/SD MISS. DEC. 2011)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

HAROLD HARRIS, *ET AL.*,                                              **PLAINTIFFS**

V.                                              CIVIL ACTION NO. 3:24-CV-00289-GHD-RP

DESOTO COUNTY BOARD
OF SUPERVISORS, *ET AL.*,                                              **DEFENDANTS**

## PRETRIAL ORDER

1.    A pretrial conference was held as follows:

Date: <u>12/17/2025</u>          Time: <u>10:00 a.m.</u>

United States Courthouse at:        <u>Oxford</u>, Mississippi,

before the following judicial officer: <u>Magistrate Judge Roy Percy</u>.

2.    The following counsel appeared:

a.    For the Plaintiffs:

| Name | Postal and Email Addresses | Telephone No. |
|------|---------------------------|---------------|
| Joshua Tom | ACLU of Mississippi<br>P.O. Box 2242<br>Jackson, MS 39225<br>jtom@aclu-ms.org | (601) 354-3408 |
| Daniel Hessel | Election Law Clinic<br>Harvard Law School<br>6 Everett Street, Ste. 4105<br>Cambridge, MA 02138<br>dhessel@law.harvard.edu | (917) 403-4976 |

PD.60168048.1

FORM 3 (ND/SD MISS. DEC. 2011)

| Brenda Wright | NAACP Legal Defense Fund<br>40 Rector Street, 5th Floor<br>New York, NY 10006<br>bwright@naacpldf.org | (212) 965-2200 |
| Amir Badat | Badat Legal PLLC<br>P.O. Box 15<br>Tougaloo, MS 39174<br>amir.badat@gmail.com | (601) 462-9592 |

**b.**  For the Defendants:

| Name | Postal and Email Addresses | Telephone No. |
| --- | --- | --- |
| Nicholas Morisani | Phelps Dunbar LLP<br>1905 Community Bank Way<br>Suite 200<br>Flowood, MS 39211<br>nick.morisani@phelps.com | 601-352-2300 |
| David Michael Hurst | Phelps Dunbar LLP<br>1905 Community Bank Way<br>Suite 200<br>P.O. Box 320159<br>Flowood, MS 39211<br>mike.hurst@phelps.com | 601-352-2300 |
| Mark Halbert | Phelps Dunbar LLP<br>201 S. Spring Street<br>Seventh Floor<br>P.O. Box 1220<br>Tupelo, MS 38802-1220<br>mark.halbert@phelps.com | 662-690-8122 |
| Andrew Coffman | Phelps Dunbar LLP<br>201 S. Spring Street<br>Seventh Floor<br>P.O. Box 1220<br>Tupelo, MS 38802-1220 | 662-690-8122 |

FORM 3 (ND/SD MISS. DEC. 2011)

andrew.coffman@phelps.com

| | | |
|---|---|---|
| Nash Gilmore | Phelps Dunbar LLP<br>1905 Community Bank Way<br>Suite 200<br>P.O. Box 320159<br>Flowood, MS 39211<br>nash.gilmore@phelps.com | 601-352-2300 |
| Sonya Dickson | Phelps Dunbar LLP<br>1905 Community Bank Way<br>Suite 200<br>P.O. Box 320159<br>Flowood, MS 39211<br>sonya.dickson@phelps.com | 601-352-2300 |
| W. Thomas Siler, Jr. | Phelps Dunbar LLP<br>1905 Community Bank Way<br>Suite 200<br>Flowood, MS 39211<br>tommy.siler@phelps.com | 601-352-2300 |

3.    The pleadings are amended to conform to this pretrial order.

4.    The following claims (including claims stated in the complaint, counterclaims, crossclaims, third-party claims, etc.) have been filed:

A single claim for violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, alleging that the current DeSoto County districts under the 2022 Plan dilute the voting strength of Black DeSoto County citizens, including Plaintiffs, in violation of Section 2 of the Voting Rights Act ("VRA"), 52 U.S.C. § 10301, and 42 U.S.C. § 1983. (Defendants dispute that Section 2 of the VRA is privately enforceable pursuant to 42 U.S.C. § 1983 and that a freestanding violation of 42 U.S.C. § 1983 is a cognizable claim.).

