**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

HAROLD HARRIS, PASTOR ROBERT TIPTON, JR., DELTA SIGMA THETA SORORITY, INC., and DESOTO COUNTY MS NAACP UNIT 5574,
*Plaintiffs*,

v.

DESOTO COUNTY, MISSISSIPPI; DESOTO COUNTY BOARD OF SUPERVISORS; and DESOTO COUNTY ELECTION COMMISSION,

*Defendants*.

No. 3:24-cv-00289-GHD-RP

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISALLOW DEFENDANTS' BILL OF COSTS**

Plaintiffs Harold Harris, Pastor Robert Tipton, Jr., Delta Sigma Theta Sorority, Inc., and DeSoto County Branch MS NAACP Unit 5574 (together, "Plaintiffs"), respectfully submit this Memorandum in Support of their Motion to Disallow Defendants' Bill of Costs, ECF No. 490.

## INTRODUCTION

Defendants seek costs in the outlandish amount of $146,942.05. The vast majority of the expenses they claim as costs are not taxable, and most of the items in their Bill are listed without any documentation to show either that the expenses were actually incurred in the amounts stated, or that they were necessary for the trial of this matter.

The Court should disallow the entire Bill pursuant to *Pacheco v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006), because Plaintiffs litigated in good faith, the case presented close and difficult legal issues, Defendants' conduct greatly increased the costs of the litigation, and their bill of costs is excessive and unsupported by the necessary evidence. *Id*. *See* Point VI below.

If the Court does not entirely disallow Defendants' Bill of Costs, it should reduce the amount claimed by $114,255.87, the total Defendants seek in categories of expense not taxable as costs pursuant to the relevant statutes and caselaw, including attorney and staff travel, meals, lodging, and mileage; courier charges; e-discovery charges; the charges of private process servers; copies of Plaintiffs' trial exhibits, color copies, UPS shipping, and binding, all obtained for convenience of defense counsel at trial; undocumented miscellaneous copying charges; excess charges for the trial transcript; charges for the deposition transcripts of witnesses not called at trial and whose testimony was not read into the trial record; and rental car charges, excessive parking charges, and double-billed charges for two sets of airfares for an expert who came to Oxford for a day. Defendants have no legal basis to claim these expenses as taxable costs.

The remaining $32,686.18 may correspond to categories of costs that are taxable under 28 U.S.C. § 1920, but these expenses are presented by Defendants without the documentation that is required by courts in this Circuit, and, indeed, by any well-run accounts payable department. It may be doubted that Defendants—a county government that can be expected to scrutinize its contractors' bills—would have paid these charges without documentary proof, missing from the submission before the Court, of the amounts actually disbursed by defense counsel.

This Court should disallow Defendants' bill of costs in its entirety, or, at a minimum, disallow $114,255.87 claimed by Defendants and require them, to the extent they seek an Order taxing any part of the remaining $32,686.18, to submit full documentation that such expenses were actually incurred, together with proof that they were necessary for the trial of this matter.

## ARGUMENT

### I. THE COURT SHOULD DISALLOW ALL COSTS NOT RECOGNIZED AS TAXABLE UNDER 28 U.S.C. § 1920.

Section 1920 limits the costs a prevailing party may tax against an opposing party to:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. A district court may decline to award costs within these categories, but it may not award expenses outside those categories as costs. *Britt v. Miss. Farm Bureau Cas. Ins. Co.*, No.: 1:17-cv-219-GHD-DAS, 2024 WL 3908985, at *1 (N.D. Miss. Aug. 22, 2024) (Davidson, J.) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441–12 (1987); *Cook Child.'s Med. Ctr. v. New England PPO Plan of Gen. Consolidation Mgmt., Inc.*, 491 F.3d 266, 274 (5th Cir. 2007)); *Kmart Corp. v. Kroger Co.*, No. 1:11-cv-00103-GHD-DAS, 2014 WL 3700004, at *2 (N.D. Miss. Jul. 24, 2014) (same). Absent explicit statutory or contractual authorization, "federal courts may only award those costs articulated in section 1920." *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010). Defendants seek $87,978.57 in expenses not authorized by Section 1920. Such expenses should be disallowed.

#### A. Defendants' Purported Expenses of $77,773.74 for Attorney and Staff Travel, Meals, Lodging, Mileage, and Courier Charges Are Not Taxable as Costs.

Defendants present 45 pages of line items totaling $77,773.74 that are stated to be meals, hotel and lodging charges, mileage, parking, and courier and hand-delivery fees incurred by defense counsel and their staff. Doc. 490-1 at 67–112. These purported expenditures—the single largest category sought by Defendants—do not present a close question: courts in this Circuit

routinely disallow claims for such expenses as costs. *See, e.g.*, *Carrubba v. Harrison Cnty., Miss.*, No. 1:07CV1238-LG-RHW, 2010 WL 4718891, at *1 (S.D. Miss. Nov. 15, 2010) (citing *Hodge v. Seiler*, 558 F.2d 284, 287 (5th Cir. 1977)) ("[T]ravel expenses of a party to the lawsuit are not included in the § 1920 list."); *Gomez v. Managing Innovation & Tech., Inc.*, No. 3:14-CV-0936-M, 2015 WL 6150905, at *2 (N.D. Tex. Oct. 15, 2015) ("Section 1920 does not permit recovery of costs for . . . travel, including costs for hotel rooms, rental cars, gasoline, parking, or meals."); *Honestech, Inc. v. Sonic Sols.*, 725 F. Supp. 2d 573, 583 (W.D. Tex. 2010), *aff'd*, 430 F. App'x 359 (5th Cir. 2011) ("[Section] 1920 undisputedly does not provide for the reimbursement of a party's travel and lodging expenses.").