Plaintiffs seek declaratory relief that the district boundaries in the 2022 Plan violate Section 2 of the VRA. Plaintiffs also seek injunctive relief to permanently enjoin Defendants and their agents from holding any election for the County Board of Supervisors, Board of Election Commission, Board of Education, Constable, or judge of the County Justice Court under the 2022 Plan, and ordering the adoption of remedial plans that do not abridge or dilute the ability of Black voters to elect candidates of their choice should the County not adopt election districts that do not abridge or dilute the ability of Black voters to elect candidates of their choice by a reasonable deadline. Plaintiffs also seek an order for Defendants to hold special

elections to limit the alleged harm to Plaintiffs should adequate relief be unavailable prior to the next regularly scheduled elections. Plaintiffs also request attorneys' fees and costs pursuant to 52 U.S.C. § 10310(e) and 42 U.S.C. § 1988(b) & (c). (Defendants object that the request for attorneys' fees and costs was properly pled in the Complaint.).

5.    The basis for this court's jurisdiction is:

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1357 because the matters in controversy arise under the Constitution and laws of the United States, as well as under 52 U.S.C. §§ 10301 and 10310, and 42 U.S.C. §§ 1983 and 1988. Additionally, Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure. (Defendants object that the matters in controversy arise under the Constitution, that 42 U.S.C. § 1988 is sufficient to confer federal question jurisdiction, and that Rules 57 and 65 of the Federal Rules of Civil Procedure themselves authorize an action for declaratory and injunctive relief in that these rules govern the procedures for obtaining such relief, respectively. Rule 82 explicitly states that the Federal Rules of Civil Procedure "do not extend or limit the jurisdiction of the district courts . . . ." Fed. R. Civ. P. 82.).

6.    The following jurisdictional question(s) remain(s) [If none, enter "None"]:

Defendants raise a threshold question whether Section 2 of the Voting Rights Act includes a private right of action.

Defendants maintain that there are remaining questions as to whether Plaintiff Delta Sigma Theta has standing under Article III of the United States Constitution to pursue a Section 2 claim on behalf of Black voting age citizens in DeSoto County.

7.    The following motions remain pending:

[290]  Motion in Limine to Partially Exclude Testimony of Sean P. Trende

[295]  Motion in Limine to Exclude Testimony of Marvin King, Ph.D.

[367]  Urgent and Necessitous Motion for Reconsideration

8.    The parties accept the following **concise** summaries of the ultimate facts as claimed by:

FORM 3 (ND/SD MISS. DEC. 2011)

**a.** Plaintiffs:

Plaintiffs challenge DeSoto County's 2022 districting plan enacted by the DeSoto County Board of Supervisors ("2022 Plan"). The 2022 Plan unlawfully dilutes the voting power of the Black community in DeSoto County in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and 42 U.S.C. § 1983.

The 2022 Plan governs the election of twenty-five DeSoto County officials: five members of the County's Board of Supervisors, five members of the County's Board of Education, five members of the County's Election Commission, five Judges of the County's Justice Court, and five Constables. The plan denies Black DeSoto County voters an equal opportunity to elect their candidates of choice to any of those twenty-five offices due to persistent patterns of racially polarized voting, whereby White voters typically vote as a bloc to defeat Black-preferred candidates. DeSoto County could and should have drawn one reasonably configured majority-Black district in DeSoto County where Black voters would have the opportunity to elect candidates of choice to office. Under the totality of circumstances, the 2022 Plan violates Plaintiffs' rights under Section 2 of the VRA. *See* 52 U.S.C. § 10301(b); *Thornburg v. Gingles*, 478 U.S. 30, 50–51 (1986).