Although established caselaw disallows all of Defendants' claimed expenses for attorney and staff travel, meals, lodging, mileage, and courier charges, Plaintiffs highlight some aspects of Defendants' slipshod documentation of these expenses to illustrate the inadequacy of their entire Bill of Costs. For example, numerous expenses listed by Defendants as "Other Costs—Mileage, Meals, Hotel, Parking" have identical descriptions, amounts, and purchase dates, but are claimed two or even three times as different charges:

- Two identically-described charges for $134 purportedly incurred on 10/17/2024 by Mr. Morisani (one charged to "mileage," and the other, to "hotel-lodging"). ECF No. 490-1 at 71.

- Two identically-described charges for $131.99 purportedly incurred on 11/5/2024 by Mr. Morisani (one charged to "hotel-lodging," the other, to "mileage"). *Id.*

- Two identically-described charges for $135.80 purportedly incurred on 6/20/2025 by Mr. Morisani (one charged to "mileage," the other to "hotel-lodging"). *Id.* at 72.

- Two identically-described charges for $156.10 purportedly incurred on 6/20/2025 by Mr. Morisani (one charged to "mileage," the other, to "hotel-lodging"). *Id.*

- Two identically-described charges for $69.43 purportedly incurred on 6/26/2025 by Mr. Morisani (one charged to “meals,” the other to “mileage”). *Id*. at 73, 75.
- Two identically-described charges for $284.20 purportedly incurred on 6/26/2025 by Mr. Morisani (one charged to “mileage,” the other, to “hotel-lodging”). *Id*. at 73, 75.
- Two identically-described charges for $61.58 purportedly incurred on 6/27/2025 by Mr. Morisani (one charged to “hotel-lodging,” the other charged to “meals”). *Id*. at 76.
- Two identically-described charges for $184.63 purportedly incurred on 7/11/2025 by Mr. Morisani (one charged to “hotel-lodging,” the other charged to “meals”). *Id.* at 77.
- Three identically-described charges for $297.50 purportedly incurred on 7/11/2025 by Mr. Morisani (one charged to “mileage,” one charged to “hotel-lodging,” the third charged to “meals”). *Id.* at 77–78.
- Two identically-described charges for $166.10 purportedly incurred on 8/29/2025 by Mr. Morisani (one charged to “hotel-lodging,” the other, to “meals”). *Id.* at 86.
- Two identically-described charges for $112.70 purportedly incurred on 12/11/2025 by Mr. Siler (one charged to “mileage,” the other, to “hotel-lodging”). *Id.* at 98.
- Two charges for $112.70 purportedly incurred on 12/12/2025 by Mr. Siler (one charged to “mileage,” the other, to “hotel-lodging”). *Id.*

These duplicate or triplicate expenses total $3,990.96. They are not taxable as costs, but, if they were, there is no evidence these purported expenses were incurred even once: they are listed by Defendants without any supporting documentation. Assuming, *arguendo*, that each was incurred once, they would total $1,846.73 in non-taxable disbursements. If counsel billed the doubled or trebled amounts to their client, and their client paid them, then they billed and obtained payment for $2,144.23 in expenses they certainly never incurred. But Defendants have presented no evidence that DeSoto County was billed for, or paid, these purported disbursements. Indeed, if

counsel billed these expenses to Defendants, one would expect Defendants, a county government, to have scrutinized and rejected them.

In addition, Defendants seek to tax $5,502.04 that counsel purportedly spent to rent an "entire home/apartment-6 beds-1 guest" through Airbnb for "Traveler: Mike Hurst" in Southaven, Mississippi for 23 nights from September 3–26, 2025. They claim this expense was "for attorneys during depo prep and ongoing depos." ECF No. 490-1 at 86, 113. Yet, Mr. Hurst also billed for hotel stays on September 3, in the amount of $182.60, *id*. at 86, and for the week of September 22–26, 2025 in the amount of $832.33. *Id*. at 89. It is not at all clear who, if anyone, used any of the 6 beds in the "entire home" Defendants claim they rented, or when they used them. Mr. Hurst purported to charge mileage to travel between Southaven and Jackson on September 5, 12, 15 and 19, meaning he did not stay in the house between those dates, nor between September 19 and 22, when he started charging for an additional hotel. Just two other defense counsel—Messrs. Morisani and Halbert—were in Southaven for depositions during the period September 3–26, 2026, according to Defendants' list of disbursements. *Id*. at 86–91. Their disbursements appear to show that they traveled to and from Southaven on certain days, and billed for lunch, but not dinner. Accordingly, they would appear not to have used the rented house.