The ultimate facts claimed by Plaintiffs are as follows:

- *Gingles* 1: As demonstrated by the illustrative plans drawn by expert map-drawer William Cooper, among other evidence, the Black population of DeSoto County is sufficiently large and geographically compact to comprise a majority of the VAP in a district that is reasonably configured and adheres to traditional redistricting principles.

- *Gingles* 2: As demonstrated by the expert analysis of political scientist Dr. Jacob M. Grumbach, among other evidence, Black voters in DeSoto County are politically cohesive, in that they usually vote as a bloc to support their preferred candidates.

- *Gingles* 3: As demonstrated by the expert analysis of political scientist Dr. Jacob M. Grumbach, among other evidence, White voters in DeSoto County vote sufficiently as a bloc usually to defeat the preferred candidates of Black voters. Voting patterns in DeSoto County are racially polarized, with Black voters and White voters preferring different candidates, resulting in the usual defeat of candidates preferred by Black voters in the districts created by the 2022 Plan.

- *Totality of the Circumstances:*
- Considering the totality of the circumstances, the challenged district lines in the 2022 Plan deny Black voters in DeSoto County an equal opportunity to elect candidates of choice to any of the five DeSoto County governing bodies elected under the 2022 Plan. *See* 52 U.S.C. § 10301(b). The factors relevant under the totality of circumstances are as follows:

FORM 3 (ND/SD MISS. DEC. 2011)

- *Senate Factor 1:* As demonstrated by the analysis of expert witness Dr. Marvin King, among other evidence, Mississippi and DeSoto County have an extensive history of racial discrimination in voting and other areas, continuing to the present.

- *Senate Factor 2:* As demonstrated by the analyses of expert witnesses Dr. Jacob M. Grumbach and Dr. Marvin King, among other evidence, voting in DeSoto County remains polarized along racial lines.

- *Senate Factor 3:* As demonstrated by the analysis of Dr. Marvin King, among other evidence, electoral mechanisms that enhance the opportunity for discrimination have been and continue to be used in DeSoto County, as in Mississippi as a whole. Among others, those mechanisms include the prohibition on online-voter registration; the lack of early voting; restrictions on absentee voting; near-permanent disenfranchisement for criminal convictions even after full completion of sentence and release from incarceration; unreasonable advance deadlines for voter registration; the absence of guaranteed time off to vote; the use of runoff elections, and a complicated schedule of elections.

- *Senate Factor 5:* As demonstrated by the analysis of Dr. Marvin King, among other evidence, there are persistent disparities between Black and White residents in DeSoto County in education, health, income, employment, home-ownership, criminal enforcement, and other areas bearing on their ability to participate in the political process.

- *Senate Factor 6:* As demonstrated by the analysis of Dr. Marvin King, among other evidence, political campaigns in Mississippi, both historically and in the present, continue to be characterized by implicit and explicit appeals to race. These appeals have characterized some of the most prominent campaigns in Mississippi and campaigns in DeSoto County in recent years. Additionally, several Black candidates for office, or their supporters, have faced intimidation or harassment while campaigning.

- *Senate Factor 7:* As demonstrated by the analysis of Dr. Marvin King, among other evidence, Black candidates in DeSoto County face substantial barriers to political office. None of the 25 officials elected under the 2022 Plan are Black, and DeSoto County is one of only 11 of 82 Mississippi counties without a Black supervisor, an outlier among counties with a similar percentage of Black population.

- *Senate Factor 8:* Black DeSoto County residents experience a lack of responsiveness of elected officials to their needs. As demonstrated by the analysis of Dr. Marvin King, among other evidence, there is a lack of responsiveness on the part of DeSoto County's elected officials to the needs of Black residents. The lack of responsiveness can be seen in the lack of Black residents appointed to or hired for County positions; and racial disparities in many areas of life. Additionally, the Board of Supervisors was non-responsive to Black residents' desire to enact a

districting plan that included a district in which Black voters had an opportunity to elect their preferred candidate.

o *Senate Factor 9:* The maintenance of all-White majority districts in the 2022 Plan has only tenuous justifications. Any asserted justification to maintain the racial ratios of previous districts cannot justify the dilutive 2022 Plan.