Defendants also purport, with no documentation, to tax lavish meals, apparently enjoyed by counsel and their witnesses, including:

- A charge on 8/27/2025 of $231.96 for a meal for Messrs, Siler, Gilmore, & Trende, i.e., at a cost of $77.32 per person. ECF No. 490-1 at 85.
- A charge on 3/3/2026 for $662.59 for a meal for Mses. Dickson and Barfield and Messrs. Hurst, Siler, Morisani, Halbert, and Gilmore, i.e., at a cost of $94.65 per person. *Id*. at 111.

More generally, Defendants purport to tax $9,607.29 for 213 undocumented meals, i.e., $45.10 per meal, and purport to document a charge for breakfasts and lunches for their trial team during trial of $5,355.57, ECF No. 490-1 at 116, without specifying who took part in these meals.

None of defense counsel's purported expenditures for attorney and staff travel, meals, lodging, mileage, and courier charges is of a type that 28 U.S.C. § 1920 permits to be taxed, and the entire claim of $77,773.74 for these expenses should be stricken.

### B. Defendants' Purported Expenses of $4,599.00 for an E-Discovery Platform Are Not Taxable as Costs.

Under the heading "EDiscovery Exemplification/Copying Costs," Defendants seek to tax $4,599.00 for an e-discovery platform. They provide a list of monthly charges, described variously as "Everlaw Usage," "Everlaw Subscription," or "Everlaw Usage/Subscription," including a column headed "INVOICE #," in which numbers appear, but Defendants, who produced invoices to support expenses in some other categories, present no invoices here. ECF No. 490-1 at 53.

The Supreme Court has held that Section 1920 does not "authorize an award for expenses such as . . . e-discovery expenses." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 334 (2019). Defendants' Everlaw charges are thus plainly not taxable.

Defendants represent that their e-discovery platform was "obtained for use during discovery, for dispositive motions and for trial (used to store, review, categorize and produce more than 50,000 pages of documents)." That description negates any claim that Defendants' e-discovery charges are taxable as "exemplification" or "making copies." 28 U.S.C. § 1920(4); *see OneSubsea IP UK Ltd. v. FMC Techs. Inc.*, No. 4:16-CV-51, 2021 WL 12364789, at *1 (S.D. Tex. Sep. 23, 2021) ("while Section 1920 includes costs 'for copying of prior-art documents,' the same is not true for costs incurred while searching for such documents").

Defendants offer no proof, moreover, of the specific services that Everlaw billed in the monthly charges they claim, much less that any part of them is taxable. Indeed, the part, if any, of "[f]ees for exemplification and the costs of making copies," 28 U.S.C. § 1920(4), that might be included in the words "Usage," or "Subscription," or "Usage/Subscription," is simply unknowable from Defendants' submission. Defendants' list of monthly charges, moreover, is internally contradictory: they purport to tax $306.00 for each month from December, 2025 through May, 2026. In one month, that amount is described as "Usage," in another, as "Subscription," and, in the remaining months, as "Usage/Subscription." The same amount cannot have covered these different things in different months. E-Discovery platforms, moreover, are generally usable simultaneously for more than one case, and Defendants have given the Court no basis for concluding that the monthly subscription charges they seek to tax are attributable only to the instant litigation. Finally, two of the twelve invoiced months—April and May, 2026—postdate the conclusion of trial and post-trial briefing. The "Usage" charge of $306.00 for April, and the "Usage/Subscription" charge of $306.00 for May cannot have been necessarily incurred for use in the case.

The entirety of Defendants' $4,599.00 claim for an "E-Discovery Platform" should be disallowed.

**C. Defendants' Purported Expenses of $1,325.00 for the Fees of a Private Process Server Are Not Taxable as Costs.**

Defendants seek $1,325.00 for the use of a private process server to effect service of subpoenas. Section 1920(1) authorizes taxation of "fees of the clerk and marshal," and the Fifth Circuit has held that, absent something exceptional about the parties or the nature of the case, the costs of private process servers should not be taxed. *Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010); *Cypress-Fairbanks Indep. Sch. Dist. v. Michael*, 118 F.3d 245, 257 (5th

Cir. 1997). Defendants have not identified any exceptional circumstances that would justify departing from that rule.

The entirety of this $1,325.00 claim should be disallowed.

**D. Of Defendants' Purported Printing Charges for Trial Exhibits, $4,280.83 Are Not Taxable as Costs.**

Defendants claim $4,910.87 for printing trial exhibits, ECF No. 490-1 at 42, but at least $4,280.83 of these purported expenses are clearly not taxable:

- $1,823.27 for *Plaintiffs'* trial exhibits,
- $1,527.24 in color copies,
- $498.32 for UPS Shipping, and,
- $432 in binding.