**b.** Defendants:

DeSoto County consists of five single-member election districts, from which a total of 25 public officials are elected to fill one position in each of the following five offices: Supervisors, Election Commissioners, School Board members, Justice Court judges, and Constables. The County hired demographer Christopher Watson to assess the 2020 Decennial Census results and determine whether the County needed to conduct redistricting of these election districts to maintain compliance with the one-person-one-vote requirement. The County previously hired Watson to conduct redistricting after the 2010 Census. At that time, Section 5 of the Voting Rights Act required DeSoto County—and every other Mississippi county—to obtain "preclearance" from the U.S. Department of Justice before any completed redistricting plan could take effect. The DOJ precleared the County's redistricting plan prepared by Watson after the 2010 Census.

Watson, who at that time had been helping local governments throughout Mississippi conduct redistricting for more than 20 years, confirmed that the County's population growth reflected in the 2020 Census required redistricting of the County's election districts. Watson then engaged in the redistricting process consistent with traditional redistricting principles. A primary focus of the County's redistricting was protection of the 25 incumbent elected officials throughout the County; the Supervisors did not want redistricting to result in incumbents being pitted against each other or being drawn out of their own districts.

Throughout its redistricting process, the County provided opportunities for citizens—Black or White—to participate. The County opened the floor at various Supervisor meetings for interested citizens to make comments or ask questions, and the Supervisors arranged a meeting between Watson and interested citizens—many of whom are aligned with Plaintiffs—on March 28, 2022. During the meeting, Watson discussed the redistricting process and took questions.

The Board also scheduled a public hearing for June 6, 2022, at which the four proposed maps that the Supervisors had settled on—Alternate Plans 1, 2, 3, and 4—would be considered and discussed prior to adoption. All four plans were made available to the public 10 days earlier, on May 27, 2022. During the public hearing, Alternate Plans 1, 2, 3, and 4 were considered as well as two additional maps proposed by interested citizens. The Supervisors voted unanimously to adopt a revised version of Alternate Plan 1 during the

FORM 3 (ND/SD MISS. DEC. 2011)

June 6 public hearing ("the 2022 Plan") and formally approved the legal description of the 2022 Plan on June 20, 2022.

Against this backdrop, Plaintiffs cannot satisfy the three preconditions set forth in *Thornburg v. Gingles*, 478 U.S. 30, 48-51 (1986). Plaintiffs' illustrative maps are not viable because the districts drawn in those maps constitute racial gerrymanders, drawn with excessive and unjustified use of race and racial data. In addition, any polarized voting identified by Plaintiffs in DeSoto County is the product of partisan differences rather than racism within the electorate.

Similarly, the totality of the circumstances do not support finding that Black voting age citizens of DeSoto County have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. Any history of "official discrimination" in the County that may have touched on the right of Black residents of the County to register, to vote, or otherwise participate in the democratic process is remote in time and has been overcome. The ability of Black citizens in the County to participate effectively in the political process of the County is not hindered by the effects of discrimination, if any, in areas such as education, employment, and health. There is no evidence that political campaigns in the County have generally been characterized by overt or subtle racial appeals. In addition, the County's elected officials have been responsive to the particularized needs of the County's Black residents. Lastly, the policies underlying the County's election districts drawn in the 2022 Plan are far from tenuous and are justified by grounds unrelated to race.

**c.** Other:

**9.** **a.** The following facts are established by the pleadings, by stipulation, or by admission:

*See* Appendix A.

**b.** The contested issues of fact are as follows:

1. Whether the Black population of DeSoto County is sufficiently large and geographically compact to comprise a majority of the voting age population in a district that is reasonably configured and adheres to traditional redistricting principles. *Defendants object to the inclusion of this contested issue of fact.