ECF No. 490-1 at 44. Copies of Plaintiffs' exhibits made for defense counsel's use at counsel table were clearly obtained for defense counsel's convenience and are not a cost of producing Defendants' own exhibits. Comb-binding deposition transcripts is another expense incurred purely for the convenience of counsel. ECF No. 490-1 at 45. Section 1920 does not cover the expenses of shipping, binding or color copies. *See U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 133 (5th Cir. 2015) (holding it was abuse of discretion for district court to award costs for, *inter alia*, shipping and binding); *Firehouse Church Ministries v. Church Mut. Ins. Co.*, No. 3:20-CV-354-KHJ-FKB, 2022 WL 4490171, at *4 (S.D. Miss. Sep. 27, 2022) ("courts have sustained objections to administrative fees and color copy fees.").

Of the printing costs claimed by Defendants, $4,280.83 must be disallowed as expenses not recognized by the caselaw as taxable costs. The remaining $630.04 may constitute taxable costs, but should be disallowed as argued in Section VI below. In the alternative, Defendants should be required to prove that they incurred this expense and that it was necessary for trial.

## II. THE COURT SHOULD DENY DEFENDANTS' UNSUPPORTED CLAIM FOR $12,349.40 IN COPYING EXPENSES.

This Court has made clear that a party that seeks costs "has the burden of supporting its request with evidence documenting the costs incurred." *Kmart Corp.*, 2014 WL 3510488, at *4 (citing *Fogleman v. ARAMCO*, 920 F.2d 278, 285–86 (5th Cir. 1991)). Federal Rule of Civil Procedure 54(d)(1)'s presumption of costs to a prevailing party does not relieve the claimant of its burden to substantiate the amount and eligibility of the expenses claimed as costs. *See Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087, 1099 (5th Cir. 1982), *modified on other grounds*, 701 F.2d 542 (5th Cir. 1983) (en banc), *overruled on other grounds*, *Int'l Woodworkers of Am., AFL–CIO and its Local No. 5–376 v. Champion Intern. Corp.*, 790 F.2d 1174 (5th Cir. 1986) (en banc), *aff'd and remanded sub nom. Crawford Fitting Co.*, 482 U.S. 437. In *Copper Liquor*, the Fifth Circuit rejected a lump-sum award supported by estimates and "some sketchy documentation," emphasizing that "courts are not accountants and [a party] should not be tagged with either cost or expense bills that are horseback estimates." *Id.* The court held that "[t]hose who are entitled to recover costs and expenses bear the burden of furnishing a reasonable accounting," and that actual expenditures must have evidentiary support. *Id.* A party that seeks to recover costs for "exemplification and copies of papers necessarily obtained for use in the case," 28 U.S.C. § 1920(4), "must show that the copies were necessary and provided either to the court or the opposing party." *Home Builders Ass'n of Miss. v. City of Madison*, 191 F.R.D. 515, 519–20 (S.D. Miss. 1999) (*citing Fogleman*, 920 F.2d at 286).

Nor does completion of the declaration on the federal courts' Bill of Costs Form, AO 133, relieve the declarant of the obligation to address necessity and itemization specifically for each category of claimed costs. The claimant must demonstrate a structural connection between the

costs incurred and the litigation; merely signing the standard Bill of Costs form does not satisfy this burden. *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994).

Defendants seek $12,349.40 for 123,494 pages that they assert were copied for this case at $0.10 per page. In support of this massive claim, they present only a log of dates and page counts. They provide no description of what was copied on any date, or why. ECF No. 490-1 at 46–52.

This Court allows photocopying costs only for "copying pleadings, exhibits, documents, and all necessary papers," *Card v. State Farm Fire & Cas. Co.*, 126 F.R.D. 658, 661 (N.D. Miss. 1989). A party seeking costs for photocopying "must offer some proof of the necessity" of those copies, and a court may not tax photocopying costs in the "absence of specific finding of necessity." *Holmes*, 11 F.3d at 64.

A prevailing party need not "identify every xerox copy made for use in the course of legal proceedings," but it must provide "some demonstration that reproduction costs necessarily result from that litigation," and may not recover for "multiple copies of documents, attorney correspondence, or any of the other multitude of papers that may pass through a law firm's xerox machines." *Fogleman*, 920 F.2d at 286. In *Fogleman*, the Fifth Circuit rejected unsupported copying costs as taxable, as the claimant "provided no itemized breakdown of the copying costs incurred" and it was "impossible to tell to what extent copies . . . were necessarily obtained for use in the case rather than obtained simply for the convenience of counsel." *Id*. Applying this standard, the court in *Home Builders* held that an itemization consisting of "nothing more than the name of the printing company, the date, the invoice number, and the cost" was facially inadequate because "[n]othing was presented to indicate that these were copies necessarily obtained for use in the litigation." *Home Builders Ass'n of Miss.*, 191 F.R.D. at 517. The court emphasized: "Before this court can tax costs for photocopies, it must find that the copies for which costs are sought were

necessarily obtained for use in the litigation. Moreover, the party seeking such costs must offer some proof of the necessity." *Id.* The court further rejected a claim for in-house copying costs where the party admitted it was "wholly unable to account for this amount in any manner," and held that it "simply cannot judge whether the . . . request for copying costs may suffer a similar infirmity or whether the in-house copies were necessary for use in the case without a more specific statement, even if the statement does not account for every single copy." *Id.*