2. Whether Black voters in DeSoto County are politically cohesive, in that they usually vote as a bloc to support their preferred candidates. *Defendants object to the inclusion of this contested issue of fact.

3. Whether White voters in DeSoto County vote sufficiently as a bloc usually to defeat the preferred candidates of Black voters. *Defendants object to the inclusion of this contested issue of fact.

4. Whether, under the totality of circumstances, the challenged district lines in the 2022 Plan deny Black voters in DeSoto County an equal opportunity to elect candidates of choice to any of the five DeSoto County governing bodies elected under the 2022 Plan. *Defendants object to the inclusion of this contested issue of fact.

5. Whether the district lines drawn in DeSoto County after the 2020 Census violate Section 2 of the Voting Rights Act by diluting the voting strength of Black voters in DeSoto County in that those Black voters have less opportunity than White voters to participate in the political process and to elect candidates of their choice in DeSoto County. (mixed question of law and fact)

6. Whether the proposed election districts offered by Plaintiffs comport with traditional redistricting principles applicable to the drawing of DeSoto County election districts. *Plaintiffs object to the inclusion of this contested issue of fact.

7. Whether the proposed election districts offered by Plaintiffs were drawn with excessive and unjustified use of race and racial data. *Plaintiffs object to the inclusion of this contested issue of fact.

8. Whether the Black voting age population in the proposed District 3 under each of the plans offered by Plaintiffs actually exceeds 50%. *Plaintiffs object to the inclusion of this contested issue of fact.

9. Whether the Black voting age population in the proposed election districts offered by Plaintiffs are sufficiently geographically compact. (mixed question of law and fact). *Plaintiffs object to the inclusion of this contested issue of fact.

10. Whether the "totality of circumstances" show that the political processes leading to nomination or election in DeSoto County are not equally open to participation by Black citizens of DeSoto County in that those Black citizens have less opportunity than other members of the electorate in DeSoto County to participate in the political process and to elect representatives of their choice. (mixed question of law and fact)

11. What is the extent of any history of official discrimination in DeSoto County that touched the right of Black citizens in DeSoto County to register, to vote, or otherwise to participate in the democratic process? *Plaintiffs object to the inclusion of this contested issue of fact.

12. To what extent, if any, does racial polarization exist for all elections in which DeSoto County citizens vote?

13. Whether polarized voting in DeSoto County, if any, is the result of political polarization or racial polarization. *Plaintiffs object to the inclusion of this contested issue of fact.

14. What is the extent, if any, to which DeSoto County has used unusually large election districts, majority vote requirements, anti-single shot provisions, or other voting practices or procedures that may enhance the opportunity for discrimination against Black citizens?

15. What is the extent, if any, to which Black citizens in DeSoto County bear the effects of discrimination in such areas as education, employment, and health, which hinder their ability to participate effectively in the political process?

16. Whether political campaigns in DeSoto County have been characterized by overt or subtle racial appeals.

17. What is the extent to which Black citizens have been elected to public office in DeSoto County? *Plaintiffs object to the inclusion of this contested issue of fact.

18. Whether a lack of responsiveness, if any, on the part of elected officials in DeSoto County to the particularized needs of Black citizens of DeSoto County is significant.

19. Whether the policies underlying DeSoto County's election districts in the 2022 Plan are tenuous.

**c.**     The contested issues of law are as follows:

1. Whether the 2022 Plan violates Section 2 of the Voting Rights Act of 1965 by diluting the voting strength of Black voters in DeSoto County. *See* 52 U.S.C. § 10301(b).

2. For purposes of preserving Defendants' right of appellate review, whether the Voting Rights Act contains a private right of action to enforce Section 2, 52 U.S.C. § 10301, and whether a Section 2 claim may be advanced through 42 U.S.C. § 1983.