Similarly, in *Full House Resorts, Inc. v. Boggs & Poole Contracting Group, Inc.*, the prevailing party sought to tax $13,146.90 for copying, but identified only the copying service it used without showing which documents were copied. No. 1:14-CV-223-KS-MTP, 2016 WL 9138052, at *3 (S.D. Miss. Feb. 29, 2016). The court refused to award any costs for copying fees, finding the claimant had "failed to provide a reasonable accounting of these costs," leaving the court to "speculate as to whether the copying fees claimed are for the copying of documents necessary for use in the case." *Id.*; *see also Gagnon*, 607 F.3d at 1045 (requiring factual findings that copies were necessarily obtained for use in the case). A page-count ledger without any description of content does not satisfy Defendants' burden of proving the necessity of their copying expenses.

The entirety of Defendants' $12,349.40 claim for copying costs should be disallowed.

## III. THE COURT SHOULD DENY DEFENDANTS' EFFORT TO TAX THEIR COPY OF THE TRIAL TRANSCRIPT AT AN INFLATED RATE.

Defendants seek $8,332.95 for trial transcripts, billed as "1st COPY" and calculated at $3.65 per page for 2,283 pages. ECF No. 490-1 at 8–9. The rate of $3.65/page, however, is not the "first copy" rate. As set forth in the section of the U.S. Courts' website for the Federal Court Reporting Program, "[w]hen a transcript is ordered, the first party to order it pays the original

transcript rate, and subsequent requesters pay a copy rate." *See* Ex. 1 at 1, attached.[1] The rate for a first copy of a daily transcript ordered by another party is $1.45/page. *Id*. at 3.

Plaintiffs were the first party to order the trial transcript in this case, as shown by the reporter's invoice with the notation that Plaintiffs paid the deposit for the reporter's fees a week before Defendants paid their deposit. *compare* Ex. 2, attached, with ECF No. 490-1 at 9.

Accordingly, Defendants might properly have sought $1.45/page for the 2,283 pages of the trial transcript, i.e., $3,310.35. Their Bill of Costs overcharges by at least $5,022.60.

## IV. THE COURT SHOULD DENY DEFENDANTS' CLAIM FOR DEPOSITION TRANSCRIPT COSTS THEY HAVE NOT SHOWN WERE NECESSARY FOR TRIAL, AS WELL AS FOR INCOMPLETELY DOCUMENTED DEPOSITION TRANSCRIPT COSTS.

In ECF No. 490-1 at pages 10–13, Defendants claim $32,837.10 for the transcripts of 32 depositions that, in each case, they assert was "Necessarily Obtained for Use during discovery, for dispositive motions, and for trial." They provide no other information concerning these deposition transcripts, apart from reporters' invoices. ECF No. 490-1 at 14–41. Those invoices, as discussed below, do not document the amounts that might properly be charged for taxable transcripts.

Seven of the deponents whose transcripts Defendants purport to tax are individuals whose testimony, either live or by transcript, was not made part of the trial record. These deponents, with the amounts Defendants purport to tax (some were taken on the same day), are:

- Kelly Jacobs $2,025.00
- David Olds and Hester Jackson-McCray $1,698.00
- Melvin Young $430.00
- Mike Chandler and Willa White $861.80

[1] *Federal Court Reporting Program*, U.S. Cts., https://www.uscourts.gov/court-programs/federal-court-reporting-program#rates (last updated Oct. 1, 2024).

- Pam McKelvy $1,441.75

Defendants present no basis for the Court to conclude that these depositions, which were not used at trial, were "necessarily obtained" and therefore taxable. *See Card*, 126 F.R.D. at 661. Defendants' claims, totaling $6,456.55 for the deposition transcripts of witnesses not called or used at trial, should be disallowed.

The remaining transcripts listed by Defendants concern deponents who testified at trial, or whose testimony was read into the record, and therefore might properly be taxed, except that Defendants have proffered invoices in support of these charges that raise questions about the basis on which the transcripts were billed and about the amounts actually paid. ECF No. 490-1 at 14–41.

Court reporters charge differing amounts based on the speed with which they deliver a deposition transcript. Here, none of the invoices describes the terms on which any transcript was ordered. Defendants should have presented evidence of the turnaround they requested in ordering each transcript, and of the basis for their need to incur a premium for expedited delivery of any transcript. As matters stand, there is no way to discern whether their purported transcript expenses were for regular or expedited service. The Fifth Circuit has held that it is an abuse of discretion to award costs for expedited transcripts, absent "prior court approval" or "special character of the litigation necessitat[ing] expedited receipt." *GSDMIdea City*, 807 F.3d at 132.

Defendants have failed, moreover, to annex any payment information to the invoices, although their counsel's accounts payable department must have maintained files documenting each payment. Many of the reporters' invoices state that late charges will be imposed, and many invoices are marked "Past Due," *See, e.g.*, ECF No. 490-1 at 15, 17, 18–21. There is no way to

know whether the past due invoices, or others, contain late charges that counsel should not have passed on to Defendants, and that should not in any case, be taxed to Plaintiffs.