3. For purposes of preserving Defendants' right of appellate review, whether Plaintiffs Harold Harris and Pastor Robert Tipton, Jr. have standing to advance a claim for violation of

Section 2 of the Voting Rights Act, individually, when any alleged injury is hypothetical and not concrete or particularized.

4. For purposes of preserving Defendants' right of appellate review, whether Plaintiffs NAACP Unit 55574 and Delta Sigma Theta have standing to advance a claim for violation of Section 2 of the Voting Rights Act on behalf of African American voters in DeSoto County based solely on vague allegations that each organization has members affected in Desoto County.

5. Whether Plaintiffs can satisfy the first *Gingles* precondition.

6. Whether Plaintiffs have proven that the Black voting age population in DeSoto County is sufficiently large and geographically compact to constitute a majority in a single member district. (mixed question of law and fact). *Plaintiffs object to the inclusion of this contested issue of law.

7. Whether Plaintiffs' illustrative districts account for traditional districting principles, including protection of incumbents. (mixed question of law and fact). *Plaintiffs object to the inclusion of this contested issue of law.

8. Whether any illustrative plan offered by Plaintiffs groups together dispersed Black voters into a district that, although geographically compact as a whole, does not contain a Black population of voters that is compact? (mixed question of law and fact). *Plaintiffs object to the inclusion of this contested issue of law.

9. Whether Plaintiffs can satisfy the second *Gingles* precondition. (mixed question of law and fact)

10. Whether Plaintiffs can satisfy the third *Gingles* precondition. (mixed question of law and fact)

11. Whether a finding of violation of Section 2 is precluded when partisan affiliation, not race, best explains divergent voting patterns between Black and White voters in DeSoto County. *Plaintiffs object to the inclusion of this contested issue of law.

12. Whether the challenged district lines cause the political process in DeSoto County leading to election of the 25 officials elected from those districts not to be equally open to participation by Black voters in that Black voters have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. (mixed question of law and fact)

13. Whether, in DeSoto County, any lack of equal opportunity under Section 2(b) of the Voting Rights Act for black voters is "on account of race or color" as Section 2(a) requires or on account of the partisan preferences of the electorate in DeSoto County.

FORM 3 (ND/SD MISS. DEC. 2011)

14. Whether the Black population in Plaintiffs' illustrative District 3 share common beliefs, ideals, principles, agendas, concerns, and the like such that they generally unite behind or coalesce around particular candidates and issues. *Plaintiffs object to the inclusion of this contested issue of law.

15. Whether Plaintiffs' proposed illustrative District 3 provides Black voting age citizens in DeSoto County with a "real" opportunity to elect representatives of Black voters' choice. *Plaintiffs object to the inclusion of this contested issue of law.

16. Whether Plaintiffs can satisfy the totality of the circumstances test (i.e. the Senate factors). *Plaintiffs object to the inclusion of this contested issue of law.

**10.** The following is a list and brief description of all exhibits (except exhibits to be used for impeachment purposes only) to be offered in evidence by the parties. **Each exhibit has been marked for identification and examined by counsel.**

The authenticity of any exhibit that appears on both parties' exhibit lists is stipulated.

    **a.**    To be offered by the Plaintiffs:

*See* Appendix B.

    The authenticity and admissibility in evidence of the preceding exhibits are stipulated. If the authenticity or admissibility of any of the preceding exhibits is objected to, the exhibit must be identified below, together with a statement of the specified evidentiary ground(s) for the objection(s):

Defendants' objections to Plaintiffs' exhibit list are contained in Appendix C.

    **b.**    To be offered by the Defendants:

*See* Appendix D.

    The authenticity and admissibility in evidence of the preceding exhibits are stipulated. If the authenticity or admissibility of any of the preceding exhibits is objected to, the exhibit must be identified below, together with a statement of the specified evidentiary ground(s) for the objection(s):

FORM 3 (ND/SD MISS. DEC. 2011)

Plaintiffs' objections to Defendants' exhibit list are contained in Appendix E.