As argued in Section VI below, this Court may properly disallow all of Defendants' claimed costs. If, however, the Court concludes that it is an appropriate exercise of discretion to allow some costs for deposition transcripts, then it should nonetheless reduce Defendants' $32,837.10 claim by $6,456.55 for transcripts of witnesses not called or read at trial, and require Defendants to provide full documentation of the costs of the remaining transcripts, including the basis on which they were ordered, the need to incur increased pricing for expedited delivery, and the true amounts billed and paid, including whether those amounts included late charges.

## V. MOST OF THE $4,256.72 IN EXPERT WITNESS EXPENSES THAT DEFENDANTS PURPORT TO TAX ARE UNDOCUMENTED, AND MANY ITEMS LISTED ARE NOT TAXABLE AS COSTS

Documentation that Defendants' experts—Chris Bonneau, Sean Trende, and John Alford—actually paid amounts that Defendants seek to tax as costs is limited to $1,335.45 of the $4,256.72 that Defendants claim.

Defendants seek, moreover, to tax rental car expenses purportedly incurred by Mr. Bonneau in the amount of $345.27 and by Mr. Trende in the amount of $166.36, for a total of $511.63. ECF No. 490-1 at 117. The receipt for Mr. Bonneau's rental car, *id*. at 131, is for a total of $266.69, including $37.60 in fuel service charges that Defendants assert they subtracted from the total they claim. *Id*. at 117 n.6. If rental car charges were proper, therefore, these charges would be overstated by $116.18. But rental car charges are not taxable as costs, *Kmart Corp.*, 2014 WL 3510488, at *6–*7, and this entire $511.63 claim should be disallowed.

As the court noted in *Kmart Corp.*, 2014 WL 3510488, at *6, moreover, Defendants' expert "could have traveled to and from his destination by taxicab. This reasoning applies to Mr.

Bonneau's charge of $156.12 for parking at Pittsburgh airport, which was clearly not incurred for transportation "at the most economical rate reasonably available." *See* 28 U.S.C. § 1821(c).

Finally, as noted above, Defendants' expert witness charges are mostly undocumented. For example, Defendants do not explain why they purport to charge twice for Mr. Trende's airfare, once in the amount of $757.00, and again in the amount of $1,024.00, for a total of $1,781.00 in round-trip airfares for a witness who attended trial for one day. ECF No. 490-1 at 117.

Once again, we urge the Court, as argued in Section VI below, to disallow all of Defendants' claimed costs. We respectfully request, however, in the event the Court should decide that it is an appropriate exercise of discretion to allow some costs for expert witnesses, that it reduce Defendants' $4,256.72 claim by $ 2,448.75 (i.e., $511.63 for rental car charges; plus $156.12 for Mr. Bonneau's parking charge; plus $1,781.00 for Mr. Trende's two airfares), and require Defendants to provide full documentation of all remaining expert witness expenses, with evidence of the need for the expenses incurred.

## VI. THE COURT SHOULD DENY THE ENTIRETY OF DEFENDANTS' BILL OF COSTS.

The presumption in favor of awarding costs to the prevailing party recognized in Federal Rule of Civil Procedure 54(d)(1) is not automatic. District courts may deny or reduce requests for costs in the sound exercise of their discretion when the circumstances warrant doing so. *Pacheco*, 448 F.3d at 794; *Wigginton v. Univ. of Miss.*, No. 3:15-cv-93-NBB-RP, 2021 WL 921399, at *3 (N.D. Miss. Mar. 10, 2021).

When a court finds that the non-prevailing party litigated in good faith, costs may be denied to the prevailing party if one or more additional factors are present. *See Pacheco*, 448 F.3d at 794–95. The "good reasons" for denying or reducing a prevailing party's costs, as catalogued in 10 Wright & Miller's Federal Practice & Procedure § 2668 (4th ed.), include misconduct by the

prevailing party and close and difficult legal issues presented by the case. *See Pacheco*, 448 F.3d at 794. Plaintiffs' good faith in bringing this litigation is patent. As *Pacheco* requires, this case presents grounds in addition to Plaintiffs' good faith to support denial or substantial reduction of Defendants' Bill of Costs.

**A. Plaintiffs Litigated in Good Faith.**

The first step in determining whether costs may be denied to a prevailing defendant is to determine whether plaintiffs litigated in good faith. *Id.* at 794. Plaintiffs here are individual voters and community and civil rights organizations. They sought no monetary damages or personal gain in this litigation. They brought this action in the public interest, seeking only declaratory and injunctive relief to vindicate voting rights protected under federal law.

During pre-trial proceedings, this Court made multiple findings that Plaintiffs' lawsuit was well-founded. The Court denied Defendants' motion to dismiss the complaint, ECF Nos. 97 & 98; granted Plaintiffs' motion to expedite the trial date, ECF No. 90; and denied Defendants' motion for summary judgment, ECF Nos. 358 & 359. There is no basis to question Plaintiffs' good faith in pursuing their lawsuit.