11. The following is a list and brief description of charts, graphs, models, schematic diagrams, and similar objects which will be used in opening statements or closing arguments, but which **will not** be offered in evidence:

The parties may use PowerPoint presentations or posterboards in opening statements and

closing arguments to summarize the evidence and arguments before the Court.

Objections, if any, to use of the preceding objects are as follows:

If any other objects are to be used by any party, such objects will be submitted to opposing counsel **at least three business days before trial**. If there is then any objection to use of the objects, the dispute will be submitted to the court at least one business day before trial.

12. The following is a list of witnesses Plaintiffs anticipate calling at trial (excluding witnesses to be used solely for rebuttal or impeachment). All listed witnesses must be present to testify when called by a party unless specific arrangements have been made with the trial judge before commencement of trial. The listing of a WILL CALL witness constitutes a professional representation, upon which opposing counsel may rely, that the witness will be present at trial, absent reasonable written notice to counsel to the contrary.

| Name | Will/ May Call | [F]act/ [E]xpert [L]iability/ [D]amages | Business Address & Telephone Number |
|---|---|---|---|

Will testify live:

    *See* Appendix F.

Will testify by deposition:

PD.60168048.1

State whether the entire deposition, or only portions, will be used. Counsel **must** confer, no later than twenty-one days before the commencement of trial, to resolve **all** controversies concerning **all** depositions (electronically recorded or otherwise). All controversies not resolved by the parties **must** be submitted to the trial judge **BY MOTION** not later than fourteen days before trial. All objections not submitted within that time are waived.

Plaintiffs' deposition designations and Defendants' objections and counter-designations are contained in Appendix G.

13.     The following is a list of witnesses Defendants anticipate calling at trial (excluding witnesses to be used solely for rebuttal or impeachment). All listed witnesses must be present to testify when called by a party unless specific arrangements have been made with the trial judge before commencement of trial. The listing of a **WILL CALL** witness constitutes a professional representation, upon which opposing counsel may rely, that the witness will be present at trial, absent reasonable written notice to counsel to the contrary.

| Name | Will/ May Call | [F]act/ [E]xpert [L]iability/ [D]amages | Business Address & Telephone Number |
|---|---|---|---|

Will testify live:

    *See* Appendix H.

Will testify by deposition:

    None.

State whether the entire deposition, or only portions, will be used. Counsel **must** confer, no later than twenty-one days before the commencement of trial, to resolve **all** controversies concerning **all** depositions (electronically recorded or otherwise). All controversies not resolved by the parties **must** be submitted to the trial judge not later than fourteen days before trial. All objections not submitted within that time are waived.

14.     This _____ is _____✔_____ is not a jury case.

Form 3 (ND/SD Miss. Dec. 2011)

15. Counsel suggests the following additional matters to aid in the disposition of this civil action:

16. Counsel estimates the length of the trial will be 10-15 days. (Plaintiffs believe this case can be tried within 10 days; Defendants believe the trial will last a minimum of 15 days).

17. As stated in paragraph 1, this pretrial order has been formulated (a) at a pretrial conference before a judicial officer, notice of which was duly served on all parties, and at which the parties attended as stated above, or (b) the final pretrial conference having been dispensed with by the judicial officer, as a result of conferences between the parties. Reasonable opportunity has been afforded for corrections or additions prior to signing. This order will control the course of the trial, as provided by Rule 16, Federal Rules of Civil Procedure, and it may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

ORDERED, this the _12th_ day of _January_, 20_26_.

_____
UNITED STATES DISTRICT JUDGE

_____
Attorney for Plaintiffs

_____
Attorney for Defendants

Entry of the preceding Pretrial Order is recommended by me on this, the 6th day of January, 2026.

/s/ Roy Percy
_____
UNITED STATES MAGISTRATE JUDGE

PD.60168048.1