**B. This Case Presented Close and Difficult Legal Issues.**

One of the grounds for denying costs to a prevailing party when a case has been brought in good faith is that the case involved close and difficult legal issues. *Pacheco*, 448 F.3d at 794; *see also I.F. v. Lewisville Indep. Sch. Dist.*, No. 14-359, 2017 WL 11630564, at *3 (E.D. Tex. May 4, 2017) (close and difficult legal issues presented in Title IX case weighed in favor of denial of costs to prevailing party); *Wigginton*, 2021 WL 921399, at *2.

This case is a textbook example of a case with close and difficult legal issues. Plaintiffs filed their Section 2 vote-dilution challenge to DeSoto County's election scheme in 2024, after the

Board of Supervisors adopted a redistricting plan that prevented Black voters—who constitute nearly a third of the County's population—from electing a candidate of choice to any of the 25 county offices elected under that plan. Plaintiffs' lawsuit was fully supported by long-standing precedent, including the Supreme Court's 2023 decision in *Allen v. Milligan*, 599 U.S. 1 (2023), which affirmed a lower-court decision striking down Alabama's congressional redistricting plan for unlawfully diluting Black voting strength. During the course of the litigation, as already noted, this Court issued repeated rulings confirming the seriousness of the claims presented. ECF Nos. 90, 97–98, 358–59. During the 12-day trial, which concluded on March 4, 2026, Plaintiffs presented testimony from 17 witnesses in person and 9 by deposition, including 3 expert witnesses. Plaintiffs' evidence made out a classic showing of unlawful vote dilution under long-standing precedent, as detailed in Plaintiffs' meticulously documented Proposed Findings of Fact and Conclusions of Law, dated March 20, 2026, spanning 415 paragraphs and 116 pages.

However, as this Court noted in its decision following trial, the Supreme Court's April 29, 2026 decision in *Louisiana v. Callais*, 146 S. Ct. 1131 (2026), significantly altered the legal standard for determining a violation of Section 2. *See Harris v. DeSoto Cnty.*, No. 24-cv-289-GHD-RP, 2026 WL 1816145, at *3 (N.D. Miss. June 24, 2026) (*Callais* "had a significant impact on standing Section 2 jurisprudence."). Numerous scholars and commentators have noted the extensive break with precedent reflected in the *Callais* ruling.[2] To Plaintiffs' knowledge, this Court's decision was the first to resolve a Section 2 claim on the merits following *Callais.* These

---

[2] *See, e.g.*, Issa Kohler-Hausmann & Kevin Z. Yang, *How Callais Broke the Voting Rights Act and Weaponized the Equal Protection Clause: Part 1*, SCOTUSblog (May 26, 2026), https://www.scotusblog.com/2026/05/how-callais-broke-the-voting-rights-act-and-weaponized-the-equal-protection-clause-part-1/ [https://perma.cc/9D75-MWYN]; L. Paige Whitaker, Cong. Rsch. Serv., LSB11431, *Congressional Redistricting: High Court Narrows Voting Rights Act in Louisiana v. Callais* (2026).

unusual circumstances are an important factor demonstrating that this case presented close and difficult legal issues.

### C. Defendants' Actions Greatly Increased the Costs of the Litigation, and their Bill of Costs Is Exorbitant and Poorly Documented.

In determining whether to deny costs to a prevailing party, the court may consider misconduct by the prevailing party. *See Pacheco*, 448 F.3d at 794. Here, the actions of Defendants' counsel greatly increased the costs and burdens of this litigation. As just one example, Defendants' counsel listed almost 5,000 trial exhibits in the pretrial order, Order, ECF No. 381, yet proffered only 38 exhibits at trial, of which 33 were admitted into evidence. Exhibit List, ECF No. 429. Defendants thus gratuitously ratcheted up the difficulty of trial preparation, and, not incidentally, the copying expenses they now claim. As the Court observed on February 17, 2026, at the commencement of the trial, the Plaintiffs listed 331 exhibits in the pretrial order, while the Defendants listed "some 4900 exhibits[.]" The Court stated that it had "never seen an exhibit list that comes anywhere close to that number of exhibits." Feb. 17 Tr. 6:16–23. Deliberately encumbering the record is clearly improper conduct by counsel. *See Reuther v. Smith*, No. 01-3625, 2003 WL 22174275, at *1 (E.D. La. Sep. 11, 2003).

As the Court further observed:

> Seeing a pretrial order like this immediately waves a red flag in the Court's face, and I look immediately to 28 United States Code, Section 1927. And I bring this up to you attorneys. It appears that the attorneys have tried to make this case impossible to try.

Feb. 17 Tr. 6:24–7.

> The statute I refer to, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, attorneys' fees that are reasonably incurred by such conduct."

*Id.* at 7:7–12.

The sheer magnitude of Defendants' claim for costs is also at odds with any precedent in this District. Plaintiffs' research has identified ten decisions of this Court available online that concern bills of costs. The largest total sought in costs by the prevailing parties in any of those cases was $19,201.16. *See Card*, 126 F.R.D. at 659. Defendants here seek $146,942.05. As detailed above, moreover, well over half the total Defendants seek has no basis whatsoever in 28 U.S.C § 1920, and the remainder is almost entirely undocumented. A bill of costs this inflated is itself evidence that Defendants did not undertake the item-by-item determination of necessity that Section 1920 requires.

The excessive nature of the Bill supports denial of the entire request. As set forth above, not one category of costs sought by Defendants is set forth accurately and not overstated. Neither this Court nor Plaintiffs should be required to search through Defendants' haphazard and incomplete submission to identify costs that might be taxable. A court cannot approve costs when it is "impossible to tell" from the documentation whether the charges serve a legitimate litigation purpose. *Fogleman*, 920 F.2d at 286.

**D. Defendants Are Out of Time to Submit an Adequate Bill of Costs.**

Uniform Local Rule 54(c) of the Northern District of Mississippi requires a prevailing party to file its bill of costs "not later than 30 days after entry of judgment." N.D. Miss. L.U. Civ. R. 54(c). The Fifth Circuit applies this deadline strictly, disallowing amendments based on inadvertent clerical errors or other ministerial omissions that are proffered more than 30 days post-judgment. *See Nelson v. James*, 722 F.2d 207, 208 (5th Cir. 1984) (disallowing amended bill of costs filed after the local rules deadline).

If a bill of costs is unclear whether expenses were necessarily incurred for trial or were for the convenience of counsel, courts in this circuit reject the bill in its entirety after the 30-day deadline has passed, without providing an opportunity to amend. In *Welch v. U.S. Air Force*, the district court rejected the defendant's request for "fees for exemplification and copies" because it listed a lump-sum total accompanied by a disorganized cost sheet that was "anything but itemized." No. 5:00-CV-392-C, 2003 WL 21251062, at *2 (N.D. Tex. May 27, 2003).

Judgment herein was entered on June 24, 2026. Defendants took the full 30 days provided by Uniform Local Rule 54(c) to assemble their disorganized and undocumented Bill of Costs and file it on July 24, 2026. ECF Nos. 490 & 490-1. They now have no time in which to amend, and should not be permitted, at this late date, to attempt to rectify their clerical errors, or make their filing more legible—if they could even do these things.

For the reasons set forth in this Section VI, the Court should exercise its Rule 54(d)(1) discretion to deny Defendants' Bill of Costs in its entirety.

## CONCLUSION

**WHEREFORE**, Plaintiffs respectfully request that the Court issue an Order:

Disallowing the entirety of Defendants' Bill of Costs;

Or, in the alternative,

**A.** Disallowing $114,255.87 in expenses claimed by Defendants because they are not taxable as costs pursuant to the relevant statutes and caselaw, namely:

- $77,773.74 for attorney and staff travel, travel, meals, lodging, mileage, and courier charges
- $4,599.00 for an "E-Discovery Platform";
- $1,325.00 for charges by a private process server;

- $4280.83 for copies of Plaintiffs' trial exhibits, color copies, UPS shipping, and binding, all obtained for convenience of defense counsel at trial;
- $12,349.40 in undocumented miscellaneous copying charges;
- $5,022.60 in excess charges for the trial transcript;
- $6,456.55 in charges for the deposition transcripts of witnesses not called at trial and whose testimony was not read into the trial record;
- $511.63 in charges for rental cars for expert witnesses;
- $156.12 for an expert's excessive parking charge; and,
- $1,781.00 for an expert's double-billed charges for two sets of airfares; and,

**B.** Directing Defendants, to the extent they seek an Order for Costs with regard to any of the remaining $32,686.18 claimed in their Bill of Costs, to submit full documentation that such expenses were actually incurred, together with proof that they were necessary for the trial of this matter.

Dated: August 21, 2026

Respectfully submitted,

*/s/ Joshua Tom*
Joshua Tom (Miss. Bar No. 105392)
**ACLU OF MISSISSIPPI**
101 South Congress Street
Jackson, MS 39201
Telephone: (601) 354-3408
jtom@aclu-ms.org

Amir Badat (Miss. Bar No. 106599)
**BADAT LEGAL PLLC**
P.O. Box 15
Tougaloo, MS 39174
Phone: (601) 462-9592
amir.badat@gmail.com

*/s/ Brenda Wright*
Brenda Wright*
Kathryn Sadasivan*
Victor Genecin*
Breanna Williams*
Pilar Whitaker*
**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**
40 Rector Street, 5th Floor
New York, NY 10006
Telephone: (212) 965-2200
Facsimile: (212) 226-7592
bwright@naacpldf.org
ksadasivan@naacpldf.org
vgenecin@naacpldf.org
bwilliams@naacpldf.org
pwhitaker@naacpldf.org

Ruth Greenwood*
**ELECTION LAW CLINIC**
**HARVARD LAW SCHOOL**
6 Everett Street, Ste. 4105
Cambridge, MA 02138
(617) 496-0222
rgreenwood@law.harvard.edu

*Attorneys for Plaintiffs*
**Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I, Joshua Tom, hereby certify that on August 21, 2026, I filed the forgoing Memorandum with the Clerk of the Court using the ECF system which sent notification of such filing to all parties on file with the Court.

*/s/ Joshua Tom*__________

Joshua Tom, MSB # 105392